**Click here to Respond to Selected Documents**

**Sort Date Entries: Descending Ascending**

**Display Options:** All Entries ⌄

**10/19/2023**

    **Case Mgmt Conf Scheduled**

    **Scheduled For:** 02/08/2024; 1:30 PM; JAMES DALE YOUNGS; Jackson - Kansas City

**10/18/2023**

    **Filing Info Sheet eFiling**

        **Filed By:** LYNN W. HURSH

    **Note to Clerk eFiling**

    HOLD SERVICE

        **Filed By:** LYNN W. HURSH

    **CRIFS/Unredacted Document**

    Confidential Filing Sheet and Exhibits 1, 2 and 3 in associated to Circuit Court filed on 10/18/2023.

        **Filed By:** LYNN W. HURSH

        **On Behalf Of:** ONE PARK PLACE INVESTORS, LLC, PARK PLACE KC, LLC

    **Pet Filed in Circuit Ct**

    Petition for Declaratory Judgment and Damages; Exhibit 1; Exhibit 2; Exhibit 3; Exhibit 4; Exhibit 5; Exhibit 6; Exhibit 7; Exhibit 8; Exhibit 9.

        **Filed By:** LYNN W. HURSH

        **On Behalf Of:** ONE PARK PLACE INVESTORS, LLC, PARK PLACE KC, LLC



**EXHIBIT**

**A**

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI

ONE PARK PLACE INVESTORS, LLC AND )
PARK PLACE KC, LLC,                )
                                   )
              Plaintiffs,          )
                                   )
vs.                                )
                                   )
MESA UNDERWRITERS SPECIALTY        )
INSURANCE COMPANY f/k/a            )
MONTPELIER U.S. INSURANCE          )          Case No.
COMPANY,                           )
                                   )
Serve: Director of the Department of )
Commerce and Insurance, State of Missouri, )
                                   )
                                   )
              Defendants.          )

## PETITION FOR DECLARATORY JUDGMENT AND DAMAGES

Plaintiffs One Park Place, LLC, and Park Place KC, LLC, for their Petition for Declaratory Judgment and Damages state as follows:

### PARTIES

1.      One Park Place, LLC (OPPI) is a limited liability company domiciled in the State of Delaware and at all times material hereto was authorized to do business and doing business in the State of Missouri.

2.      Park Place KC, LLC (PPKC) is a limited liability company domiciled in the State of Delaware and at all times material hereto was authorized to do business and doing business in the State of Missouri.

3.      Mesa Underwriters Specialty Insurance Company f/k/a Montpelier U.S. Insurance Company (MUSIC) is an excess/surplus lines insurance company authorized to do business and doing business in the State of Missouri.

**JURISDICTION AND VENUE**

4.      Jurisdiction is proper in this Court pursuant to Article V, Section 14 of the Missouri Constitution.

5.      Venue is proper in this Court pursuant to R.S.Mo. SS 508.010.

**INSURANCE POLICIES**

6.      MUSIC issued Policy number MP0015002000671 to named insured One Park Place Tower Condominium Association at c/o Curry Association Management, 2700 Kendallwood Parkway #208, Gladstone, Missouri, 64118, with effective dates of November 22, 2011 to November 22, 2012 (MUSIC 671 Policy), Exhibit 1.

7.      MUSIC issued Policy number MP0015002000980 to named insured One Park Place Tower Condominium Association at c/o Curry Association Management, 2700 Kendallwood Parkway, #298, Gladstone, Missouri, 64118, with effective dates of November 22, 2012 to November 22, 2013 (MUSIC 980 Policy), Exhibit 2.

8.      MUSIC issued Policy number MP00150020001417 to named insureds One Park Place Tower Condominium Association and Park Place KC, LLC, at c/o Curry Association Management, 2700 Kendallwood Parkway #208, Gladstone, Missouri, 64118, with effective dates of November 22, 2013 to November 22, 2014 (MUSIC 1417 Policy), Exhibit 3 (collectively MUSIC Policies).

9.      The MUSIC Policies provide Commercial General Liability Coverage for "property damage" subject to the terms and provisions of the policies and obligate MUSIC to "defend the insured against any suit seeking those damages." Exhibits 1 – 3, Section 1— Coverages, 1. a.

10. "Property damage" in the MUSIC Polices is defined as "Physical injury to property, including all resulting loss of use of that property" and "loss of use of tangible property that is not physically injured." Exhibits 1—3, Section V—Definitions, 17. a. and b.

11. The MUSIC Policies provide coverage for "(a)ll court costs taxed against the insured" except attorneys' fees and coverage for prejudgment interest awarded against an insured to the extent of the judgment paid by MUSIC. Exhibits 1—3, Supplementary Payments, 1. e. and f.

## UNDERLYING LAWSUIT

12. On January 24, 2019, One Park Place Tower Condominium Association, Inc. filed a Petition on its own behalf and on behalf of its unit owners in the Circuit Court of Jackson County, Missouri at Kansas City against defendants OPPI, PPKC, and others (One Park Place Petition or Underlying Lawsuit), Exhibit 4.

13. In the One Park Place Petition, Plaintiff sought damages against all defendants for Breach of Fiduciary Duties, Missouri Merchandising Practices Act Violations, Negligent Misrepresentations, and Violation of the Condominium Act. Exhibit 4, Counts I, V, VI, and VII.

14. In the One Park Place Petition, Plaintiff additionally sought damages jointly and severally against OPPI and PPKC for Negligence, Breach of Implied Warranties, and Breach of Express Warranty. Exhibit 4, Counts II, III, and IV.

15. The acts complained of and damages alleged in the One Park Place Petition span the years, in one respect or another, from 2006 (Exhibit 4, ¶ 32) to current, i.e., January 24, 2019 and beyond. (Exhibit 4, ¶ 78).

16. The damages alleged in the One Park Place Petition to have resulted from all of the acts complained of and which were sought from all of the Defendants included property damage consisting of:

a.      Unit water infiltration into certain units due to clogged drains.  Exhibit 4, ¶'s 56, 62, 70, 112, 132.

b.      Property damage to the common elements.  Exhibit 4, ¶'s 55, 56, 70, 78, 112, 113, 138.

c.      Unwashed windows and resultant loss of enjoyment.  Exhibit 4, ¶'s 57 and 58.

17.      In the One Park Place Petition, damages were sought against all Defendants in all Counts for prejudgment interest and costs.  Exhibit 4, pages 22-23, 24, 27, 28, 30, 34, and 36.

18.      OPPI bought the BMA building, the building that would become the One Park Place Condominiums, in 2005.

19.      OPPI built the BMA building, formerly an office building, into condominiums.

20.      OPPI created the One Park Place Tower Condominium Association, Inc., (HOA) in 2007.

21.      When OPPI created the HOA, OPPI transferred all right, title, and interest in the common areas of the structure to the HOA.

22.      In the One Park Place Petition, Plaintiff alleged that PPKC was the successor Declarant to OPPI.  Exhibit 4, ¶ 19.

23.      PPKC was the successor Declarant to OPPI, becoming the successor Declarant in March or April, 2010.

24.      After PPKC became the successor Declarant, OPPI had no involvement in the One Park Place Tower Condominiums.

25.      OPPI was a member of PPKC.

26.      PPKC sold the last unit in the One Park Place Tower Condominiums in December 2017.

4

27.     After PPKC sold the last unit in December 2017, PPKC had no involvement in the One Park Place Tower Condominiums.

28.     All unit owners are members of the HOA.

29.     All decisions of the HOA are made by the Board of Directors for the HOA.

30.     OPPI was never a member of the Board of Directors for the HOA.

31.     PPKC was never a member of the Board of Directors for the HOA.

32.     In the Underlying Lawsuit, Plaintiff alleged that OPPI and PPKC were jointly and severally liable for the Declarant-related claims therein.  Exhibit 4, ¶ 37.

33.     In the Underlying Lawsuit, Plaintiff alleged that OPPI and PPKC were vicariously liable for the acts of the individual HOA Board Members through Member Defendants Kemper, Palma, and Bayangos, among others.  Exhibit 4, ¶ 39.

34.     Kemper, Palma, Bayangos, and other HOA Board Member Defendants listed in paragraph 39 of the One Park Place Petition, were never agents or employees of OPPI or PPKC.

35.     In the Underlying Lawsuit, Plaintiff alleged that OPPI and PPKC "controlled the Association and thus the common elements until April 2015--at the earliest."  Exhibit 4, ¶ 40.

36.     The Underlying Lawsuit has been settled and dismissed with prejudice.

## DEMANDS FOR COVERAGE AND DEFENSE

37.     On February 19, 2019, Christine Kemper, Theresa Palma, and Dinna Bayangos, three of the defendants in the Underlying Lawsuit on their own behaves and on behalf of OPPI and PPKC, provided a copy of the One Park Place Petition to MUSIC and demanded coverage and defense for OPPI and PPKC pursuant to the terms of the MUSIC Policies.  Exhibit 5.

38.     At all times material hereto, Selective Insurance Company of America (Selective) was the claims handler for MUSIC and was MUSIC's agent for purposes of making determinations of coverage under the MUSIC Policies.

5

39.     Plaintiffs received from the attorneys representing One Park Place Tower Condominium Association in the Underlying Lawsuit a letter written by Selective in 2018 which identified Selective as the claims handling and coverage determination agent of MUSIC.  Exhibit 6.

40.     Although listed as addressees on Exhibit 6, Mss. Kemper, Palma, Bayangos, and thus OPPI and PPKC, had never received a copy of the letter until it was provided to them as described herein.

41.     Having received no response from MUSIC to the demand letter of February 19, 2019, Mss. Kemper, Palma, and Bayangos, on their own behaves and on behalf of OPPI and PPKC, wrote to Selective, as agent for MUSIC, on September 12, 2019, demanding full cost reimbursement and full payment of any settlement or judgment enclosing a copy of the February 19, 2019 demand letter.  Exhibit 7.

42.     Plaintiffs never received a response directly from MUSIC or Selective.

43.     On December 5, 2019, MUSIC, through counsel, finally responded to the February 19, 2019, demand for coverage and defense and denied coverage without mentioning defense.  Exhibit 8.

44.     MUSIC's denial of coverage and implied refusal to meet its defense obligations under the MUSIC Policies was based upon incorrect factual assumptions that could have been known to MUSIC if it had conducted any investigation after the One Park Place Petition was filed and provided to MUSIC almost 10 months earlier.

45.     Plaintiffs corrected the factual errors made by MUSIC on January 22, 2020, and repeated their request for defense.  Exhibit 9.

6

46.     Correspondence between counsel for MUSIC and Plaintiffs continued but MUSIC refused provide a defense for Plaintiffs in the Underlying Lawsuit.

47.     MUSIC subsequently provided coverage for Plaintiffs under one or all of the MUSIC Policies.

48.     Plaintiffs have made demand on MUSIC for payment of their costs incurred in defense of the Underlying Lawsuit, which demand has been denied.

**COVERAGE UNDER THE MUSIC POLICIES**

49.     PPKC is a named Additional Insured under the MUSIC 671 Policy and the MUSIC 980 Policy.  Exhibits 1 and 2, CG 20 10 07 04.

50.     OPPI is an insured under the MUSIC 671 Policy and the MUSIC 980 Policy due to its status as member of PPKC.  Exhibits 1 and 2, SECTION II—WHO IS AN INSURED, page 8 of 15.

51.     PPKC is a named Insured under the MUSIC 1417 Policy.  Exhibit 3, Common Policy Declarations.

52.     OPPI is an insured under the MUSIC 1417 Policy due to its status as a member of PPKC.  Exhibit 3, SECTION II—WHO IS AN INSURED, page 8 of 15.

53.     All of the MUSIC Policies provide coverage for property damage caused by an occurrence.  Exhibits 1, 2, and 3, SECTION 1—Coverage 1. b. (1).

54.     All of the MUSIC Policies define "property damage" to include "physical injury to tangible property, including all resulting loss of use of that property" or "loss of use of tangible property that is not physically injured."  Exhibits 1, 2, and 3, SECTION V—DEFINITIONS, 17. a. and b.

55.     All of the MUSIC Policies define "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Exhibits 1, 2, and 3, SECTION V—DEFINITIONS, 13.

56.     The property damage alleged in the Underlying Lawsuit as set forth in paragraph 16, above, constitutes "property damage" as defined in the MUSIC Policies.

57.     The infiltration of water into certain units, property damage to the common elements, and unwashed windows with resultant loss of use alleged in the Underlying Lawsuit as set forth in paragraph 16, above, are "occurrences" as defined in the MUSIC Policies.

58.     None of the units, common elements, or windows referenced in the Underlying Lawsuit as set forth in paragraph 16, above, were owned by OPPI or PPKC when the alleged property damage occurred.

59.     None of the units, common elements, or windows referenced in the Underlying Lawsuit as set forth in paragraph 16, above, were ever owned by PPKC and were not owned by OPPI after creation of the HOA in 2007.

60.     Neither OPPI nor PPKC had knowledge of the property damage alleged in the Underlying Lawsuit as set forth in paragraph 16, above, before the inception date of the MUSIC 671 Policy.

61.     Neither OPPI nor PPKC had knowledge of the property damage alleged in the Underlying Lawsuit as set forth in paragraph 16, above, before the inception date of the MUSIC 980 Policy.

62.     Neither OPPI nor PPKC had knowledge of the property damage alleged in the Underlying Lawsuit as set forth in paragraph 16, above, before the inception date of the MUSIC 1417 Policy.

## COUNT I DECLARATORY JUDGMENT

63.     Plaintiffs incorporate all of the allegations contained in paragraphs 1 through 62, above, as though fully set forth herein.

64.     Based upon the facts known or the facts that should have been known by MUSIC and/or the allegations in the One Park Place Petition, there was a reasonable possibility that all or some of the claims made and damages sought in the Underlying Lawsuit were covered under the MUSIC Policies for Plaintiffs OPPI and/or PPKC.

65.     OPPI and PPKC made demand upon MUSIC to meet its duty to defend them in the Underlying Lawsuit pursuant to the terms of the MUSIC Policies.

66.     OPPI and PPKC complied with all of the relevant terms of the MUSIC Policies.

67.     The refusal to provide a defense for OPPI and PPKC was without just cause or excuse.

68.     An actual controversy has arisen and now exists between Plaintiffs and MUSIC regarding the MUSIC Policies and MUSIC's refusal to defend Plaintiffs in the Underlying Lawsuit.

69.     Plaintiffs now seek a judicial declaration that MUSIC had a duty to defend Plaintiffs, jointly or severally, in the Underlying Lawsuit.

70.     Such a declaration is necessary and proper at this time.

## COUNT II BREACH OF CONTRACT

71.     Plaintiffs incorporate all of the allegations contained in paragraphs 1 through 70, above, as though fully set forth herein.

72.     Plaintiffs satisfied all of their obligations under the MUSIC Policies.

73.     By refusing to defend OPPI and/or PPKC for the claims made and damages alleged in the Underlying Lawsuit, MUSIC breached the terms of the MUSIC 671 Policy, the MUSIC 980 Policy, and/or the MUSIC 1417 Policy.

74.     As a result of MUSIC's breach, Plaintiffs have incurred defense costs, attorneys' fees and expenses, and damages in the sum of $516,577.75.

## COUNT III—BAD FAITH

75.     Plaintiffs incorporate all of the allegations in paragraphs 1 through 74, above as though fully set forth herein.

76.     Each MUSIC Policy created an implied covenant of good faith and fair dealing owed by MUSIC to one or more or all of the Plaintiffs.

77.     MUSIC breached the covenant of good faith and fair dealing and acted in bad faith by:

    a.  Refusing to respond to Plaintiffs' demand for coverage and defense under the MUSIC Policies for nearly 10 months.

    b.  Addressing correspondence to its insureds and representing that had been provided to its insureds when, in fact, it had not.

    c.  Refusing to defend its insureds when there was a reasonable possibility of coverage for one or more of their insureds under one or more of the MUSIC Policies.

    d.  Refusing Plaintiffs demand for reimbursement for costs of defense they incurred in the Underlying Lawsuit.

    e.  Advancing reasons for denial of coverage and defense for reasons MUSIC knew of should have known were false and misleading.

78.     MUSIC's conduct as set forth herein was willful, reckless, and wanton entitling Plaintiffs, jointly or severally, to an award of punitive or exemplary damages.

## COUNT IV—VEXTIOUS REFUSAL TO PAY

79.     Plaintiffs incorporate all of the allegations in paragraphs 1 through 78, above, as though fully set forth herein.

80.     MUSIC's refusal to pay for the defense of Plaintiffs, jointly or severally, for the claims made and damages alleged in the Underlying Lawsuit was without just cause or excuse.

81.     Pursuant to R.S.Mo. SS 375.420, Plaintiffs, jointly or severally, are entitled to receive from MUSIC 20% of their first $1,500 loss, 10% of their loss in excess of $1,500, and reasonable attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment in their favor and against MUSIC as follows:

   a.     A declaratory judgment that MUSIC had a duty to defend Plaintiffs OPPI and/or PPKC, jointly or severally, in the Underlying Lawsuit;

   b.     A fair and reasonable sum for the damages sustained by Plaintiffs, jointly or severally, on account of the breach of contract, negligence, and/or bad faith of MUSIC;

   c.     For an award of punitive damages against MUSIC;

   d.     For a sum representing 20% of the first $1,500 in loss sustained by Plaintiffs and 10% of their loss in excess of $1,500 against MUSIC;

   e.     Reasonable attorneys' fees and expenses incurred by Plaintiffs for this action against MUSIC;

   f.     The costs of this action; and

such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs, by and through counsel, hereby demand a jury to resolve all issues in the above captioned matter.

ARMSTRONG TEASDALE LLP


By: /s/ *Lynn W. Hursh*
     Lynn W. Hursh         #38653
     Pamela J. Winter     #68087
     2345 Grand Boulevard, Suite 1500
     Kansas City, Missouri 64108-2617
     816.221.3420
     816.221.0786 (Facsimile)
     lhursh@atllp.com
     pwinter@atllp.com

ATTORNEYS FOR PLAINTIFFS ONE PARK
PLACE INVESTORS, LLC AND PARK
PLACE KC, LLC

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM



## MONTPELIER US INSURANCE COMPANY

MONTPELIER US INSURANCE COMPANY

P.O. BOX 4030

SCOTTSDALE, ARIZONA 85261-4030

COMMERCIAL INSURANCE POLICY

MUSIC and its General Agent RDS Group of Kansas, LLC

are pleased to have issued Policy MP0015002000671 to

ONE PARK PLACE TOWER CONDOMINIUM ASSOCIATION

In witness whereof, Montpelier US Insurance Company has caused this policy to be signed by its President and countersigned on the Declaration page by a duly Authorized Representative of the Company.

_____

Corporate Secretary

_____

President

MUSIC

Case 4:23-cv-00847-JAM   Document 1-1   Filed 11/17/23   Page 14 of 278

**EXHIBIT 1**

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

# COMMON POLICY DECLARATIONS


**MONTPELIER US**
INSURANCE COMPANY

**Policy Number:** MP0015002000671

☒ New ☐ Cross-Ref
☐ Renewal ☐ Rewrite

**Previous Policy Number:** _____

**Policy Period:** From 11/22/2011 To 11/22/2012 at **12:01 A.M.** Standard Time at your mailing address shown below.

No Flat Cancellation

**Named Insured:**
ONE PARK PLACE TOWER CONDOMINIUM ASSOCIATION

SL344705 **Tax State:** MO

This is evidence of insurance procured and developed under the Missouri Surplus Lines Laws. It is NOT covered by the Missouri Insurance Guaranty Association. This insurer is not licensed by the State of Missouri and is not subject to its supervision.

**Mailing Address:**
C/O CURRY ASSOCIATION MANAGEMENT
2700 KENDALLWOOD PKWY #208
GLADSTONE                    MO 64118

**Agent and Mailing Address:**       **Agent Number:** 15002
RDS Group of Kansas, LLC

8400 W. 110th St., Suite 110
Overland Park          KS 66210

**Business Description:**
CONDOMINIUM

**Select Coverage Part (for which insurance is being afforded)**

| | |
|---|---|
| ☒ **Commercial General Liability** | $ ■■■■ |
| ☐ **Commercial Property** | $ |
| ☐ **Commercial Inland Marine** | $ |
| ☐ **Commercial Crime** | $ |
| ☐ **Garage** | $ |
| ☐ **TRIA** | $ |
| ☐ **Other** (Describe) | $ |

INSPECTION FEE        $200.00
MISSOURI TAX          $198.60

**Total Advance Premium** $ ■■■
**Total Other Charges** $
**Total** $

**Premiums Shown are payable at inception or as indicated on the individual Coverage Declarations.**

Form(s) and Endorsement(s), including edition dates, made a part of this policy at the time of issue: See Schedule of Forms

Countersigned: Overland Park      KS   12/06/2011   By: _____
                                      **Date**              Authorized Agent
MB/CL

MUS 01 01 10002 0910

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

# SCHEDULE OF FORMS AND ENDORSEMENTS



**MONTPELIER US**
INSURANCE COMPANY

| | |
|---|---|
| **Named Insured** | ONE PARK PLACE TOWER CONDOMINIUM ASSOCIATION |
| **Policy Number** | MP0015002000671 |
| **Effective Date:** | 11/22/2011 |

MUS 01 01 10001 0110  POLICY JACKET
MUS 01 01 10002 0910  COMMON POLICY DECLARATION
MUS 01 01 10003 1207  SCHEDULE OF FORMS & ENDORSEMENTS
MUS 01 01 10004 1207  NOTICES TO POLICY HOLDER
MUS 01 01 10005 0211  SERVICE OF SUIT
MUS 01 01 10007 1207  MINIMUM EARNED PREMIUM ENDORSEMENT
MUS 01 01 10009 1207  NON-STACKING OF LIMITS ENDORSEMENT
IL 00 17 11 98      COMMON POLICY CONDITIONS
MUS 01 01 20001 0608  GENERAL LIABILITY COVERAGE PART DECLARATIONS
MUS 01 01 20002 1207  GENERAL LIABILITY SUPPLEMENTAL DECLARATIONS
MUS 01 01 20003 1207  ENDORSEMENT - ADDITIONAL EXCLUSIONS & PROVISIONS LIABILITY INSURANCE
MUS 01 01 20004 1207  LIABILITY DEDUCTIBLE
MUS 01 01 20006 1207  EXCL - CROSS SUITS (CONDOMINIUM, TOWN HOME, & HOMEOWNERS ASSOCIATIONS)
MUS 01 01 20007 1207  LIMITED COVG FOR CONTRACTORS & EMPLOYEES - GENERAL LIABILITY
MUS 01 01 20023 1207  SPECIAL CONDITIONS - SUBCONTRACTORS
MUS 01 01 20024 0308  HIRED & NON-OWNED AUTO LIABILITY
MUS 01 01 20027 1207  EXCL - DIRECTORS & OFFICERS LIABILITY
MUS 01 01 20041 0308  COVERAGE FOR ASSAULT AND BATTERY
MUS 01 01 20042 1111  LIMITED COVERAGE FOR ASSAULT AND BATTERY
IL 00 21 05 04      NUCLEAR ENERGY LIABILITY EXCL ENDT
CG 00 01 12 04      COMMERCIAL GENERAL LIABILITY COVG FORM
CG 00 62 12 02      WAR LIABILITY EXCL
CG 20 10 07 04      AI - OWNERS, LESSEES OR CONTRACTORS - SCHEDULED PERSON OR ORGANIZATION
CG 20 11 01 96      AI - MANAGERS OR LESSORS OF PREMISES
CG 21 39 10 93      CONTRACTUAL LIABILITY LIMITATION
CG 21 41 11 85      EXCLUSION - INTERCOMPANY PRODUCTS SUITS
CG 21 44 07 98      LIMITATION OF COVG TO DESIGNATED PREMISES OR PROJECT
CG 21 47 07 98      EMPLOYMENT-RELATED PRACTICES EXCLUSION
CG 21 49 09 99      EXCL - TOTAL POLLUTION ENDT
CG 21 67 12 04      EXCL - FUNGI OR BACTERIA
CG 21 75 06 08      EXCL OF CERTIFIED ACTS OF TERRORISM & OTHER ACTS OF TERRORISM
CG 24 07 01 96      PRODUCTS/COMPLETED OPERATIONS HAZARD REDEFINED

# SCHEDULE OF FORMS AND ENDORSEMENTS

| | |
|---|---|
| Named Insured | ONE PARK PLACE TOWER CONDOMINIUM ASSOCIATION |
| Policy Number | MP0015002000671 |
| Effective Date: | 11/22/2011 |

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Copyright, Insurance Services Office, Inc., 1998
Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM



# COMMERCIAL GENERAL LIABILITY Coverage Part Declarations

**This Coverage Part consists of this Declarations Form, the Common Policy Conditions, the Commercial General Liability Conditions, the Coverage Form(s), and the Coverage Endorsement(s) indicated as applicable.**

Named Insured: ONE PARK PLACE TOWER CONDOMINIUM ASSOCIATION

Policy Number: MP0015002000671

Effective Date: 11/22/2011

## LIMITS OF INSURANCE                    ☒ "X" If Supplemental Declarations is attached.

| | |
|---|---|
| General Aggregate Limit (Other Than Products / Completed Operations) | $ 2,000,000 |
| Products / Completed Operations Aggregate Limit | $ SEE BELOW |
| Personal and Advertising Injury Limit | $ 1,000,000 |
| Each Occurrence Limit | $ 1,000,000 |
| Damage to Premises Rented to You Limit    (Any 1 Premises) | $ 50,000 |
| Medical Expense Limit    (Any 1 Person) | $ 1,000 |

## BUSINESS DESCRIPTION AND LOCATION OF PREMISES

**Form of Business:**

☐ Individual  ☐ Joint Venture  ☐ Partnership  ☐ Limited Liability Company  ☒ Organization (other): ASSOCIATION

**Business Description:** CONDOMINIUM

**Location(s) of All Premises you Own, Rent or Occupy:**

1) 700 WEST 31ST STREET KANSAS CITY, MO 64111

2)

3)

## CLASSIFICATION & PREMIUM PROVIDED

| Code No. | Classification Description | Premium Basis / Exposure* | Rate Premises / Operations | Rate Products / Comp Ops | Advanced Premium Premises / Operations | Advanced Premium Products / Comp Ops |
|---|---|---|---|---|---|---|
| 62003 | Condominiums - Residential (association risk only) | u | ▮▮▮▮▮ | INCL. | ▮▮▮▮ | INCL. |
| | Products-Completed Operations are subject to the General Aggregate Limit | | | | | |
| 48925 | Swimming Pools | t | ▮▮▮▮▮ | INCL. | ▮▮▮▮ | INCL. |
| | Products-Completed Operations are subject to the General Aggregate Limit | | | | | |
| 62003 | CLUBHOUSE FACILITIES | FLAT | ▮▮▮▮ | INCL. | ▮▮▮▮ | INCL. |
| | Products-Completed Operations are subject to the General Aggregate Limit | | | | | |

*Premium Basis Types: **p - Payroll** (per $1,000 of Payroll)  **c - Cost** (per $1,000 Total Cost)  **s - Sales** (per $1,000 Gross Sales)
**a - Area** (per 1,000 Square feet of area)  **m - Admissions** (per 1,000 Admissions)  **u - Units** (per Unit)
**t – Total** (per each)

**Total Annual Premium: $ ▮▮▮▮▮**

| Forms/Endorsements Applicable | See Schedule of Forms and Endorsements |
|---|---|

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

**Premium Basis Definitions:**

**1)** "Payroll" means:
Remuneration which includes money or substitutes for money.
**Payroll Includes:**

    **a.** Commissions, bonuses, pay for holidays, vacations or periods of illness;

    **b.** Extra pay for overtime in accordance with the manuals in use by us;

    **c.** Payments by an employer or amounts otherwise required by law to be paid by employees to statutory insurance or pension plans, such as the Federal Social Security Act;

    **d.** Payment to employees on any basis other than time worked, such as piece work, profit sharing or incentive plans;

    **e.** Payment or allowance for hand tools or power tools used by hand provided by employees and used in their work or operations for the insured;

    **f.** The rental value of an apartment or house provided for an employee based on comparable accommodations;

    **g.** Value of meals and lodging other than an apartment or house received by employees as part of their pay;

    **h.** The value of store certificates, merchandise, credits or any other substitute for money received by employees as part their pay;

    **i.** The payroll of mobile equipment operators and their helpers, whether or not the operators are designated or licensed to operate automobiles. If the operators and their helpers are provided to the insured along with equipment hired under contract and their actual payroll is not known, use 1/3 of the total amount paid out by the insured for the hire or the equipment;

    **j.** The payroll of executive officers and individual insureds and co-partners in accordance with the manuals in use by us;

    **k.** Fees paid to employment agencies for temporary personnel provided to the insured.

**Payroll does not include:**

    **a.** Tips and other gratuities received by employees;

    **b.** Payments by an employer to group insurance or group pension plans for employees I in accordance with manuals in use by us;

    **c.** The value of special rewards for individual invention or discovery;

    **d.** Dismissal or severance payments except for time worked or accrued vacation;

    **e.** The payroll of clerical office employees;

    **f.** The payroll of salesmen, collectors or messengers who work principally away from the insured's premises. Salesmen, collectors or messengers are those employees engaged principally in any such duties away from the premises of the employer; Exception: This term does not apply to any employee whose duties include the delivery of any merchandise handled, treated or sold.

    **g.** The payroll of aircraft pilots or co-pilots if their principal duties are to work on or in connection with aircraft in either capacity.

**The rates apply per $1,000 payroll.**

**2)** "Cost" means:
The total cost of all work let or sublet in connection with each specific project including:

    **a.** The cost of all labor, materials and equipment furnished, used or delivered for use in the execution of the work; and

    **b.** All fees, bonuses or commissions made, paid or due.

**The rates apply per $1,000 of cost.**

**3)** "Sales" means:

The gross amount charged by the named insured, concessionaires or the named insured or by others trading under the insured's name for:

    **1.** All goods or products, sold or distributed;

    **2.** Operations performed during the policy period;

    **3.** Rentals.

    **A. Gross Sales includes:**

        **1.** Foreign exchange discounts;

        **2.** Freight allowance to customers;

        **3.** Total sales of consigned goods and warehouse receipts;

        **4.** Trade or cash discounts;

        **5.** Bad debts; and

        **6.** Repossession of items sold on installments (amount actually collected).

    **B. Gross Sales excludes:**

        **1.** Sales or excise taxes which are collected and submitted to a governmental division;

        **2.** Credits for repossessed merchandise and products returned. Allowances for damaged and spoiled goods;

        **3.** Finance charges for items sold on installments;

        **4.** Freight charges on sales if freight is charged as a separate item on customers invoice; and

        **5.** Royalty income from patent rights or copyrights which are not products sales.

**The rates apply per $1,000 of gross sales.**

**4)** "Area" means:

The total number of square feet or floor space at the insured premises, computed as follows:

    **A.** For entire buildings, by multiplying the product of the horizontal dimensions of the outside of the outer building walls by the number of floors, including basements but do not use the area of the following:

        **1.** Courts and mezzanine types of floor openings.

        **2.** Portions of basements of floors where 50% or more of the area used for shop or storage for building maintenance, dwelling by building maintenance employees, heating units, power plants or air-conditioning equipment.

    **B.** For tenants, determine the area they occupy in the same manner as for the entire building.

**The rates apply per 1,000 square feet of area.**

**5)** "Admissions" means:
The total number of persons, other than employees of the named insured, admitted to the event insured or to events conducted on the premises whether on paid admissions, tickets, complimentary tickets or passes.

**The rates apply per 1,000 admissions.**

**6)** "Units" means:
A single room or group of rooms intended for occupancy as separate living quarters by a family, by a group of unrelated persons living together, or by a person living alone.

**The rates apply per each unit.**

**7)** "Total" means:
This basis of premium involves units of exposure, and the quantity comprising each unit of exposure is indicated on the declarations page, such as "per person."

**The rates apply per unit.**

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM



**COMMERCIAL GENERAL LIABILITY** Coverage Part Supplemental Declarations

Named Insured: ONE PARK PLACE TOWER CONDOMINIUM ASSOCIATION

Policy Number: MP0015002000671

Effective Date: 11/22/2011

## ADDITIONAL LOCATION OF PREMISES

**Location(s) of All Premises you Own, Rent or Occupy:**

)
)
)
)
)
)
)
)
)
)
)

## ADDITIONAL CLASSIFICATIONS & PREMIUMS PROVIDED

| Code No. | Classification Description | Premium Basis / Exposure* | Rate Premises / Operations | Rate Products / Comp Ops | Advanced Premium Premises / Operations | Advanced Premium Products / Comp Ops |
|---|---|---|---|---|---|---|
| 88888 | Hired Automobile Coverage - SEE MUS010120024 | FLAT | ▮ | INCL. | ▮ | INCL. |
| | Products-Completed Operations are subject to the General Aggregate Limit | | | | | |
| | ASSAULT OR BATTERY - SEE MUS010120042 | FLAT | ▮ | INCL. | ▮ | INCL. |
| 46622 | Parking - Private | FLAT | ▮ | INCL. | 150 | INCL. |
| | Products-Completed Operations are subject to the General Aggregate Limit | | | | | |

*Premium Basis Types: **p - Payroll** (per $1,000 of Payroll)    **c - Cost** (per $1,000 Total Cost)    **s - Sales** (per $1,000 Gross Sales)
**a - Area** (per 1,000 Square feet of area)    **m - Admissions** (per 1,000 Admissions)    **u - Units** (per Unit)
**t — Total** (per each)

| Extension of General Liability Declaration - Total Annual Premium: | $ |
|---|---|

| Forms/Endorsements Applicable | See Schedule of Forms and Endorsements |
|---|---|

MUS 01 01 20002 1207

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM


**MONTPELIER US**
INSURANCE COMPANY

## COMMERCIAL GENERAL LIABILITY Coverage Part Supplemental Declarations

Named Insured:     ONE PARK PLACE TOWER CONDOMINIUM ASSOCIATION

Policy Number:     MP0015002000671

Effective Date:    11/22/2011

### ADDITIONAL LOCATION OF PREMISES

**Location(s) of All Premises you Own, Rent or Occupy:**

)
)
)
)
)
)
)
)
)
)
)
)

### ADDITIONAL CLASSIFICATIONS & PREMIUMS PROVIDED

| Code No. | Classification Description | Premium Basis / Exposure* | Rate Premises / Operations | Rate Products / Comp Ops | Advanced Premium Premises / Operations | Advanced Premium Products / Comp Ops |
|---|---|---|---|---|---|---|
| 11111 | Additional Insured - CG2010 & CG2011 | t | ▮▮▮ | INCL. | ▮▮▮ | INCL. |
| | Products-Completed Operations are subject to the General Aggregate Limit | | | | | |

*Premium Basis Types:  **p - Payroll** (per $1,000 of Payroll)     **c - Cost** (per $1,000 Total Cost)     **s - Sales** (per $1,000 Gross Sales)
**a - Area** (per 1,000 Square feet of area)     **m - Admissions** (per 1,000 Admissions)     **u - Units** (per Unit)
**t – Total** (per each)

| **Extension of General Liability Declaration - Total Annual Premium:** | **$** |
|---|---|

| **Forms/Endorsements Applicable** | See Schedule of Forms and Endorsements |
|---|---|

MUS 01 01 20002 1207


**MONTPELIER US**
**INSURANCE COMPANY**

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

Endorsement #

Named Insured: ONE PARK PLACE TOWER CONDOMINIUM ASSOCIATION

Policy Number: MP0015002000671     Effective Date: 11/22/2011

(The above information is required only when this form is added after the policy is issued)

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**Endorsement - Additional Exclusions and Provisions Liability Insurance**

In consideration of the premium charged, it is understood and agreed that the following shall apply to this policy:

**LEAD, ASBESTOS AND SILICA EXCLUSION**
This policy does not apply to "bodily injury", "personal injury" or "property damage" arising out of the manufacture, sale, lease, distribution, storage, handling, installation, repair, removal, testing, inspection, disposal or other use of, exposure to, or contact with any goods, products, materials, plant life, or structures containing lead, asbestos or silica in any form including, without limitation, claims arising out of continuous, intermittent or repeated exposure to and/or ingestion, inhalation or absorption of lead, asbestos or silica in any form. This exclusion applies regardless of whether the "bodily injury", "personal injury" or "property damage" results from inhaling, eating, drinking, physical contact with or any other exposure to lead, asbestos or silica in any form.

**SUBSIDENCE OF LAND EXCLUSION**
This policy does not apply to "bodily injury", "personal injury" or "property damage" arising out of or aggravated by the subsidence of land as a result of landslide, mudflow, earth sinking or shifting, whether arising from natural causes or resulting from operations of the Named Insured or any other subcontractor of the Named Insured.

**PUNITIVE OR EXEMPLARY DAMAGES EXCLUSION**
This policy does not apply to any claim or indemnification for punitive or exemplary damages. If a suit is brought against the Insured for a claim falling within the coverage provided by the policy, seeking both compensatory and punitive or exemplary damages, then the Company will afford a defense to such action. The Company shall not have an obligation to pay for any costs, interest, or damages attributable to punitive or exemplary damages.

**ASSAULT AND BATTERY EXCLUSION**
This policy does not apply to "bodily injury", "personal injury" or "property damage" arising out of assault and/or battery or out of any act or omission in connection with the prevention or suppression of such acts, including the failure to warn, train or supervise, whether caused by or at the instigation or direction of the Insured, his employees, patrons or any other person.

**PCB LIABILITY EXCLUSION**
This policy does not apply to "bodily injury", "personal injury" or "property damage" arising out of the manufacture, handling, distribution, sale, application, consumption or use of any products known as PCB, polychlorinated biphenyis or which contains polychlorinated biphenyis or which has the same chemical formulary, or which is generally known in the chemical trade as having a like formulation, structure or function, by whatever name, manufactured, sold or distributed.

**OCCUPATIONAL DISEASES EXCLUSION**
This insurance does not apply to "bodily injury", "personal injury" or "property damage arising out of "Occupational Diseases." "Occupational Diseases" means any injury, including death, sickness, disease or disability, defined as occupational disease in any workers compensation or disability benefits laws, statues or regulations of any jurisdiction in which the "Occurrence" occurred or the "Occupational Disease" arose.

MUS 01 01 20003 1207

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

**AMENDMENT OF LIABILITY PREMIUM CONDITIONS**

The premium designated in this policy as "advance premium" is a minimum and deposit premium, which shall be credited to the amount of the earned premium due at the end of the policy period. At the close of each period (or part thereof terminating with the end of the policy period) designated in the declarations as the audit period, the earned premium shall be computed for such period and upon notice thereof to the Named Insured, shall become due and payable. If the total earned premium for the policy period is less than the premium designated as "advance premium", such "advance premium" is the minimum premium for the policy period indicated, and is not subject to further adjustment.

All other terms and conditions of this policy remain unchanged.

_____     _____

Authorized Signature                                 Date

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

**MONTPELIER US**
**INSURANCE COMPANY**

Endorsement #

Named Insured: ONE PARK PLACE TOWER CONDOMINIUM ASSOCIATION

Policy Number: MP0015002000671 _____ Effective Date: 11/22/2011 _____

(The above information is required only when this form is added after the policy is issued)

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**Liability Deductible**
(Including Costs and Expenses)

| Coverage | Amount of Deductible | |
|---|---|---|
| Bodily Injury Liability | 500 | per "claim" |
| Property Damage Liability | 500 | per "claim" |
| Personal and Advertising Injury | 500 | per "claim" |

A. The Company's obligations under the coverage afforded by this policy to pay damages on behalf of the Insured apply only to the amount of damages in excess of the deductible amount stated above.

B. The deductible amount applies to all damages sustained by one person or organization as the result of any one claim.

C. The deductible amount stated will also apply towards investigation, adjustment and legal expenses incurred in the handling and investigation of each claim, whether or not payment is made to claimant, compromise settlement is reached or claim is denied.

D. The terms of the policy, including those with respect to the Company's rights and duties with respect to the defense of suits and the Insured's duties in the event of an occurrence apply irrespective of the application of the deductible amount.

E. The Company, at its sole election and option, may either:

1. Pay any part of or all of the deductible amount to effect settlement of any claim or suit, and upon notification of the action taken, the Named Insured shall promptly reimburse the Company for such part of the deductible amount as has been paid by the Company; or

2. Simultaneously upon receipt of notice of any claim or at any time thereafter, call upon the Insured and request said Insured to pay over and deposit with the Company all or part of the deductible amount, to be held and applied by the Company as herein provided.

All other terms and conditions of this policy remain unchanged.

_____                    _____
Authorized Signature                                                          Date

MUS 01 01 20004 1207

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s): | Location(s) Of Covered Operations |
|---|---|
| PARK PLACE KC, LLC<br>C/O AY KC, INC.<br>ATTN: TESS PALMA<br>1065 E. HILLSDALE BLVD STE: 105<br>FOSTER CITY, CA 94404 | |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

**1.** Your acts or omissions; or

**2.** The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to "bodily injury" or "property damage" occurring after:

**1.** All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

**2.** That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

 © ISO Properties, Inc., 2004

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

POLICY NUMBER: MP0015002000671

**COMMERCIAL GENERAL LIABILITY**
**CG 20 11 01 96**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – MANAGERS OR LESSORS OF PREMISES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

## SCHEDULE

**1.** Designation of Premises (Part Leased to You): 700 WEST 31ST STREET KANSAS CITY, MO 64111

**2.** Name of Person or Organization (Additional Insured): CURRY ASSOCIATION MANAGEMENT, INC. & ITS AFFILIATES

**3.** Additional Premium: 100.00

(If no entry appears above, the information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

WHO IS AN INSURED (Section **II**) is amended to include as an insured the person or organization shown in the Schedule but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to you and shown in the Schedule and subject to the following additional exclusions:

This insurance does not apply to:

**1.** Any "occurrence" which takes place after you cease to be a tenant in that premises.

**2.** Structural alterations, new construction or demolition operations performed by or on behalf of the person or organization shown in the Schedule.

**CG 20 11 01 96**          Copyright, Insurance Services Office, Inc., 1994          **Page 1 of 1**    ☐



Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

Endorsement #

Named Insured: ONE PARK PLACE TOWER CONDOMINIUM ASSOCIATION

Policy Number: MP0015002000671    Effective Date: 11/22/2011

(The above information is required only when this form is added after the policy is issued)

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### Coverage for Assault and Battery

This endorsement modifies an exclusion under endorsement MUS 01 01 20003 1207, Endorsement Additional Exclusions and Provisions Liability Insurance.

In consideration of the additional premium shown below, it is understood and agreed that the Exclusion for Assault and Battery is DELETED from endorsement MUS 01 01 20003, Endorsement Additional Exclusions and Provisions Liability Insurance.

Additional Premium ▮▮▮▮

All other terms and conditions of this policy remain unchanged.

_____     _____

Authorized Signature    Date

MUS 01 01 20041 0308

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM



Named Insured: <u>ONE PARK PLACE TOWER CONDOMINIUM ASSOCIATION</u>

Policy Number: <u>MP0015002000671</u>    Effective Date: <u>11/22/2011</u>

(The above information is required only when this form is added after the policy is issued.)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### Limited Coverage for Assault and Battery

This endorsement modifies an exclusion under endorsement MUS 01 01 20003 1207, Endorsement Additional Exclusion and Provisions Liability Insurance.

In consideration of the additional premium shown below, it is understood and agreed that this insurance applies to "bodily injury", "property damage" and "personal injury" arising from an assault or battery or out of any act or omission in connection with the prevention or suppression of such act, including the failure to warn, train, supervise, whether caused by or at the instigation or direction of the Insured, the Insured's employees, patrons or any other person, subject to the limits show on the general liability declaration page.

The Limit of Insurance for this coverage is: $ <u>100,000</u>    each occurrence  and $ <u>100,000</u>   aggregate for the policy. This aggregate limit is included in and not in addition to the policy General aggregate Limit.

Additional Premium $ ▉▉▉▉▉▉

All other terms and conditions of this policy remain unchanged.

MUS 01 01 20042 1111

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM


**MONTPELIER US**
INSURANCE COMPANY

Endorsement #

Named Insured: ONE PARK PLACE TOWER CONDOMINIUM ASSOCIATION

Policy Number: MP0015002000671          Effective Date: 11/22/2011

(The above information is required only when this form is added after the policy is issued)

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**Special Conditions - Subcontractors**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

The following condition is added to SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS section of the policy:

SPECIAL CONDITIONS - SUBCONTRACTORS

You will obtain Certificates of Insurance with Limits of Insurance equal to or greater than those provided by this Policy from all subcontractors or independent contractors prior to commencement of any work performed.

Failure to comply with this Special Condition does not alter the coverage provided by this Policy. However, should you fail to comply; a premium charge will be made. The premium charge will be computed by multiplying the "total cost" of all work sublet that fails to meet the above condition, by the rate per $1,000 of payroll for the applicable classification of the work performed.

If the policy does not contain the applicable classification and rate, we will multiply our usual and customary rate per $1,000 payroll for that classification, by the net modification factor, if any, applied to the policy rates.

"Total cost" means the cost of all labor, materials, and equipment furnished, used or delivered for use in the execution of the work, and all fees, bonuses or commissions paid.

All other terms and conditions of this policy remain unchanged.

_____          _____

Authorized Signature          Date

MUS 01 01 20023 1207

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM


**MONTPELIER US**
**INSURANCE COMPANY**

Endorsement #

Named Insured:  ONE PARK PLACE TOWER CONDOMINIUM ASSOCIATION

Policy Number:  MP0015002000671         Effective Date: 11/22/2011

(The above information is required only when this form is added after the policy is issued)

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

**Hired and Non-Owned Auto Liability**

This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE FORM

**SCHEDULE**

| Coverage | Additional Premium |
|---|---|
| Non-Ownership Liability | $ ▉ |
| Hired Car Liability | $ ▉ |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

The insurance provided under COVERAGE A (Section I) applies to "bodily injury" or "property damage" arising out of the maintenance or use of a "hired auto" or "non-owned auto" by you or your employees in the course of your business. With respect to the insurance provided by this endorsement:

1.  Exclusions O  and P are deleted.  Exclusion G is modified by deleting the word "auto" in the first paragraph under COVERAGE A (Section I) of this coverage part.  Exclusion E is replaced by the following:
     a.  "Bodily injury:"
         **(1)** To an employee of the insured arising out of and in the course of employment by the insured; or
         **(2)** To the spouse, child, parent, brother or sister of that employee as a consequence of **(1)** above.
         This exclusion applies:
         **(1)** Whether the insured may be liable as an employer or in any other capacity; and
         **(2)** To any obligation to share damages with or repay someone else who must pay damages because of injury.
         This exclusion does not apply to:
         **(1)** Liability assumed by the insured under an "insured contract;" or
         **(2)** "Bodily injury" arising out of and in the course of domestic employment by the insured unless benefits for such injury are in whole or in part either payable or required to be provided under any workers compensation law.
     b. "Property damage" to:
         **(1)** Property owned or being transported by, or rented or loaned to the insured; or
         **(2)** Property in the care, custody or control of the insured.

2.  WHO IS AN INSURED (Section II) is replaced by the following:
     Each of the following is an insured under this insurance to the extent set forth below:
     a.  You;
     b.  Any other person using a "hired auto" with your permission;

MUS 01 01 20024 0308

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

(1) An "auto" you hire or borrow; or
(2) An "auto" you don't own, hire or borrow in your business or personal affairs; or
(3) An "auto" hired or rented by your "employee" on your behalf and at your direction.
  **c.** Any other person or organization, but only with respect to their liability because of acts or omissions or an insured under a. or b.

None of the following is an insured:
  **a.** Any person engaged in the business of his or her employer with respect to "bodily injury" to any co-employee of such person injured in the course of employment;
  **b.** Any partner or executive officer with respect to any "auto" owned by such partner or officer or a member of his or her household;
  **c.** Any person while employed in or otherwise engaged in duties in connection with an "auto business," other than an "auto business" you operate;
  **d.** The owner or lessee (of whom you are a sublessee) of a "hired auto" or the owner of a "non-owned auto" or any agent or employee of any such owner or lessee;
  **e.** Any person or organization with respect to the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations.

3. With respect to the operation of a "hired" or "non-owned" auto, the following additional conditions apply:

OTHER INSURANCE
  a. Except for any liability assumed under an "insured contract" the insurance provided by This Coverage Form is excess over any other collectible insurance.

    However, if your business is the selling, servicing, repairing, parking or storage of "autos", the insurance provided by this endorsement is primary when covered "bodily injury" or "property damage" arises out of the operation of a customer's "auto" by you or your "employee".

  b. When this Coverage Form or any other Coverage Form or policy covers on the same basis, whether excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of all the Coverage Forms and policies covering on the same basis.

TWO OR MORE COVERAGE FORMS OR POLICIES ISSUED BY US
If the Coverage Form and any other Coverage Form or policy issued to you by us or any company affiliated with us apply to the same "accident", the aggregate maximum Limit of Insurance under all Coverage Forms or policies shall not exceed the highest applicable Limit of Insurance under any one Coverage Form or policy.

The following additional definitions apply:
"Auto business" means the business or occupation of selling, repairing, servicing, storing or parking "autos"

"Hired auto" means any "auto" you lease, hire, or borrow. This does not include any "auto" you lease or hire or borrow from any of your employees or members of their households, or from any partner or executive officer of yours.

"Non-owned auto" means any "auto" you do not own, lease, hire or borrow which are used in connection with your business. However, if you are a partnership a "non-owned auto" does not include any auto owned by any partner.

All other terms and conditions of this policy remain unchanged.

Case 4:23-cv-00847-JAM   Document 1-1   Filed 11/17/23   Page 32 of 278

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM



Endorsement #

Named Insured: ONE PARK PLACE TOWER CONDOMINIUM ASSOCIATION
_____

Policy Number: MP0015002000671 _____ Effective Date: 11/22/2011 _____

(The above information is required only when this form is added after the policy is issued)

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

**Exclusion - Directors and Officers Liability**

This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE FORM

In consideration of the premium charged, it is understood and agreed that we will not pay damages for loss that results from a wrongful act based on: an error or omission; negligence; breach of duty; or misstatement or misleading statement by your directors and officers.  It is further understood and agreed that we have no duty to defend you against such allegations.

All other terms and conditions of this policy remain unchanged.

_____          _____

Authorized Signature                                        Date

MUS 01 01 20027 1207


**MONTPELIER US**
INSURANCE COMPANY

Endorsement #

Named Insured: ONE PARK PLACE TOWER CONDOMINIUM ASSOCIATION

Policy Number: MP0015002000671      Effective Date: 11/22/2011

(The above information is required only when this form is added after the policy is issued)

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**Notices to Policyholder**

A.    Any misrepresentation or any concealment or fraud on the part of the Insured which misrepresentation, concealment or fraud affects either the acceptance of the risk or the hazard assumed by the Company shall render this policy void.

B.    Notice of all accidents or occurrences must immediately be given to Montpelier US Insurance Company whether or not such accidents or occurrences appear likely to involve this policy.

C.    The Company reserves the right to audit any and all portions of the insurance policy.

All other terms and conditions of this policy remain unchanged.

_____      _____

Authorized Signature                        Date

MUS 01 01 10004 1207

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM


**MONTPELIER US**
**INSURANCE COMPANY**

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

Endorsement #

Named Insured: ONE PARK PLACE TOWER CONDOMINIUM ASSOCIATION

Policy Number: MP0015002000671          Effective Date: 11/22/2011

(The above information is required only when this form is added after the policy is issued)

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### Service of Suit

Service of suit against us may be made upon our designated agent for purposes of service of process:

William B. Masterson

Montpelier US Insurance Company

6263 North Scottsdale Road, Suite 300

Scottsdale, Arizona 85250

Pursuant to any statute of any state, territory or district of the United States of America which makes provision therefore, the Company hereby designates the Superintendent, Commissioner or Director of Insurance or other office specified for that purpose in the Statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Insured or any beneficiary hereunder rising out of this contract of insurance.

In the States of California and Illinois, it is further agreed that service of process may be made upon the person or persons named below:

All other terms and conditions of this policy remain unchanged.

MUS 01 01 10005 0211


**MONTPELIER US**
INSURANCE COMPANY

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

Endorsement # _____

Named Insured: <u>ONE PARK PLACE TOWER CONDOMINIUM ASSOCIATION</u>

Policy Number: <u>MP0015002000671</u>                Effective Date: <u>11/22/2011</u>
        (The above information is required only when this form is added after the policy is issued)

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**Minimum Earned Premium Endorsement**

This endorsement modifies insurance provided under the following:

THIS ENDORSEMENT APPLIES TO ALL COVERAGE PARTS.

If this insurance is cancelled at your request, there will be a minimum earned premium retained by Montpelier US Insurance Company of $ _____ or _____ 25 % of the premium for this insurance, whichever is greater.

Cancellation of this insurance for nonpayment of premium is considered a request by the first Named Insured for cancellation of this insurance.

The provisions of this amendment apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the minimum earned premium.

All other terms and conditions of this policy remain unchanged.

_____          _____

            Authorized Signature                                    Date

MUS 01 01 10007 1207



Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

Endorsement #

Named Insured: ONE PARK PLACE TOWER CONDOMINIUM ASSOCIATION

Policy Number: MP0015002000671          Effective Date: 11/22/2011

(The above information is required only when this form is added after the policy is issued)

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

**Non-Stacking of Limits Endorsement**
**Two or More Coverage Forms, Coverage Parts or Policies Issued by Us**

This endorsement modifies insurance provided under the following:

ALL COVERAGE FORMS OR COVERAGE PARTS PROVIDING LIABILITY COVERAGE

If any Coverage Form, Coverage Part or Policy issued to you by us or any company affiliated with us apply to the same claim for damages, the maximum Limit of Insurance for Liability Coverage under all of the Coverage Forms, Coverage Parts or Policies shall not exceed the highest applicable Limit of Insurance available under any one Coverage Form, Coverage Part of Policy.

This endorsement does not apply to Coverage Form, Coverage Part or Policy issued by us or an affiliated company specifically to apply as excess insurance over the Policy.

All other terms and conditions of this policy remain unchanged.

_____          _____

Authorized Signature                                              Date

MUS 01 01 10009 1207



**MONTPELIER US**
INSURANCE COMPANY

Endorsement #

Named Insured: ONE PARK PLACE TOWER CONDOMINIUM ASSOCIATION

Policy Number: MP0015002000671                    Effective Date: 11/22/2011

(The above information is required only when this form is added after the policy is issued)

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**Exclusion - Cross Suits**
**(Condo Association, Town Home Association or Homeowner Association)**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

The following exclusion is added to Coverage A, B and C (Section I):

This insurance does not apply to "Bodily Injury", "Property Damage", "Personal Injury" or Medical Payments arising out of occurrences between two or more association members. Association members include all active, inactive, auxiliary or national association members.

All other terms and conditions of this policy remain unchanged.

_____          _____

Authorized Signature                                                      Date

MUS 01 01 20006 1207

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

**MONTPELIER US INSURANCE COMPANY**

Endorsement #

Named Insured: ONE PARK PLACE TOWER CONDOMINIUM ASSOCIATION

Policy Number: MP0015002000671          Effective Date: 11/22/2011

(The above information is required only when this form is added after the policy is issued)

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**Limited Coverage for Contractors and Employees (General Liability)**

This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE FORM

A. SECTION 1 – COVERAGE A BODILY INJURY AND PROPERTY DAMAGE, 2. Exclusions, e is deleted and replaced as follows:

This Insurance does not apply to:

e. Employer's Liability

"Bodily Injury" to:

(1) An "employee", "temporary worker", "leased employee", or independent contractor of the insured or any additional insured or employee of any independent contractor arising out of and in the course of:

(A) Employment by the insured or any additional insured or independent operator

(B) Performing duties related to the conduct of the insured or any additional insured's business; or

(C) Arising out of the injured party's employment; or

(2) A fellow "employee", "temporary worker", "leased employee", or independent contractor of the insured or any additional insured arising out of the course of such employment when the insured is an "executive officer" of such employer; or

(3) The spouse, children, parent, brother or sister of that fellow "employee", "temporary worker", "leased employee", or independent contractor as a consequence of Paragraph (1) above.

This exclusion applies:

(1) Whether an insured may be liable as an employer or in any other capacity;

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury; or

(3) To any liability assumed under any contract or agreement.

B. SECTION V – DEFINITIONS, subparagraph 19. is deleted and replaced with the following:

19. "Temporary Worker" means any person who is:

(A) Furnished to you to substitute for a permanent "employee";

(B) A short-term worker; or

(C) Not an "employee" or "volunteer" worker

All other terms and conditions of this policy remain unchanged.

_____          _____

Authorized Signature                                    Date

MUS 01 01 20007 1207

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

**INTERLINE**
**IL 00 21 05 04**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

    COMMERCIAL AUTOMOBILE COVERAGE PART
    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    FARM COVERAGE PART
    LIQUOR LIABILITY COVERAGE PART
    OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
    POLLUTION LIABILITY COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
    PROFESSIONAL LIABILITY COVERAGE PART
    RAILROAD PROTECTIVE LIABILITY COVERAGE PART

1. The insurance does not apply:

   **A.** Under any Liability Coverage, to "bodily injury" or "property damage":

   **(1)** With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

   **(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   **B.** Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   **C.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

   **(1)** The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

   **(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

   **(3)** The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

**2.** As used in this endorsement:

"Hazardous properties" includes radioactive, toxic or explosive properties;

"Nuclear material" means "source material", "Special nuclear material" or "by-product material";

"Source material", "special nuclear material," and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

**(a)** Any "nuclear reactor";

**(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

**(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"Property damage" includes all forms of radioactive contamination of property.

© ISO Properties, Inc., 2001     IL 00 21 05 04     ☐

Case 4:23-cv-00847-JAM   Document 1-1   Filed 11/17/23   Page 41 of 278

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** – Definitions.

## SECTION I – COVERAGES

## COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

Case 4:23-cv-00847-JAM   Document 1-1   Filed 11/17/23   Page 42 of 278

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

## 2. Exclusions

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

© ISO Properties, Inc., 2003 CG 00 01 12 04

**f. Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

   (a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

      (i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

      (ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

      (iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

   (b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

   (c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

      (i) Any insured; or

      (ii) Any person or organization for whom you may be legally responsible; or

   (d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

      (i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

      (ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

      (iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

   (e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

    **(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

    **(b)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

    **(a)** Less than 26 feet long; and

    **(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

    **(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or

    **(b)** the operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section **III** – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a side-track agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a sub-contractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section **III** – Limits Of Insurance.

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of websites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a.**, **b.** and **c.** of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

 © ISO Properties, Inc., 2003 **CG 00 01 12 04** □

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-Related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**COVERAGE C MEDICAL PAYMENTS**

**1. Insuring Agreement**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(1)** The accident takes place in the "coverage territory" and during the policy period;

**(2)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(3)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

**f. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g. Coverage A Exclusions**

Excluded under Coverage **A**.

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**a.** All expenses we incur.

**b.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**c.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**e.** All costs taxed against the insured in the "suit".

**f.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**g.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

**2.** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**a.** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**b.** This insurance applies to such liability assumed by the insured;

**c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**d.** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**f.** The indemnitee:

**(1)** Agrees in writing to:

**(a)** Cooperate with us in the investigation, settlement or defense of the "suit";

**(b)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

**(c)** Notify any other insurer whose coverage is available to the indemnitee; and

**(d)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

**(2)** Provides us with written authorization to:

**(a)** Obtain records and other information related to the "suit"; and

**(b)** Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

**a.** We have used up the applicable limit of insurance in the payment of judgments or settlements; or

**b.** The conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

## SECTION II – WHO IS AN INSURED

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

© ISO Properties, Inc., 2003

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

**2.** Each of the following is also an insured:

**a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

**(1)** "Bodily injury" or "personal and advertising injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

**(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs **(1)(a)** or **(b)** above; or

**(d)** Arising out of his or her providing or failing to provide professional health care services.

**(2)** "Property damage" to property:

**(a)** Owned, occupied or used by,

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

**(1)** With respect to liability arising out of the maintenance or use of that property; and

**(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**b.** Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**c.** Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

   **a.** Medical expenses under Coverage **C**;

   **b.** Damages under Coverage **A**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

   **c.** Damages under Coverage **B**.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to **2.** above, the Personal and Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   **a.** Damages under Coverage **A**; and

   **b.** Medical expenses under Coverage **C**

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

1. **Bankruptcy**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   **a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

   **(1)** How, when and where the "occurrence" or offense took place;

   **(2)** The names and addresses of any injured persons and witnesses; and

   **(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

   **b.** If a claim is made or "suit" is brought against any insured, you must:

   **(1)** Immediately record the specifics of the claim or "suit" and the date received; and

   **(2)** Notify us as soon as practicable.

   You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   **c.** You and any other involved insured must:

   **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

   **(2)** Authorize us to obtain records and other information;

   **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

   **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

   **d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

3. **Legal Action Against Us**

   No person or organization has a right under this Coverage Part:

   **a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

**b. Excess Insurance**

This insurance is excess over:

**(1)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(a)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(b)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(c)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(d)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

**(2)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(1)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(2)** The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

Case 4:23-cv-00847-JAM    Document 1-1    Filed 11/17/23    Page 52 of 278

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

## SECTION V – DEFINITIONS

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means:

**a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in **a.** above; or

**c.** All other parts of the world if the injury or damage arises out of:

**(1)** Goods or products made or sold by you in the territory described in **a.** above;

**(2)** The activities of a person whose home is in the territory described in **a.** above, but is away for a short time on your business; or

**(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in **a.** above or in a settlement we agree to.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

**7.** "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

**a.** The repair, replacement, adjustment or removal of "your product" or "your work"; or

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

**b.** Your fulfilling the terms of the contract or agreement.

**9.** "Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

**10.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**11.** "Loading or unloading" means the handling of property:

**a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

**b.** While it is in or on an aircraft, watercraft or "auto"; or

**c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

**12.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

**d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

**(1)** Power cranes, shovels, loaders, diggers or drills; or

**(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

**(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

**(2)** Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

(1) Equipment designed primarily for:

   (a) Snow removal;

   (b) Road maintenance, but not construction or resurfacing; or

   (c) Street cleaning;

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

   a. False arrest, detention or imprisonment;

   b. Malicious prosecution;

   c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

   d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

   e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

   f. The use of another's advertising idea in your "advertisement"; or

   g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":

   a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

      (1) Products that are still in your physical possession; or

      (2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

         (a) When all of the work called for in your contract has been completed.

         (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

         (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

      Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

   b. Does not include "bodily injury" or "property damage" arising out of:

      (1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

      (2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

      (3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

17. "Property damage" means:

   a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

 © ISO Properties, Inc., 2003 CG 00 01 12 04 □

Case 4:23-cv-00847-JAM   Document 1-1   Filed 11/17/23   Page 55 of 278

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

    **a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

    **b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**19.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**20.** "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

**21.** "Your product":

    **a.** Means:

        **(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

            **(a)** You;

            **(b)** Others trading under your name; or

            **(c)** A person or organization whose business or assets you have acquired; and

        **(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

    **b.** Includes

        **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

        **(2)** The providing of or failure to provide warnings or instructions.

    **c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

    **a.** Means:

        **(1)** Work or operations performed by you or on your behalf; and

        **(2)** Materials, parts or equipment furnished in connection with such work or operations.

    **b.** Includes

        **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

        **(2)** The providing of or failure to provide warnings or instructions.

Case 4:23-cv-00847-JAM   Document 1-1   Filed 11/17/23   Page 56 of 278

COMMERCIAL GENERAL LIABILITY
CG 00 62 12 02

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# WAR LIABILITY EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **i.** under Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war; or

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**WAR**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

**a.** War, including undeclared or civil war; or

**b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**c.** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**C.** Exclusion **h.** under Paragraph **2., Exclusions** of **Section I – Coverage C – Medical Payments** does not apply. Medical payments due to war are now subject to Exclusion **g.** of Paragraph **2., Exclusions** of **Section I – Coverage C – Medical Payments** since "bodily injury" arising out of war is now excluded under Coverage **A.**

© ISO Properties, Inc., 2002

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CONTRACTUAL LIABILITY LIMITATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

The definition of "insured contract" in the DEFINI-TIONS Section is replaced by the following:

"Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement.

 Copyright, Insurance Services Office, Inc., 1992 □

Case 4:23-cv-00847-JAM   Document 1-1   Filed 11/17/23   Page 58 of 278

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – INTERCOMPANY PRODUCTS SUITS

This endorsement modifies insurance provided under the following:

    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

This insurance does not apply to any claim for damages by any Named Insured against another Named Insured because of "bodily injury" or "property damage" arising out of "your products" and included within the "products-completed operations hazard."

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

POLICY NUMBER: MP0015002000671

COMMERCIAL GENERAL LIABILITY
CG 21 44 07 98

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LIMITATION OF COVERAGE TO DESIGNATED PREMISES OR PROJECT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| |
|---|
| **Premises:**<br> 700 WEST 31ST STREET KANSAS CITY, MO 64111 |
| **Project:** |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

This insurance applies only to "bodily injury", "property damage", "personal and advertising injury" and medical expenses arising out of:

1. The ownership, maintenance or use of the premises shown in the Schedule and operations necessary or incidental to those premises; or

2. The project shown in the Schedule.

Case 4:23-cv-00847-SJM   Document 1-1   Filed 11/17/23   Page 60 of 278

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**
# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2.**, **Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

**(1)** A person arising out of any:

  **(a)** Refusal to employ that person;

  **(b)** Termination of that person's employment; or

  **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2.**, **Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

**(1)** A person arising out of any:

  **(a)** Refusal to employ that person;

  **(b)** Termination of that person's employment; or

  **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# TOTAL POLLUTION EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion **f.** under Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

This insurance does not apply to:

**f. Pollution**

**(1)** "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

Case 4:23-cv-00847-JAM   Document 1-1   Filed 11/17/23   Page 62 of 278

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

   **2. Exclusions**

      This insurance does not apply to:

      **Fungi Or Bacteria**

      **a.** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

      **b.** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

   This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

**B.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

   **2. Exclusions**

      This insurance does not apply to:

      **Fungi Or Bacteria**

      **a.** "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

      **b.** Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

**C.** The following definition is added to the **Definitions** Section:

   "Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

Case 4:23-cv-00847-JAM   Document 1-1   Filed 11/17/23   Page 63 of 278

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM AND EXCLUSION OF OTHER ACTS OF TERRORISM COMMITTED OUTSIDE THE UNITED STATES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM**

"Any injury or damage" arising, directly or indirectly, out of a "certified act of terrorism", or out of an "other act of terrorism" that is committed outside of the United States (including its territories and possessions and Puerto Rico), but within the "coverage territory". However, with respect to an "other act of terrorism", this exclusion applies only when one or more of the following are attributed to such act:

**1.** The total of insured damage to all types of property exceeds $25,000,000 (valued in US dollars). In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the terrorism and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

**2.** Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

  **a.** Physical injury that involves a substantial risk of death; or

  **b.** Protracted and obvious physical disfigurement; or

  **c.** Protracted loss of or impairment of the function of a bodily member or organ; or

**3.** The terrorism involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

**4.** The terrorism is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

**5.** Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials.

With respect to this exclusion, Paragraphs **1.** and **2.** describe the thresholds used to measure the magnitude of an incident of an "other act of terrorism" and the circumstances in which the threshold will apply for the purpose of determining whether this exclusion will apply to that incident.

**B.** The following definitions are added:

**1.** For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Part to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part.

 © Insurance Services Office, Inc., 2008

Case 4:23-cv-00847-JAM   Document 1-1   Filed 11/17/23   Page 64 of 278

2. "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

a. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act;

b. The act resulted in damage:

(1) Within the United States (including its territories and possessions and Puerto Rico); or

(2) Outside of the United States in the case of:

(a) An air carrier (as defined in Section 40102 of title 49, United States Code) or United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), regardless of where the loss occurs; or

(b) The premises of any United States mission; and

c. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

3. "Other act of terrorism" means a violent act or an act that is dangerous to human life, property or infrastructure that is committed by an individual or individuals and that appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion, and the act is not a "certified act of terrorism".

Multiple incidents of an "other act of terrorism" which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

C. In the event of any incident of a "certified act of terrorism" or an "other act of terrorism" that is not subject to this exclusion, coverage does not apply to any loss or damage that is otherwise excluded under this Coverage Part.

© Insurance Services Office, Inc., 2008
CG 21 75 06 08 ☐

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

POLICY NUMBER: MP0015002000671

**COMMERCIAL GENERAL LIABILITY**
CG 24 07 01 96

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PRODUCTS/COMPLETED OPERATIONS HAZARD REDEFINED

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

**Description of Premises and Operations:**
700 WEST 31ST STREET KANSAS CITY, MO 64111
CONDOMINIUMS - 62003
SWIMMING POOL - 48925
CLUBHOUSE - PARKING

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

With respect to "bodily injury" or "property damage" arising out of "your products" manufactured, sold, handled or distributed:

1. On, from or in connection with the use of any premises described in the Schedule, or

2. In connection with the conduct of any operation described in the Schedule, when conducted by you or on your behalf,

Paragraph **a.** of the definition of "Products-completed operations hazard" in the DEFINITIONS Section is replaced by the following:

"Products-completed operations hazard":

a. Includes all "bodily injury" and "property damage" that arises out of "your products" if the "bodily injury" or "property damage" occurs after you have relinquished possession of those products.

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

# MESA UNDERWRITERS SPECIALTY INSURANCE COMPANY

MESA UNDERWRITERS SPECIALTY INSURANCE COMPANY
P.O. BOX 4030
SCOTTSDALE, ARIZONA 85261-4030

COMMERCIAL INSURANCE POLICY

MUSIC and its General Agent RDS Group of Kansas, LLC

are pleased to have issued Policy MP0015002000980      to

ONE PARK PLACE TOWER CONDOMINIUM ASSOCIATION

In witness whereof, Mesa Underwriters Speciality Insurance Company has caused this policy to be signed by its President and countersigned on the Declaration page by a duly Authorized Representative of the Company.

Corporate Secretary

President

MUSIC

MUS 01 01 10001 0412

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

# COMMON POLICY DECLARATIONS

MESA UNDERWRITERS SPECIALTY
INSURANCE COMPANY

**Policy Number:** MP0015002000980

☐ **New**      ☐ **Cross-Ref**

☒ **Renewal**      ☐ **Rewrite**

**Previous Policy Number:** MP0015002000671

**Policy Period:** From 11/22/2012 To 11/22/2013 at **12:01 A.M.** Standard Time at your mailing address shown below.

No Flat Cancellation

**Named Insured:**
ONE PARK PLACE TOWER CONDOMINIUM ASSOCIATION

SL344705      **Tax State:** MO

**Mailing Address:**
C/O CURRY ASSOCIATION MANAGEMENT
2700 KENDALLWOOD PKWY #208
GLADSTONE      MO 64118

This is evidence of insurance procured and developed under the Missouri Surplus Lines Laws. It is NOT covered by the Missouri Insurance Guaranty Association. This insurer is not licensed by the State of Missouri and is not subject to its supervision.

**Agent and Mailing Address:**
RDS Group of Kansas, LLC      **Agent Number:** 15002

8400 W. 110th St., Suite 110
Overland Park      KS 66210

**Business Description:**
CONDOMINIUM

**Select Coverage Part (for which insurance is being afforded)**

| | | |
|---|---|---|
| ☒ **Commercial General Liability** | $ | ███████ |
| ☐ **Commercial Property** | $ | |
| ☐ **Commercial Inland Marine** | $ | |
| ☐ **Commercial Crime** | $ | |
| ☐ **Garage** | $ | |
| ☒ **TRIA** | $ | █████ |
| ☐ **Other** (Describe) | $ | |

POLICY FEE      $200.00
MISSOURI TAX      $209.20

**Total Advance Premium** $ ████████
**Total Other Charges** $
**Total** $

**Premiums Shown are payable at inception or as indicated on the individual Coverage Declarations.**

Form(s) and Endorsement(s), including edition dates, made a part of this policy at the time of issue: See Schedule of Forms

Countersigned: Overland Park      KS      12/05/2012      By: _____

Date      Authorized Agent

MB/CL

MUS 01 01 10002 0412

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

# SCHEDULE OF FORMS AND ENDORSEMENTS

**MESA UNDERWRITERS SPECIALTY INSURANCE COMPANY**

| | |
|---|---|
| Named Insured | ONE PARK PLACE TOWER CONDOMINIUM ASSOCIATION |
| Policy Number | MP0015002000980 |
| Effective Date: | 11/22/2012 |

| | | |
|---|---|---|
| MUS 01 01 10001 0412 | POLICY JACKET | |
| MUS 01 01 10002 0412 | COMMON POLICY DECLARATION | |
| MUS 01 01 10003 0412 | SCHEDULE OF FORMS & ENDORSEMENTS | |
| MUS 01 01 10004 0412 | NOTICES TO POLICY HOLDER | |
| MUS 01 01 10005 0412 | SERVICE OF SUIT | |
| MUS 01 01 10007 0412 | MINIMUM EARNED PREMIUM ENDORSEMENT | |
| MUS 01 01 10009 0412 | NON-STACKING OF LIMITS ENDORSEMENT | |
| MUS 01 01 10098 0612 | POLICYHOLDER NOTICE | |
| IL 00 17 11 98 | COMMON POLICY CONDITIONS | |
| MUS 01 01 20001 0412 | GENERAL LIABILITY COVERAGE PART DECLARATIONS | |
| MUS 01 01 20002 0412 | GENERAL LIABILITY SUPPLEMENTAL DECLARATIONS | |
| MUS 01 01 20003 0412 | ENDORSEMENT - ADDITIONAL EXCLUSIONS & PROVISIONS LIABILITY INSURANCE | |
| MUS 01 01 20004 0412 | LIABILITY DEDUCTIBLE | |
| MUS 01 01 20006 0412 | EXCL - CROSS SUITS (CONDOMINIUM, TOWN HOME, & HOMEOWNERS ASSOCIATIONS) | |
| MUS 01 01 20007 0412 | LIMITED COVG FOR CONTRACTORS & EMPLOYEES - GENERAL LIABILITY | |
| MUS 01 01 20023 0412 | SPECIAL CONDITIONS - SUBCONTRACTORS | |
| MUS 01 01 20024 0412 | HIRED & NON-OWNED AUTO LIABILITY | |
| MUS 01 01 20027 0412 | EXCL - DIRECTORS & OFFICERS LIABILITY | |
| MUS 01 01 20041 0412 | COVERAGE FOR ASSAULT AND BATTERY | |
| MUS 01 01 20042 0412 | LIMITED COVERAGE FOR ASSAULT AND BATTERY | |
| IL 00 21 05 04 | NUCLEAR ENERGY LIABILITY EXCL ENDT | |
| CG 00 01 12 04 | COMMERCIAL GENERAL LIABILITY COVG FORM | |
| CG 00 62 12 02 | WAR LIABILITY EXCL | |
| CG 20 10 07 04 | AI - OWNERS, LESSEES OR CONTRACTORS - SCHEDULED PERSON OR ORGANIZATION | |
| CG 20 11 01 96 | AI - MANAGERS OR LESSORS OF PREMISES | |
| CG 21 39 10 93 | CONTRACTUAL LIABILITY LIMITATION | |
| CG 21 41 11 85 | EXCLUSION - INTERCOMPANY PRODUCTS SUITS | |
| CG 21 44 07 98 | LIMITATION OF COVG TO DESIGNATED PREMISES OR PROJECT | |
| CG 21 47 07 98 | EMPLOYMENT-RELATED PRACTICES EXCLUSION | |
| CG 21 49 09 99 | EXCL - TOTAL POLLUTION ENDT | |
| CG 21 67 12 04 | EXCL - FUNGI OR BACTERIA | |
| CG 21 71 06 08 | EXCL - LIMITED TERRORISM (OTHER THAN CERTIFIED ACTS OF TERRORISM) | |
| CG 24 07 01 96 | PRODUCTS/COMPLETED OPERATIONS HAZARD REDEFINED | |

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

# SCHEDULE OF FORMS AND ENDORSEMENTS

**MESA UNDERWRITERS SPECIALTY INSURANCE COMPANY**

| | |
|---|---|
| Named Insured | ONE PARK PLACE TOWER CONDOMINIUM ASSOCIATION |
| Policy Number | MP0015002000980 |
| Effective Date: | 11/22/2012 |

MESA UNDERWRITERS SPECIALTY
INSURANCE COMPANY

## COMMERCIAL GENERAL LIABILITY Coverage Part Declarations

This Coverage Part consists of this Declarations Form, the Common Policy Conditions, the Commercial General Liability Conditions, the Coverage Form(s), and the Coverage Endorsement(s) indicated as applicable.

Named Insured   ONE PARK PLACE TOWER CONDOMINIUM ASSOCIATION

Policy Number   MP0015002000980

Effective Date:   11/22/2012

### LIMITS OF INSURANCE                                    ☐ "X" If Supplemental Declarations is attached.

| | |
|---|---|
| General Aggregate Limit (Other Than Products / Completed Operations) | $ 2,000,000 |
| Products / Completed Operations Aggregate Limit | $ 2,000,000 |
| Personal and Advertising Injury Limit | $ 1,000,000 |
| Each Occurrence Limit | $ 1,000,000 |
| Damage to Premises Rented to You Limit   (Any 1 Premises) | $ 50,000 |
| Medical Expense Limit   (Any 1 Person) | $ 1,000 |

### BUSINESS DESCRIPTION AND LOCATION OF PREMISES

**Form of Business:**

☐ Individual   ☐ Joint Venture   ☐ Partnership   ☐ Limited Liability Company   ☒ Organization (other): ASSOCIATION

**Business Description:**   CONDOMINIUM

**Location(s) of All Premises you Own, Rent or Occupy:**

1)   700 WEST 31ST STREET KANSAS CITY, MO 64111

2)

3)

### CLASSIFICATION & PREMIUM PROVIDED

| | | | Rate | | Advanced Premium | |
|---|---|---|---|---|---|---|
| Code No. | Classification Description | Premium Basis / Exposure* | Premises / Operations | Products / Comp Ops | Premises / Operations | Products / Comp Ops |
| 62003 | Condominiums - Residential (association risk only) | u | | INCL. | | INCL. |
| | Products-Completed Operations are subject to the General Aggregate Limit | | | | | |
| 48925 | Swimming Pools | t | | INCL. | | INCL. |
| | Products-Completed Operations are subject to the General Aggregate Limit | | | | | |
| 62003 | Condominiums - Residential (association risk only) | FLAT | | INCL. | | INCL. |
| | Products-Completed Operations are subject to the General Aggregate Limit | | | | | |

*Premium Basis Types:   **p - Payroll** (per $1,000 of Payroll)   **c - Cost** (per $1,000 Total Cost)   **s - Sales** (per $1,000 Gross Sales)
**a - Area** (per 1,000 Square feet of area)   **m - Admissions** (per 1,000 Admissions)   **u - Units** (per Unit)
**t – Total** (per each)

**Total Annual Premium:** $

| **Forms/Endorsements Applicable** | See Schedule of Forms and Endorsements |
|---|---|

**Premium Basis Definitions:**

1) **"Payroll"** means:
Remuneration which includes money or substitutes for money.
**Payroll Includes:**

...... a. Commissions, bonuses, pay for holidays, vacations or periods of illness;

b. Extra pay for overtime in accordance with the manuals in use by us;

c. Payments by an employer or amounts otherwise required by law to be paid by employees to statutory insurance or pension plans, such as the Federal Social Security Act;

d. Payment to employees on any basis other than time worked, such as piece work, profit sharing or incentive plans;

e. Payment or allowance for hand tools or power tools used by hand provided by employees and used in their work or operations for the insured;

f. The rental value of an apartment or house provided for an employee based on comparable accommodations;

g. Value of meals and lodging other than an apartment or house received by employees as part of their pay;

h. The value of store certificates, merchandise, credits or any other substitute for money received by employees as part their pay;

i. The payroll of mobile equipment operators and their helpers, whether or not the operators are designated or licensed to operate automobiles. If the operators and their helpers are provided to the insured along with equipment hired under contract and their actual payroll is not known, use 1/3 of the total amount paid out by the insured for the hire or the equipment;

j. The payroll of executive officers and individual insureds and co-partners in accordance with the manuals in use by us;

k. Fees paid to employment agencies for temporary personnel provided to the insured.

**Payroll does not include:**

a. Tips and other gratuities received by employees;

b. Payments by an employer to group insurance or group pension plans for employees I in accordance with manuals in use by us;

.... c. The value of special rewards for individual invention or discovery;

..... d. Dismissal or severance payments except for time worked or accrued vacation;

e. The payroll of clerical office employees;

f. The payroll of salesmen, collectors or messengers who work principally away from the insured's premises. Salesmen, collectors or messengers are those employees engaged principally in any such duties away from the premises of the employer; Exception: This term does not apply to any employee whose duties include the delivery of any merchandise handled, treated or sold.

g. The payroll of aircraft pilots or co-pilots if their principal duties are to work on or in connection with aircraft in either capacity.

**The rates apply per $1,000 payroll.**

2) **"Cost"** means:
The total cost of all work let or sublet in connection with each specific project including:

a. The cost of all labor, materials and equipment furnished, used or delivered for use in the execution of the work; and

b. All fees, bonuses or commissions made, paid or due.

**The rates apply per $1,000 of cost.**

3) **"Sales"** means:

The gross amount charged by the named insured, concessionaires of the named insured or by others trading under the insured's name for:

1. All goods or products, sold or distributed;

2. Operations performed during the policy period;

3. Rentals.

A. **Gross Sales includes:**

1. Foreign exchange discounts;

2. Freight allowance to customers;

3. Total sales of consigned goods and warehouse receipts;

4. Trade or cash discounts;

5. Bad debts; and

6. Repossession of items sold on installments (amount actually collected).

B. **Gross Sales excludes:**

1. Sales or excise taxes which are collected and submitted to a governmental division;

2. Credits for repossessed merchandise and products returned. Allowances for damaged and spoiled goods;

3. Finance charges for items sold on installments;

...... 4. Freight charges on sales if freight is charged as a separate item on customers invoice; and

... 5. Royalty income from patent rights or copyrights which are not products sales.

**The rates apply per $1,000 of gross sales.**

4) **"Area"** means:

The total number of square feet or floor space at the insured premises, computed as follows:

A. For entire buildings, by multiplying the product of the horizontal dimensions of the outside of the outer building walls by the number of floors, including basements but do not use the area of the following:

1. Courts and mezzanine types of floor openings.

2. Portions of basements of floors where 50% or more of the area used for shop or storage for building maintenance, dwelling by building maintenance employees, heating units, power plants or air-conditioning equipment.

B. For tenants, determine the area they occupy in the same manner as for the entire building.

**The rates apply per 1,000 square feet of area.**

5) **"Admissions"** means:
The total number of persons, other than employees of the named insured, admitted to the event insured or to events conducted on the premises whether on paid admissions, tickets, complimentary tickets or passes.

**The rates apply per 1,000 admissions.**

6) **"Units"** means:
A single room or group of rooms intended for occupancy as separate living quarters by a family, by a group of unrelated persons living together, or by a person living alone.

**The rates apply per each unit.**

7) **"Total"** means:
This basis of premium involves units of exposure, and the quantity comprising each unit of exposure is indicated in the declarations page, such as "per person."

**The rates apply per unit.**

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

MESA UNDERWRITERS SPECIALTY
INSURANCE COMPANY

## COMMERCIAL GENERAL LIABILITY Coverage Part Supplemental Declarations

Named Insured: ONE PARK PLACE TOWER CONDOMINIUM ASSOCIATION

Policy Number: MP0015002000980

Effective Date: 11/22/2012

### ADDITIONAL LOCATION OF PREMISES

**Location(s) of All Premises you Own, Rent or Occupy:**

)
)
)
)
)
)
)
)
)
)
)
)

### ADDITIONAL CLASSIFICATIONS & PREMIUMS PROVIDED

| Code No. | Classification Description | Premium Basis / Exposure* | Rate — Premises / Operations | Rate — Products / Comp Ops | Advanced Premium — Premises / Operations | Advanced Premium — Products / Comp Ops |
|---|---|---|---|---|---|---|
| 88888 | Hired Automobile Coverage - SEE MUS010120024 | FLAT | ▉ | INCL. | ▉ | INCL. |
| | Products-Completed Operations are subject to the General Aggregate Limit | | | | | |
| | ASSAULT OR BATTERY - SEE MUS010120042 | FLAT | ▉ | INCL. | ▉ | INCL. |
| 46622 | Parking - Private | FLAT | ▉ | INCL. | ▉ | INCL. |
| | Products-Completed Operations are subject to the General Aggregate Limit | | | | | |

*Premium Basis Types: **p - Payroll** (per $1,000 of Payroll)  **c - Cost** (per $1,000 Total Cost)  **s - Sales** (per $1,000 Gross Sales)
**a - Area** (per 1,000 Square feet of area)  **m - Admissions** (per 1,000 Admissions)  **u - Units** (per Unit)
**t – Total** (per each)

**Extension of General Liability Declaration - Total Annual Premium:** | $

| **Forms/Endorsements Applicable** | See Schedule of Forms and Endorsements |
|---|---|

MUS 01 01 20002 0412

<div align="right">

MESA UNDERWRITERS SPECIALTY
INSURANCE COMPANY

</div>

## COMMERCIAL GENERAL LIABILITY Coverage Part Supplemental Declarations

Named Insured: ONE PARK PLACE TOWER CONDOMINIUM ASSOCIATION

Policy Number: MP0015002000980

Effective Date: 11/22/2012

## ADDITIONAL LOCATION OF PREMISES

**Location(s) of All Premises you Own, Rent or Occupy:**

)
)
)
)
)
)
)
)
)
)
)
)

## ADDITIONAL CLASSIFICATIONS & PREMIUMS PROVIDED

| | | | Rate | | Advanced Premium | |
| Code No. | Classification Description | Premium Basis / Exposure* | Premises / Operations | Products / Comp Ops | Premises / Operations | Products / Comp Ops |
|---|---|---|---|---|---|---|
| 11111 | Additional Insured - CG2010 & CG2011 100% FEP | t | | INCL. | | INCL. |
| | Products-Completed Operations are subject to the General Aggregate Limit | | | | | |

| *Premium Basis Types: | **p - Payroll** (per $1,000 of Payroll) | **c - Cost** (per $1,000 Total Cost) | **s - Sales** (per $1,000 Gross Sales) |
|---|---|---|---|
| | **a - Area** (per 1,000 Square feet of area) | **m - Admissions** (per 1,000 Admissions) | **u - Units** (per Unit) |
| | **t – Total** (per each) | | |

**Extension of General Liability Declaration - Total Annual Premium:** | $

| **Forms/Endorsements Applicable** | See Schedule of Forms and Endorsements |
|---|---|

MUS 01 01 20002 0412

MESA UNDERWRITERS SPECIALTY
   INSURANCE COMPANY

Endorsement #

Named Insured: ONE PARK PLACE TOWER CONDOMINIUM ASSOCIATION

Policy Number: MP0015002000980        Effective Date: 11/22/2012

(The above information is required only when this form is added after the policy is issued)

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### Liability Deductible
(Including Costs and Expenses)

| Coverage | Amount of Deductible | |
|---|---|---|
| Bodily Injury Liability | 500 | per "claim" |
| Property Damage Liability | 500 | per "claim" |
| Personal and Advertising Injury | 500 | per "claim" |

A.    The Company's obligations under the coverage afforded by this policy to pay damages on behalf of the Insured apply only to the amount of damages in excess of the deductible amount stated above.

B.    The deductible amount applies to all damages sustained by one person or organization as the result of any one claim.

C.    The deductible amount stated will also apply towards investigation, adjustment and legal expenses incurred in the handling and investigation of each claim, whether or not payment is made to claimant, compromise settlement is reached or claim is denied.

D.    The terms of the policy, including those with respect to the Company's rights and duties with respect to the defense of suits and the Insured's duties in the event of an occurrence apply irrespective of the application of the deductible amount.

E.    The Company, at its sole election and option, may either:

    1.   Pay any part of or all of the deductible amount to effect settlement of any claim or suit, and upon notification of the action taken, the Named Insured shall promptly reimburse the Company for such part of the deductible amount as has been paid by the Company; or

    2.   Simultaneously upon receipt of notice of any claim or at any time thereafter, call upon the Insured and request said Insured to pay over and deposit with the Company all or part of the deductible amount, to be held and applied by the Company as herein provided.

All other terms and conditions of this policy remain unchanged.

MUS 01 01 20004 0412

MESA UNDERWRITERS SPECIALTY
    INSURANCE COMPANY

Endorsement #

Named Insured: ONE PARK PLACE TOWER CONDOMINIUM ASSOCIATION

Policy Number: MP0015002000980      Effective Date: 11/22/2012
    (The above information is required only when this form is added after the policy is issued)

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**Exclusion - Cross Suits**
**(Condo Association, Town Home Association or Homeowner Association)**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

The following exclusion is added to Coverage A, B and C (Section I):

This insurance does not apply to "Bodily Injury", "Property Damage", "Personal Injury" or Medical Payments arising out of occurrences between two or more association members. Association members include all active, inactive, auxiliary or national association members.

All other terms and conditions of this policy remain unchanged.

MUS 01 01 20006 0412

MESA UNDERWRITERS SPECIALTY
INSURANCE COMPANY

Endorsement #

Named Insured: ONE PARK PLACE TOWER CONDOMINIUM ASSOCIATION

Policy Number: MP0015002000980  Effective Date: 11/22/2012

(The above information is required only when this form is added after the policy is issued)

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**Hired and Non-Owned Auto Liability**

This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE FORM

**SCHEDULE**

| Coverage | Additional Premium | |
|---|---|---|
| Non-Ownership Liability | $ | ▮ |
| Hired Car Liability | $ | ▮ |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

The insurance provided under COVERAGE A (Section I) applies to "bodily injury" or "property damage" arising out of the maintenance or use of a "hired auto" or "non-owned auto" by you or your employees in the course of your business. With respect to the insurance provided by this endorsement:

1. Exclusions O and P are deleted. Exclusion G is modified by deleting the word "auto" in the first paragraph under COVERAGE A (Section I) of this coverage part. Exclusion E is replaced by the following:
   a. "Bodily injury:"
      **(1)** To an employee of the insured arising out of and in the course of employment by the insured; or
      **(2)** To the spouse, child, parent, brother or sister of that employee as a consequence of **(1)** above.
      This exclusion applies to:
      **(1)** Whether the insured may be liable as an employer or in any other capacity; and
      **(2)** To any obligation to share damages with or repay someone else who must pay damages because of injury.
      This exclusion does not apply to:
      **(1)** Liability assumed by the insured under an "insured contract;" or
      **(2)** "Bodily injury" arising out of and in the course of domestic employment by the insured unless benefits for such injury are in whole or in part either payable or required to be provided under any workers compensation law.
   b. "Property damage" to:
      **(1)** Property owned or being transported by, or rented or loaned to the insured; or
      **(2)** Property in the care, custody or control of the insured.

2. WHO IS AN INSURED (Section II) is replaced by the following:
   Each of the following is an insured under this insurance to the extent set forth below:
   a. You;
   b. Any other person using a "hired auto" with your permission;

MUS 01 01 20024 0412

Page 1 of 2

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

    (1) An "auto" you hire or borrow; or
    (2) An "auto" you don't own, hire or borrow in your business or personal affairs; or
    (3) An "auto" hired or rented by your "employee" on your behalf and at your direction.
  **c.** Any other person or organization, but only with respect to their liability because of acts or omissions or an insured under a. or b.

None of the following is an insured:
  **a.** Any person engaged in the business of his or her employer with respect to "bodily injury" to any co-employee of such person injured in the course of employment;
  **b.** Any partner or executive officer with respect to any "auto" owned by such partner or officer or a member of his or her household;
  **c.** Any person while employed in or otherwise engaged in duties in connection with an "auto business," other than an "auto business" you operate;
  **d.** The owner or lessee (of whom you are a sublessee) of a "hired auto" or the owner of a "non-owned auto" or any agent or employee of such owner or lessee;
  **e.** Any person or organization with respect to the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations.

3. With respect to the operation of a "hired" or "non-owned" auto, the following additional conditions apply:

OTHER INSURANCE
  a. Except for any liability assumed under an "insured contract" the insurance provided by This Coverage Form is excess over any other collectible insurance.

  However, if your business is the selling, servicing, repairing, parking or storage of "autos", the insurance provided by this endorsement is primary when covered "bodily injury" or "property damage" arises out of the operation of a customer's "auto" by you or your "employee".

  b. When this Coverage Form or any other Coverage Form or policy covers on the same basis, whether excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of all the Coverage Forms and policies covering on the same basis.

TWO OR MORE COVERAGE FORMS OR POLICIES ISSUED BY US
If the Coverage Form and any other Coverage Form or policy issued to you by us or any company affiliated with us apply to the same "accident", the aggregate maximum Limit of Insurance under all Coverage Forms or policies shall not exceed the highest applicable Limit of Insurance under any one Coverage Form or policy.

The following additional definitions apply:
"Auto business" means the business or occupation of selling, repairing, servicing, storing or parking "autos"

"Hired auto" means any "auto" you lease, hire, or borrow. This does not include any "auto" you lease, hire or borrow from any of your employees or members of their households, or from any partner or executive officer of yours.

"Non-owned auto" means any "auto" you do not own, lease, hire or borrow which are used in connection with your business. However, if you are a partnership a "non-owned auto" does not include any auto owned by any partner.

    All other terms and conditions of this policy remain unchanged.

MUS 01 01 20024 0412

MESA UNDERWRITERS SPECIALTY
   INSURANCE COMPANY

Endorsement #

Named Insured: <u>ONE PARK PLACE TOWER CONDOMINIUM ASSOCIATION</u>

Policy Number: <u>MP0015002000980</u>      Effective Date: <u>11/22/2012</u>
     (The above information is required only when this form is added after the policy is issued)

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### Coverage for Assault and Battery

This endorsement modifies an exclusion under endorsement MUS 01 01 20003 0412,
Endorsement Additional Exclusions and Provisions Liability Insurance.

In consideration of the additional premium shown below, it is understood and agreed that the
Exclusion for Assault and Battery is DELETED from endorsement MUS 01 01 20003, Endorsement
Additional Exclusions and Provisions Liability Insurance.

Additional Premium ███████ _____

All other terms and conditions of this policy remain unchanged.

MUS 01 01 20041 0412

MESA UNDERWRITERS SPECIALTY
INSURANCE COMPANY

Endorsement #

Named Insured: ONE PARK PLACE TOWER CONDOMINIUM ASSOCIATION

Policy Number: MP0015002000980                                Effective Date: 11/22/2012

(The above information is required only when this form is added after the policy is issued)

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**Exclusion - Directors and Officers Liability**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

In consideration of the premium charged, it is understood and agreed that we will not pay damages for loss that results from a wrongful act based on: an error or omission; negligence; breach of duty; or misstatement or misleading statement by your directors and officers. It is further understood and agreed that we have no duty to defend you against such allegations.

All other terms and conditions of this policy remain unchanged.

MUS 01 01 20027 0412

**MESA UNDERWRITERS SPECIALTY
INSURANCE COMPANY**

Endorsement #

Named Insured: ONE PARK PLACE TOWER CONDOMINIUM ASSOCIATION

Policy Number: MP0015002000980                     Effective Date: 11/22/2012

(The above information is required only when this form is added after the policy is issued.)

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**Limited Coverage for Assault and Battery**

This endorsement modifies an exclusion under endorsement MUS 01 01 20003 0412, Endorsement Additional Exclusion and Provisions Liability Insurance.

In consideration of the additional premium shown below, it is understood and agreed that this insurance applies to "bodily injury", "property damage" and "personal injury" arising from an assault or battery or out of any act or omission in connection with the prevention or suppression of such act, including the failure to warn, train, supervise, whether caused by or at the instigation or direction of the Insured, the Insured's employees, patrons or any other person, subject to the limits show on the general liability declaration page.

The Limit of Insurance for this coverage is: $ 100,000        each occurrence  and $ 100,000      aggregate for the policy. This aggregate limit is included in and not in addition to the policy General aggregate Limit.

Additional Premium $▮▮▮▮▮

All other terms and conditions of this policy remain unchanged.

MUS 01 01 20042 0412

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

## SCHEDULE

| Name Of Additional Insured Person(s) Or Organization(s): | Location(s) Of Covered Operations |
|---|---|
| PARK PLACE KC, LLC<br>C/O AY KC, INC.<br>ATTN: TESS PALMA<br>1065 E. HILLSDALE BLVD STE: 105<br>FOSTER CITY, CA 94404 | |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

**1.** Your acts or omissions; or

**2.** The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to "bodily injury" or "property damage" occurring after:

**1.** All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

**2.** That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

© ISO Properties, Inc., 2004

Case 4:23-cv-00847-JAM   Document 1-1   Filed 11/17/23   Page 84 of 278

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# WAR LIABILITY EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **i.** under Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war; or

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**WAR**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

**a.** War, including undeclared or civil war; or

**b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**c.** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**C.** Exclusion **h.** under Paragraph **2., Exclusions** of **Section I – Coverage C – Medical Payments** does not apply. Medical payments due to war are now subject to Exclusion **g.** of Paragraph **2., Exclusions** of **Section I – Coverage C – Medical Payments** since "bodily injury" arising out of war is now excluded under Coverage **A.**

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – MANAGERS OR LESSORS OF PREMISES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

## SCHEDULE

**1.** Designation of Premises (Part Leased to You): 700 WEST 31ST STREET KANSAS CITY, MO 64111

**2.** Name of Person or Organization (Additional Insured): CURRY ASSOCIATION MANAGEMENT, INC. & ITS AFFILIATES

**3.** Additional Premium: 100.00

(If no entry appears above, the information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

WHO IS AN INSURED (Section **II**) is amended to include as an insured the person or organization shown in the Schedule but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to you and shown in the Schedule and subject to the following additional exclusions:

This insurance does not apply to:

**1.** Any "occurrence" which takes place after you cease to be a tenant in that premises.

**2.** Structural alterations, new construction or demolition operations performed by or on behalf of the person or organization shown in the Schedule.

Case 4:23-cv-00847-JAM   Document 1-1   Filed 11/17/23   Page 86 of 278

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CONTRACTUAL LIABILITY LIMITATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

The definition of "insured contract" in the DEFINI-TIONS Section is replaced by the following:

"Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement.

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

MESA UNDERWRITERS SPECIALTY
INSURANCE COMPANY

Endorsement #

Named Insured: ONE PARK PLACE TOWER CONDOMINIUM ASSOCIATION

Policy Number: MP0015002000980                    Effective Date: 11/22/2012

(The above information is required only when this form is added after the policy is issued)

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

**Notices to Policyholder**

A.    Any misrepresentation or any concealment or fraud on the part of the Insured which misrepresentation, concealment or fraud affects either the acceptance of the risk or the hazard assumed by the Company shall render this policy void.

B.    The Company reserves the right to audit any and all portions of the insurance policy.

C.    Notice of all accidents or occurrences must immediately be given to Mesa Underwriters Specialty Insurance Company whether or not such accidents or occurrences appear likely to involve this policy.

Please report all claims to your Retail Insurance Agent, our General Agent or us.

All other terms and conditions of this policy remain unchanged.

MUS 01 01 10004 0412

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

MESA UNDERWRITERS SPECIALTY
INSURANCE COMPANY

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

Endorsement #

Named Insured: ONE PARK PLACE TOWER CONDOMINIUM ASSOCIATION

Policy Number: MP0015002000980          Effective Date: 11/22/2012

(The above information is required only when this form is added after the policy is issued)

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**Service of Suit**

Service of suit against us may be made upon our designated agent for purposes of service of process:

William B. Masterson

Mesa Underwiters Specialty Insurance Company

6263 North Scottsdale Road, Suite 300

Scottsdale, Arizona 85250

Pursuant to any statute of any state, territory or district of the United States of America which makes provision therefore, the Company hereby designates the Superintendent, Commissioner or Director of Insurance or other office specified for that purpose in the Statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Insured or any beneficiary hereunder rising out of this contract of insurance.

In the States of California and Illinois, it is further agreed that service of process may be made upon the person or persons named below:

All other terms and conditions of this policy remain unchanged.

MUS 01 01 10005 0412

MESA UNDERWRITERS SPECIALTY
INSURANCE COMPANY

Endorsement #

Named Insured: ONE PARK PLACE TOWER CONDOMINIUM ASSOCIATION

Policy Number: MP0015002000980 Effective Date: 11/22/2012
(The above information is required only when this form is added after the policy is issued)

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**Minimum Earned Premium Endorsement**

This endorsement modifies insurance provided under the following:

THIS ENDORSEMENT APPLIES TO ALL COVERAGE PARTS.

If this insurance is cancelled at your request, there will be a minimum earned premium retained by Mesa Underwriters Specialty Insurance Company of $        or    25 % of the premium for this insurance, whichever is greater.

Cancellation of this insurance for nonpayment of premium is considered a request by the first Named Insured for cancellation of this insurance.

The provisions of this amendment apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the minimum earned premium.

All other terms and conditions of this policy remain unchanged.

MUS 01 01 10007 0412

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

MESA UNDERWRITERS SPECIALTY
  INSURANCE COMPANY

Endorsement #

Named Insured: ONE PARK PLACE TOWER CONDOMINIUM ASSOCIATION

Policy Number: MP0015002000980          Effective Date: 11/22/2012
    (The above information is required only when this form is added after the policy is issued)

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

**Non-Stacking of Limits Endorsement**
**Two or More Coverage Forms, Coverage Parts or Policies Issued by Us**

This endorsement modifies insurance provided under the following:

ALL COVERAGE FORMS OR COVERAGE PARTS PROVIDING LIABILITY COVERAGE

If any Coverage Form, Coverage Part or Policy issued to you by us or any company affiliated with us
apply to the same claim for damages, the maximum Limit of Insurance for Liability Coverage under
all of the Coverage Forms, Coverage Parts or Policies shall not exceed the highest applicable Limit
of Insurance available under any one Coverage Form, Coverage Part of Policy.

This endorsement does not apply to Coverage Form, Coverage Part or Policy issued by us or an
affiliated company specifically to apply as excess insurance over the Policy.

All other terms and conditions of this policy remain unchanged.

MUS 01 01 10009 0412

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

MESA UNDERWRITERS SPECIALTY
INSURANCE COMPANY

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

**Policyholder Notice**

Montpelier U.S. Insurance Company has changed its name to Mesa Underwriters Specialty Insurance Company. Effective immediately all policies, endorsements, applications and cancellations/non-renewals/reinstatements will be in the name of Mesa Underwriters Specialty Insurance Company. Please contact your insurance broker with any questions regarding this Notice.

All other policy terms, exclusions and conditions remain unchanged.

MUS 01 01 10098 0612

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

 Copyright, Insurance Services Office, Inc., 1998

Case 4:23-cv-00847-JAM   Document 1-1   Filed 11/17/23   Page 93 of 278

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

MESA UNDERWRITERS SPECIALTY
INSURANCE COMPANY

Endorsement #

Named Insured: ONE PARK PLACE TOWER CONDOMINIUM ASSOCIATION

Policy Number: MP0015002000980        Effective Date: 11/22/2012

(The above information is required only when this form is added after the policy is issued)

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### Endorsement - Additional Exclusions and Provisions Liability Insurance

In consideration of the premium charged, it is understood and agreed that the following shall apply to this policy:

**LEAD, ASBESTOS AND SILICA EXCLUSION**
This policy does not apply to "bodily injury", "personal injury" or "property damage" arising out of the manufacture, sale, lease, distribution, storage, handling, installation, repair, removal, testing, inspection, disposal or other use of, exposure to, or contact with any goods, products, materials, plant life, or structures containing lead, asbestos or silica in any form including, without limitation, claims arising out of continuous, intermittent or repeated exposure to and/or ingestion, inhalation or absorption of lead, asbestos or silica in any form. This exclusion applies regardless of whether the "bodily injury", "personal injury" or "property damage" results from inhaling, eating, drinking, physical contact with or any other exposure to lead, asbestos or silica in any form.

**SUBSIDENCE OF LAND EXCLUSION**
This policy does not apply to "bodily injury", "personal injury" or "property damage" arising out of or aggravated by the subsidence of land as a result of landslide, mudflow, earth sinking or shifting, whether arising from natural causes or resulting from operations of the Named Insured or any other subcontractor of the Named Insured.

**PUNITIVE OR EXEMPLARY DAMAGES EXCLUSION**
This policy does not apply to any claim or indemnification for punitive or exemplary damages. If a suit is brought against the Insured for a claim falling within the coverage provided by the policy, seeking both compensatory and punitive or exemplary damages, then the Company will afford a defense to such action. The Company shall not have an obligation to pay for any costs, interest, or damages attributable to punitive or exemplary damages.

**ASSAULT AND BATTERY EXCLUSION**
This policy does not apply to "bodily injury", "personal injury" or "property damage" arising out of assault and/or battery or out of any act or omission in connection with the prevention or suppression of such acts, including the failure to warn, train or supervise, whether caused by or at the instigation or direction of the Insured, his employees, patrons or any other person.

**PCB LIABILITY EXCLUSION**
This policy does not apply to "bodily injury",  "personal injury" or "property damage" arising out of the manufacture, handling, distribution, sale, application, consumption or use of any products known as PCB, polychlorinated biphenyis or which contains polychlorinated biphenyis or which has the same chemical formulary, or which is generally known in the chemical trade as having a like formulation, structure or function, by whatever name, manufactured, sold or distributed.

**OCCUPATIONAL DISEASES EXCLUSION**
This insurance does not apply to "bodily injury",  "personal injury" or "property damage arising out of "Occupational Diseases." "Occupational Diseases" means any injury, including death, sickness, disease or disability, defined as occupational disease in any workers compensation or disability benefits laws, statues or regulations of any jurisdiction in which the "Occurrence" occurred or the "Occupational Disease" arose.

MUS 01 01 20003 0412

**AMENDMENT OF LIABILITY PREMIUM CONDITIONS**
The premium designated in this policy as "advance premium" is a minimum and deposit premium, which shall be credited to the amount of the earned premium due at the end of the policy period. At the close of each period (or part thereof terminating with the end of the policy period) designated in the declarations as the audit period, the earned premium shall be computed for such period and upon notice thereof to the Named Insured, shall become due and payable. If the total earned premium for the policy period is less than the premium designated as "advance premium", such "advance premium" is the minimum premium for the policy period indicated, and is not subject to further adjustment.

All other terms and conditions of this policy remain unchanged.

MUS 01 01 20003 0412

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

**MESA UNDERWRITERS SPECIALTY**
**INSURANCE COMPANY**

Endorsement #

Named Insured: ONE PARK PLACE TOWER CONDOMINIUM ASSOCIATION

Policy Number: MP0015002000980          Effective Date: 11/22/2012
(The above information is required only when this form is added after the policy is issued)

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**Limited Coverage for Contractors and Employees (General Liability)**

This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE FORM

A. SECTION 1 – COVERAGE A BODILY INJURY AND PROPERTY DAMAGE, 2. Exclusions, e is deleted and replaced as follows:

This Insurance does not apply to:

e. Employer's Liability

"Bodily Injury" to:

(1) An "employee", "temporary worker", "leased employee", or independent contractor of the insured or any additional insured or employee of any independent contractor arising out of and in the course of:

(A) Employment by the insured or any additional insured or independent operator

(B) Performing duties related to the conduct of the insured or any additional insured's business; or

(C) Arising out of the injured party's employment; or

(2) A fellow "employee", "temporary worker", "leased employee", or independent contractor of the insured or any additional insured arising out of the course of such employment when the insured is an "executive officer" of such employer; or

(3) The spouse, children, parent, brother or sister of that fellow "employee", "temporary worker", "leased employee", or independent contractor as a consequence of Paragraph (1) above.

This exclusion applies:

(1) Whether an insured may be liable as an employer or in any other capacity;

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury; or

(3) To any liability assumed under any contract or agreement.

B. SECTION V – DEFINITIONS, subparagraph 19. is deleted and replaced with the following:

19. "Temporary Worker" means any person who is:

(A) Furnished to you to substitute for a permanent "employee";

(B) A short-term worker; or

(C) Not an "employee" or "volunteer" worker

All other terms and conditions of this policy remain unchanged.

MUS 01 01 2000? 0412

**MESA UNDERWRITERS SPECIALTY
INSURANCE COMPANY**

Endorsement #

Named Insured: ONE PARK PLACE TOWER CONDOMINIUM ASSOCIATION

Policy Number: MP0015002000980                Effective Date: 11/22/2012
        (The above information is required only when this form is added after the policy is issued)

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**Special Conditions - Subcontractors**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

The following condition is added to SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS section of the policy:

SPECIAL CONDITIONS - SUBCONTRACTORS

You will obtain Certificates of Insurance with Limits of Insurance equal to or greater than those provided by this Policy from all subcontractors or independent contractors prior to commencement of any work performed.

Failure to comply with this Special Condition does not alter the coverage provided by this Policy. However, should you fail to comply; a premium charge will be made. The premium charge will be computed by multiplying the "total cost" of all work sublet that fails to meet the above condition, by the rate per $1,000 of payroll for the applicable classification of the work performed.

If the policy does not contain the applicable classification and rate, we will multiply our usual and customary rate per $1,000 payroll for that classification, by the net modification factor, if any, applied to the policy rates.

"Total cost" means the cost of all labor, materials, and equipment furnished, used or delivered for use in the execution of the work, and all fees, bonuses or commissions paid.

All other terms and conditions of this policy remain unchanged.

MUS 01 01 20023 0412

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** – Definitions.

## SECTION I – COVERAGES

### COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

## 2. Exclusions

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**f. Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

  **(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

    **(i)** "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

    **(ii)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

    **(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

  **(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

  **(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

    **(i)** Any insured; or

    **(ii)** Any person or organization for whom you may be legally responsible; or

  **(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

    **(i)** "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

    **(ii)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

    **(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

  **(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

**(a)** Less than 26 feet long; and

**(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

**(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or

**(b)** the operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section III – Limits Of Insurance.

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

Case 4:23-cv-00847-JAM Document 1-1 Filed 11/17/23 Page 103 of 278

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of websites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a.**, **b.** and **c.** of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

Case 4:23-cv-00847-JAM   Document 1-1   Filed 11/17/23   Page 104 of 278

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-Related**

Any loss, cost or expense arising out of any:

(1) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**COVERAGE C MEDICAL PAYMENTS**

**1. Insuring Agreement**

a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(1) The accident takes place in the "coverage territory" and during the policy period;

(2) The expenses are incurred and reported to us within one year of the date of the accident; and

(3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

a. **Any Insured**

To any insured, except "volunteer workers".

b. **Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

c. **Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

d. **Workers Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

e. **Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

f. **Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

g. **Coverage A Exclusions**

Excluded under Coverage **A**.

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

a. All expenses we incur.

b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**c.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**e.** All costs taxed against the insured in the "suit".

**f.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**g.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

**2.** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**a.** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**b.** This insurance applies to such liability assumed by the insured;

**c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**d.** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**f.** The indemnitee:

  **(1)** Agrees in writing to:

    **(a)** Cooperate with us in the investigation, settlement or defense of the "suit";

    **(b)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

    **(c)** Notify any other insurer whose coverage is available to the indemnitee; and

    **(d)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

  **(2)** Provides us with written authorization to:

    **(a)** Obtain records and other information related to the "suit"; and

    **(b)** Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section **I** — Coverage **A** — Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

**a.** We have used up the applicable limit of insurance in the payment of judgments or settlements; or

**b.** The conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

## SECTION II – WHO IS AN INSURED

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

© ISO Properties, Inc., 2003

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

**2.** Each of the following is also an insured:

**a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

**(1)** "Bodily injury" or "personal and advertising injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

**(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs **(1)(a)** or **(b)** above; or

**(d)** Arising out of his or her providing or failing to provide professional health care services.

**(2)** "Property damage" to property:

**(a)** Owned, occupied or used by,

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

**(1)** With respect to liability arising out of the maintenance or use of that property; and

**(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**b.** Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**c.** Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III – LIMITS OF INSURANCE**

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

**2.** The General Aggregate Limit is the most we will pay for the sum of:

  **a.** Medical expenses under Coverage **C**;

  **b.** Damages under Coverage **A**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

  **c.** Damages under Coverage **B**.

**3.** The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

**4.** Subject to **2.** above, the Personal and Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

**5.** Subject to **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

  **a.** Damages under Coverage **A**; and

  **b.** Medical expenses under Coverage **C**

  because of all "bodily injury" and "property damage" arising out of any one "occurrence".

**6.** Subject to **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

**7.** Subject to **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

**1. Bankruptcy**

  Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

  **a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

    **(1)** How, when and where the "occurrence" or offense took place;

    **(2)** The names and addresses of any injured persons and witnesses; and

    **(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

  **b.** If a claim is made or "suit" is brought against any insured, you must:

    **(1)** Immediately record the specifics of the claim or "suit" and the date received; and

    **(2)** Notify us as soon as practicable.

    You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

  **c.** You and any other involved insured must:

    **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

    **(2)** Authorize us to obtain records and other information;

    **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

    **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

  **d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

  No person or organization has a right under this Coverage Part:

  **a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

Case 4:23-cv-00847-JAM   Document 1-1   Filed 11/17/23   Page 108 of 278

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

**b. Excess Insurance**

This insurance is excess over:

**(1)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(a)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(b)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(c)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(d)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

**(2)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(1)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(2)** The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

## SECTION V – DEFINITIONS

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means:

**a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in **a.** above; or

**c.** All other parts of the world if the injury or damage arises out of:

**(1)** Goods or products made or sold by you in the territory described in **a.** above;

**(2)** The activities of a person whose home is in the territory described in **a.** above, but is away for a short time on your business; or

**(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in **a.** above or in a settlement we agree to.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

**7.** "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

**a.** The repair, replacement, adjustment or removal of "your product" or "your work"; or

Case 4:23-cv-00847-JAM    Document 1-1    Filed 11/17/23    Page 110 of 278

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

**b.** Your fulfilling the terms of the contract or agreement.

**9.** "Insured contract" means:

   **a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   **b.** A sidetrack agreement;

   **c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   **d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   **e.** An elevator maintenance agreement;

   **f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

   Paragraph **f.** does not include that part of any contract or agreement:

    **(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

    **(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

     **(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

     **(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

    **(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

**10.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**11.** "Loading or unloading" means the handling of property:

   **a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

   **b.** While it is in or on an aircraft, watercraft or "auto"; or

   **c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

   but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

**12.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

   **a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

   **b.** Vehicles maintained for use solely on or next to premises you own or rent;

   **c.** Vehicles that travel on crawler treads;

   **d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

    **(1)** Power cranes, shovels, loaders, diggers or drills; or

    **(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

   **e.** Vehicles not described in **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

    **(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

    **(2)** Cherry pickers and similar devices used to raise or lower workers;

   **f.** Vehicles not described in **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

   However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

(1) Equipment designed primarily for:

   (a) Snow removal;

   (b) Road maintenance, but not construction or resurfacing; or

   (c) Street cleaning;

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

  **a.** False arrest, detention or imprisonment;

  **b.** Malicious prosecution;

  **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

  **d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

  **e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

  **f.** The use of another's advertising idea in your "advertisement"; or

  **g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.** "Products-completed operations hazard":

  **a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

    (1) Products that are still in your physical possession; or

    (2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

      (a) When all of the work called for in your contract has been completed.

      (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

      (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

    Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

  **b.** Does not include "bodily injury" or "property damage" arising out of:

    (1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

    (2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

    (3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

**17.** "Property damage" means:

  **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

Case 4:23-cv-00847-JAM   Document 1-1   Filed 11/17/23   Page 112 of 278

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**19.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**20.** "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

**21.** "Your product":

**a.** Means:

**(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**(a)** You;

**(b)** Others trading under your name; or

**(c)** A person or organization whose business or assets you have acquired; and

**(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

**(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

**a.** Means:

**(1)** Work or operations performed by you or on your behalf; and

**(2)** Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

**(2)** The providing of or failure to provide warnings or instructions.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – INTERCOMPANY PRODUCTS SUITS

This endorsement modifies insurance provided under the following:

    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

This insurance does not apply to any claim for damages by any Named Insured against another Named Insured because of "bodily injury" or "property damage" arising out of "your products" and included within the "products-completed operations hazard."

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LIMITATION OF COVERAGE TO DESIGNATED PREMISES OR PROJECT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**Premises:**
700 WEST 31ST STREET KANSAS CITY, MO 64111

**Project:**

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

This insurance applies only to "bodily injury", "property damage", "personal and advertising injury" and medical expenses arising out of:

1. The ownership, maintenance or use of the premises shown in the Schedule and operations necessary or incidental to those premises; or

2. The project shown in the Schedule.

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2.**, **Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

   **(1)** A person arising out of any:

   **(a)** Refusal to employ that person;

   **(b)** Termination of that person's employment; or

   **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

   **(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2.**, **Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

   **(1)** A person arising out of any:

   **(a)** Refusal to employ that person;

   **(b)** Termination of that person's employment; or

   **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

   **(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

Copyright, Insurance Services Office, Inc., 1997

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# TOTAL POLLUTION EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion **f.** under Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

This insurance does not apply to:

**f. Pollution**

  **(1)** "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

  **(2)** Any loss, cost or expense arising out of any:

    **(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

    **(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

**a.** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**b.** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

**B.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

**a.** "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

**b.** Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

**C.** The following definition is added to the **Definitions** Section:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION OF OTHER ACTS OF TERRORISM COMMITTED OUTSIDE THE UNITED STATES; CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM**

"Any injury or damage" arising, directly or indirectly, out of an "other act of terrorism" that is committed outside of the United States (including its territories and possessions and Puerto Rico), but within the "coverage territory". However, this exclusion applies only when one or more of the following are attributed to such act:

**1.** The total of insured damage to all types of property exceeds $25,000,000 (valued in U.S. dollars). In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the terrorism and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

**2.** Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

**a.** Physical injury that involves a substantial risk of death; or

**b.** Protracted and obvious physical disfigurement; or

**c.** Protracted loss of or impairment of the function of a bodily member or organ; or

**3.** The terrorism involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

**4.** The terrorism is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

**5.** Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials.

With respect to this exclusion, Paragraphs **1.** and **2.** describe the thresholds used to measure the magnitude of an incident of an "other act of terrorism" and the circumstances in which the threshold will apply for the purpose of determining whether this exclusion will apply to that incident.

**B.** The following definitions are added:

**1.** For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Part to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part.

© Insurance Services Office, Inc., 2008

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

2. "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

a. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act;

b. The act resulted in damage:

(1) Within the United States (including its territories and possessions and Puerto Rico); or

Outside of the United States in the case of:

(a) An air carrier (as defined in Section 40102 of title 49, United States Code) or United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), regardless of where the loss occurs; or

(b) The premises of any United States mission; and

c. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

3. "Other act of terrorism" means a violent act or an act that is dangerous to human life, property or infrastructure that is committed by an individual or individuals and that appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion, and the act is not a "certified act of terrorism".

Multiple incidents of an "other act of terrorism" which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

C. In the event of an "other act of terrorism" that is not subject to this exclusion, coverage does not apply to any loss or damage that is otherwise excluded under this Coverage Part.

D. If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31) and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

© Insurance Services Office, Inc., 2008 CG 21 71 06 08

Case 4:23-cv-00847-JAM   Document 1-1   Filed 11/17/23   Page 120 of 278

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

POLICY NUMBER: MP0015002000980

**COMMERCIAL GENERAL LIABILITY**
**CG 24 07 01 96**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PRODUCTS/COMPLETED OPERATIONS HAZARD REDEFINED

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

**Description of Premises and Operations:**

```
700 WEST 31ST STREET KANSAS CITY, MO 64111
CONDOMINIUMS - 62003
SWIMMING POOL - 48925
CLUBHOUSE - PARKING
```

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

With respect to "bodily injury" or "property damage" arising out of "your products" manufactured, sold, handled or distributed:

1. On, from or in connection with the use of any premises described in the Schedule, or

2. In connection with the conduct of any operation described in the Schedule, when conducted by you or on your behalf,

Paragraph **a.** of the definition of "Products-completed operations hazard" in the DEFINITIONS Section is replaced by the following:

"Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" that arises out of "your products" if the "bodily injury" or "property damage" occurs after you have relinquished possession of those products.

**2316-CV27811**

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

# MESA UNDERWRITERS SPECIALTY INSURANCE COMPANY

MESA UNDERWRITERS SPECIALTY INSURANCE COMPANY
P.O. BOX 4030
SCOTTSDALE, ARIZONA 85261-4030

COMMERCIAL INSURANCE POLICY

MUSIC and its General Agent RDS Group of Kansas, LLC
are pleased to have issued Policy MP0015002001417 to
ONE PARK PLACE TOWER CONDOMINIUM ASSOCIATION AND

In witness whereof, Mesa Underwriters Speciality Insurance Company has caused this policy to be signed by its President and countersigned on the Declaration page by a duly Authorized Representative of the Company.

Corporate Secretary

President

MUSIC

MUS 01 01 10001 0412

**EXHIBIT 3**

# COMMON POLICY DECLARATIONS

## MESA UNDERWRITERS SPECIALTY INSURANCE COMPANY

**Policy Number:** MP0015002001417

☐ **New**  ☐ **Cross-Ref**

☒ **Renewal**  ☐ **Rewrite**

**Previous Policy Number:** MP0015002000980

**Policy Period:** From 11/22/2013 To 11/22/2014 at **12:01 A.M.** Standard Time at your mailing address shown below.

No Flat Cancellation

**Named Insured:**
ONE PARK PLACE TOWER CONDOMINIUM ASSOCIATION AND
PARK PLACE KC, LLC

SL344705     **Tax State:** MO

This is evidence of insurance procured and developed under the Missouri Surplus Lines Laws. It is NOT covered by the Missouri Insurance Guaranty Association. This insurer is not licensed by the State of Missouri and is not subject to its supervision.

**Mailing Address:**
C/O CURRY ASSOCIATION MANAGEMENT
2700 KENDALLWOOD PKWY #208
GLADSTONE     MO 64118

**Agent and Mailing Address:**     **Agent Number:** 15002
RDS Group of Kansas, LLC

8400 W. 110th St., Suite 110
Overland Park     KS 66210

**Business Description:**
CONDOMINIUM

**Select Coverage Part (for which insurance is being afforded)**

| | | |
|---|---|---|
| ☒ **Commercial General Liability** | $ | ▉ |
| ☐ **Commercial Property** | $ | |
| ☐ **Commercial Inland Marine** | $ | |
| ☐ **Commercial Crime** | $ | |
| ☐ **Garage** | $ | |
| ☒ **TRIA** | $ | ▉ |
| ☐ **Other** (Describe) | $ | |

POLICY FEE     $200.00
MISSOURI TAX     $215.40

**Total Advance Premium** $ ▉

**Total Other Charges** $ ▉

**Total** $ ▉

**Premiums Shown are payable at inception or as indicated on the individual Coverage Declarations.**

Form(s) and Endorsement(s), including edition dates, made a part of this policy at the time of issue: See Schedule of Forms

Countersigned: Overland Park    KS    12/06/2013    By: _____

         Date               Authorized Agent

MB/CL

MUS 01 01 10002 0412

**SCHEDULE OF FORMS AND ENDORSEMENTS**

MESA UNDERWRITERS SPECIALTY
INSURANCE COMPANY

Named Insured      ONE PARK PLACE TOWER CONDOMINIUM ASSOCIATION AND

Policy Number      MP0015002001417

Effective Date:    11/22/2013

| | |
|---|---|
| MUS 01 01 10001 0412 | POLICY JACKET |
| MUS 01 01 10002 0412 | COMMON POLICY DECLARATION |
| MUS 01 01 10003 0412 | SCHEDULE OF FORMS & ENDORSEMENTS |
| MUS 01 01 10004 0412 | NOTICES TO POLICY HOLDER |
| MUS 01 01 10005 0412 | SERVICE OF SUIT |
| MUS 01 01 10007 0412 | MINIMUM EARNED PREMIUM ENDORSEMENT |
| MUS 01 01 10009 0412 | NON-STACKING OF LIMITS ENDORSEMENT |
| MUS 01 01 10098 0612 | POLICYHOLDER NOTICE |
| IL 00 17 11 98 | COMMON POLICY CONDITIONS |
| MUS 01 01 20001 0412 | GENERAL LIABILITY COVERAGE PART DECLARATIONS |
| MUS 01 01 20002 0412 | GENERAL LIABILITY SUPPLEMENTAL DECLARATIONS |
| MUS 01 01 20003 0412 | ENDORSEMENT - ADDITIONAL EXCLUSIONS & PROVISIONS LIABILITY INSURANCE |
| MUS 01 01 20004 0412 | LIABILITY DEDUCTIBLE |
| MUS 01 01 20006 0412 | EXCL - CROSS SUITS (CONDOMINIUM, TOWN HOME, & HOMEOWNERS ASSOCIATIONS) |
| MUS 01 01 20007 0412 | LIMITED COVG FOR CONTRACTORS & EMPLOYEES - GENERAL LIABILITY |
| MUS 01 01 20023 0412 | SPECIAL CONDITIONS - SUBCONTRACTORS |
| MUS 01 01 20024 0412 | HIRED & NON-OWNED AUTO LIABILITY |
| MUS 01 01 20027 0412 | EXCL - DIRECTORS & OFFICERS LIABILITY |
| MUS 01 01 20041 0412 | COVERAGE FOR ASSAULT AND BATTERY |
| MUS 01 01 20042 0412 | LIMITED COVERAGE FOR ASSAULT AND BATTERY |
| IL 00 21 05 04 | NUCLEAR ENERGY LIABILITY EXCL ENDT |
| CG 00 01 12 04 | COMMERCIAL GENERAL LIABILITY COVG FORM |
| CG 00 62 12 02 | WAR LIABILITY EXCL |
| CG 20 10 07 04 | AI - OWNERS, LESSEES OR CONTRACTORS - SCHEDULED PERSON OR ORGANIZATION |
| CG 20 11 01 96 | AI - MANAGERS OR LESSORS OF PREMISES |
| CG 21 39 10 93 | CONTRACTUAL LIABILITY LIMITATION |
| CG 21 41 11 85 | EXCLUSION - INTERCOMPANY PRODUCTS SUITS |
| CG 21 44 07 98 | LIMITATION OF COVG TO DESIGNATED PREMISES OR PROJECT |
| CG 21 47 12 07 | EMPLOYMENT-RELATED PRACTICES EXCLUSION |
| CG 21 49 09 99 | EXCL - TOTAL POLLUTION ENDT |
| CG 21 67 12 04 | EXCL - FUNGI OR BACTERIA |
| CG 21 71 06 08 | EXCL - LIMITED TERRORISM (OTHER THAN CERTIFIED ACTS OF TERRORISM) |
| CG 24 07 01 96 | PRODUCTS/COMPLETED OPERATIONS HAZARD REDEFINED |

**SCHEDULE OF FORMS AND ENDORSEMENTS**

**MESA UNDERWRITERS SPECIALTY INSURANCE COMPANY**

Named Insured    ONE PARK PLACE TOWER CONDOMINIUM ASSOCIATION AND

Policy Number    MP0015002001417

Effective Date:    11/22/2013

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

**COMMERCIAL GENERAL LIABILITY** Coverage Part Declarations

MESA UNDERWRITERS SPECIALTY INSURANCE COMPANY

This Coverage Part consists of this Declarations Form, the Common Policy Conditions, the Commercial General Liability Conditions, the Coverage Form(s), and the Coverage Endorsement(s) indicated as applicable.

| | |
|---|---|
| Named Insured | ONE PARK PLACE TOWER CONDOMINIUM ASSOCIATION AND |
| Policy Number | MP0015002001417 |
| Effective Date: | 11/22/2013 |

## LIMITS OF INSURANCE

☒ **"X"** If Supplemental Declarations is attached.

| | | |
|---|---|---|
| General Aggregate Limit (Other Than Products / Completed Operations) | $ | 2,000,000 |
| Products / Completed Operations Aggregate Limit | $ | 2,000,000 |
| Personal and Advertising Injury Limit | $ | 1,000,000 |
| Each Occurrence Limit | $ | 1,000,000 |
| Damage to Premises Rented to You Limit    (Any 1 Premises) | $ | 50,000 |
| Medical Expense Limit   (Any 1 Person) | $ | 1,000 |

## BUSINESS DESCRIPTION AND LOCATION OF PREMISES

**Form of Business:**

☐ Individual  ☐ Joint Venture  ☐ Partnership  ☐ Limited Liability Company  ☒ Organization (other): ASSOCIATION

**Business Description:** CONDOMINIUM

**Location(s) of All Premises you Own, Rent or Occupy:**

1)  700 WEST 31ST STREET KANSAS CITY, MO 64111

2)  _____

3)  _____

## CLASSIFICATION & PREMIUM PROVIDED

| Code No. | Classification Description | Premium Basis / Exposure* | Rate Premises / Operations | Rate Products / Comp Ops | Advanced Premium Premises / Operations | Advanced Premium Products / Comp Ops |
|---|---|---|---|---|---|---|
| 62003 | Condominiums - Residential (association risk only) | u | ▓▓▓▓ | INCL. | ▓▓▓▓ | INCL. |
| | Products-Completed Operations are subject to the General Aggregate Limit | | | | | |
| 48925 | Swimming Pools | t | ▓▓▓▓ | INCL. | ▓▓▓▓ | INCL. |
| | Products-Completed Operations are subject to the General Aggregate Limit | | | | | |
| 62003 | Condominiums - Residential (association risk only) | FLAT | ▓▓▓▓ | INCL. | ▓▓▓▓ | INCL. |
| | Products-Completed Operations are subject to the General Aggregate Limit | | | | | |

*Premium Basis Types:   **p - Payroll** (per $1,000 of Payroll)   **c - Cost** (per $1,000 Total Cost)   **s - Sales** (per $1,000 Gross Sales)
**a - Area** (per 1,000 Square feet of area)   **m - Admissions** (per 1,000 Admissions)   **u - Units** (per Unit)
**t – Total** (per each)

**Total Annual Premium:** $ ▓▓▓▓▓

| Forms/Endorsements Applicable | See Schedule of Forms and Endorsements |
|---|---|

MUS 01 01 2009

**Premium Basis Definitions:**

1) "**Payroll**" means:
Remuneration which includes money or substitutes for money.
   **Payroll Includes:**

   a. Commissions, bonuses, pay for holidays, vacations or periods of illness;

   b. Extra pay for overtime in accordance with the manuals in use by us;

   c. Payments by an employer or amounts otherwise required by law to be paid by employees to statutory insurance or pension plans, such as the Federal Social Security Act;

   d. Payment to employees on any basis other than time worked, such as piece work, profit sharing or incentive plans;

   e. Payment or allowance for hand tools or power tools used by hand provided by employees and used in their work or operations for the insured;

   f. The rental value of an apartment or house provided for an employee based on comparable accommodations;

   g. Value of meals and lodging other than an apartment or house received by employees as part of their pay;

   h. The value of store certificates, merchandise, credits or any other substitute for money received by employees as part their pay;

   i. The payroll of mobile equipment operators and their helpers, whether or not the operators are designated or licensed to operate automobiles. If the operators and their helpers are provided to the insured along with equipment hired under contract and their actual payroll is not known, use 1/3 of the total amount paid out by the insured for the hire or the equipment;

   j. The payroll of executive officers and individual insureds and co-partners in accordance with the manuals in use by us;

   k. Fees paid to employment agencies for temporary personnel provided to the insured.

   **Payroll does not include:**

   a. Tips and other gratuities received by employees;

   b. Payments by an employer to group insurance or group pension plans for employees I in accordance with manuals in use by us;

   c. The value of special rewards for individual invention or discovery;

   d. Dismissal or severance payments except for time worked or accrued vacation;

   e. The payroll of clerical office employees;

   f. The payroll of salesmen, collectors or messengers who work principally away from the insured's premises. Salesmen, collectors or messengers are those employees engaged principally in any such duties away from the premises of the employer; Exception:   This term does not apply to any employee whose duties include the delivery of any merchandise handled, treated or sold.

   g. The payroll of aircraft pilots or co-pilots if their principal duties are to work on or in connection with aircraft in either capacity.

   **The rates apply per $1,000 payroll.**

2) "**Cost**" means:
The total cost of all work let or sublet in connection with each specific project including:

   a. The cost of all labor, materials and equipment furnished, used or delivered for use in the execution of the work; and

   b. All fees, bonuses or commissions made, paid or due.

   **The rates apply per $1,000 of cost.**

3) "**Sales**" means:

   The gross amount charged by the named insured, concessionaires of the named insured or by others trading under the insured's name for:

   1. All goods or products, sold or distributed;

   2. Operations performed during the policy period;

   3. Rentals.

   A. **Gross Sales includes:**

   1. Foreign exchange discounts;

   2. Freight allowance to customers;

   3. Total sales of consigned goods and warehouse receipts;

   4. Trade or cash discounts;

   5. Bad debts; and

   6. Repossession of items sold on installments (amount actually collected).

   B. **Gross Sales excludes:**

   1. Sales or excise taxes which are collected and submitted to a governmental division;

   2. Credits for repossessed merchandise and products returned. Allowances for damaged and spoiled goods;

   3. Finance charges for items sold on installments;

   4. Freight charges on sales if freight is charged as a separate item on customers invoice; and

   5. Royalty income from patent rights or copyrights which are not products sales.

   **The rates apply per $1,000 of gross sales.**

4) "**Area**" means:

   The total number of square feet or floor space at the insured premises, computed as follows:

   A. For entire buildings, by multiplying the product of the horizontal dimensions of the outside of the outer building walls by the number of floors, including basements but do not use the area of the following:

   1. Courts and mezzanine types of floor openings.

   2. Portions of basements of floors where 50% or more of the area used for shop or storage for building maintenance, dwelling by building maintenance employees, heating units, power plants or air–conditioning equipment.

   B. For tenants, determine the area they occupy in the same manner as for the entire building.

   **The rates apply per 1,000 square feet of area.**

5) "**Admissions**" means:
The total number of persons, other than employees of the named insured, admitted to the event insured or to events conducted on the premises whether on paid admissions, tickets, complimentary tickets or passes.

   **The rates apply per 1,000 admissions.**

6) "**Units**" means:
A single room or group of rooms intended for occupancy as separate living quarters by a family, by a group of unrelated persons living together, or by a person living alone.

   **The rates apply per each unit.**

7) "**Total**" means:
This basis of premium involves units of exposure, and the quantity comprising each unit of exposure is indicated on the declarations page, such as "per person."

   **The rates apply per unit.**

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

MESA UNDERWRITERS SPECIALTY
INSURANCE COMPANY

**COMMERCIAL GENERAL LIABILITY** Coverage Part Supplemental Declarations

Named Insured: ONE PARK PLACE TOWER CONDOMINIUM ASSOCIATION AND

Policy Number: MP0015002001417

Effective Date: 11/22/2013

### ADDITIONAL LOCATION OF PREMISES

**Location(s) of All Premises you Own, Rent or Occupy:**

)
)
)
)
)
)
)
)
)
)
)
)

### ADDITIONAL CLASSIFICATIONS & PREMIUMS PROVIDED

| Code No. | Classification Description | Premium Basis / Exposure* | Rate | | Advanced Premium | |
| | | | Premises / Operations | Products / Comp Ops | Premises / Operations | Products / Comp Ops |
|---|---|---|---|---|---|---|
| 88888 | Hired Automobile Coverage - SEE MUS010120024 | FLAT | ■■■■ | INCL. | ■■■■ | INCL. |
| | Products-Completed Operations are subject to the General Aggregate Limit | | | | | |
| | ASSAULT OR BATTERY - SEE MUS010120042 | FLAT | ■■■■ | INCL. | ■■■■ | INCL. |
| 46622 | Parking - Private | FLAT | ■■■■ | INCL. | ■■■■ | INCL. |
| | Products-Completed Operations are subject to the General Aggregate Limit | | | | | |

*Premium Basis Types: **p - Payroll** (per $1,000 of Payroll)   **c - Cost** (per $1,000 Total Cost)   **s - Sales** (per $1,000 Gross Sales)
**a - Area** (per 1,000 Square feet of area)   **m - Admissions** (per 1,000 Admissions)   **u - Units** (per Unit)
**t – Total** (per each)

Extension of General Liability Declaration - Total Annual Premium: | $

| Forms/Endorsements Applicable | See Schedule of Forms and Endorsements |
|---|---|

MUS 01 01 20002 0412

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

MESA UNDERWRITERS SPECIALTY
INSURANCE COMPANY

**COMMERCIAL GENERAL LIABILITY** Coverage Part Supplemental Declarations

Named Insured: ONE PARK PLACE TOWER CONDOMINIUM ASSOCIATION AND

Policy Number: MP0015002001417

Effective Date: 11/22/2013

## ADDITIONAL LOCATION OF PREMISES

Location(s) of All Premises you Own, Rent or Occupy:

)
)
)
)
)
)
)
)
)
)
)

## ADDITIONAL CLASSIFICATIONS & PREMIUMS PROVIDED

| Code No. | Classification Description | Premium Basis / Exposure* | | Rate | | Advanced Premium | |
|---|---|---|---|---|---|---|---|
| | | | | Premises / Operations | Products / Comp Ops | Premises / Operations | Products / Comp Ops |
| 11111 | Additional Insured - CG2010 & CG2011 | t | 2 | INCL. | INCL. | INCL. | INCL. |
| | Products-Completed Operations are subject to the General Aggregate Limit | | | | | | |

*Premium Basis Types: **p - Payroll** (per $1,000 of Payroll) **c - Cost** (per $1,000 Total Cost) **s - Sales** (per $1,000 Gross Sales)
**a - Area** (per 1,000 Square feet of area) **m - Admissions** (per 1,000 Admissions) **u - Units** (per Unit)
**t – Total** (per each)

| Extension of General Liability Declaration - Total Annual Premium: | $ |
|---|---|

| Forms/Endorsements Applicable | See Schedule of Forms and Endorsements |
|---|---|

MUS 01 01 20002 0412

MESA UNDERWRITERS SPECIALTY
INSURANCE COMPANY

Endorsement #

Named Insured: <u>ONE PARK PLACE TOWER CONDOMINIUM ASSOCIATION AND</u>

Policy Number: <u>MP0015002001417</u>      Effective Date: <u>11/22/2013</u>
(The above information is required only when this form is added after the policy is issued)

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

**Liability Deductible**
(Including Costs and Expenses)

| Coverage | Amount of Deductible | |
|---|---|---|
| Bodily Injury Liability | 500 | per "claim" |
| Property Damage Liability | 500 | per "claim" |
| Personal and Advertising Injury | 500 | per "claim" |

A.  The Company's obligations under the coverage afforded by this policy to pay damages on behalf of the Insured apply only to the amount of damages in excess of the deductible amount stated above.

B.  The deductible amount applies to all damages sustained by one person or organization as the result of any one claim.

C.  The deductible amount stated will also apply towards investigation, adjustment and legal expenses incurred in the handling and investigation of each claim, whether or not payment is made to claimant, compromise settlement is reached or claim is denied.

D.  The terms of the policy, including those with respect to the Company's rights and duties with respect to the defense of suits and the Insured's duties in the event of an occurrence apply irrespective of the application of the deductible amount.

E.  The Company, at its sole election and option, may either:

1.  Pay any part of or all of the deductible amount to effect settlement of any claim or suit, and upon notification of the action taken, the Named Insured shall promptly reimburse the Company for such part of the deductible amount as has been paid by the Company; or

2.  Simultaneously upon receipt of notice of any claim or at any time thereafter, call upon the Insured and request said Insured to pay over and deposit with the Company all or part of the deductible amount, to be held and applied by the Company as herein provided.

All other terms and conditions of this policy remain unchanged.

MUS 01 01 20004 0412

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

MESA UNDERWRITERS SPECIALTY
INSURANCE COMPANY

Endorsement #

Named Insured: ONE PARK PLACE TOWER CONDOMINIUM ASSOCIATION AND

Policy Number: MP0015002001417                    Effective Date: 11/22/2013

(The above information is required only when this form is added after the policy is issued)

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**Exclusion - Cross Suits**
**(Condo Association, Town Home Association or Homeowner Association)**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

The following exclusion is added to Coverage A, B and C (Section I):

This insurance does not apply to "Bodily Injury", "Property Damage", "Personal Injury" or Medical Payments arising out of occurrences between two or more association members. Association members include all active, inactive, auxiliary or national association members.

All other terms and conditions of this policy remain unchanged.

MUS 01 01 20006 0412

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# WAR LIABILITY EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **i.** under Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war; or

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**WAR**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

**a.** War, including undeclared or civil war; or

**b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**c.** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**C.** Exclusion **h.** under Paragraph **2., Exclusions** of **Section I – Coverage C – Medical Payments** does not apply. Medical payments due to war are now subject to Exclusion **g.** of Paragraph **2., Exclusions** of **Section I – Coverage C – Medical Payments** since "bodily injury" arising out of war is now excluded under Coverage **A.**

Case 4:23-cv-00847-JAM   Document 1-1   Filed 11/17/23   Page 132 of 278

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s): | Location(s) Of Covered Operations |
|---|---|
| PARK PLACE KC, LLC<br>C/O AY KC, INC.<br>ATTN: TESS PALMA<br>1065 E. HILLSDALE BLVD STE: 105<br>FOSTER CITY, CA 94404 | |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

1. Your acts or omissions; or

2. The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to "bodily injury" or "property damage" occurring after:

1. All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

2. That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

© ISO Properties, Inc., 2004

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

**COMMERCIAL GENERAL LIABILITY**
**CG 20 11 01 96**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – MANAGERS OR LESSORS OF PREMISES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

## SCHEDULE

**1.** Designation of Premises (Part Leased to You): 700 WEST 31ST STREET KANSAS CITY, MO 64111

**2.** Name of Person or Organization (Additional Insured): CURRY ASSOCIATION MANAGEMENT, INC. & ITS AFFILIATES

**3.** Additional Premium: INCLUDED

(If no entry appears above, the information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

WHO IS AN INSURED (Section **II**) is amended to include as an insured the person or organization shown in the Schedule but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to you and shown in the Schedule and subject to the following additional exclusions:

This insurance does not apply to:

**1.** Any "occurrence" which takes place after you cease to be a tenant in that premises.

**2.** Structural alterations, new construction or demolition operations performed by or on behalf of the person or organization shown in the Schedule.

Copyright, Insurance Services Office, Inc., 1994

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CONTRACTUAL LIABILITY LIMITATION

This endorsement modifies insurance provided under the following:

> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

The definition of "insured contract" in the DEFINITIONS Section is replaced by the following:

"Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement.

 Copyright, Insurance Services Office, Inc., 1992  □

MESA UNDERWRITERS SPECIALTY
INSURANCE COMPANY

Endorsement #

Named Insured: ONE PARK PLACE TOWER CONDOMINIUM ASSOCIATION AND

Policy Number: MP0015002001417                    Effective Date: 11/22/2013
        (The above information is required only when this form is added after the policy is issued)

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

**Notices to Policyholder**

A.    Any misrepresentation or any concealment or fraud on the part of the Insured which misrepresentation, concealment or fraud affects either the acceptance of the risk or the hazard assumed by the Company shall render this policy void.

B.    The Company reserves the right to audit any and all portions of the insurance policy.

C.    Notice of all accidents or occurrences must immediately be given to Mesa Underwriters Specialty Insurance Company whether or not such accidents or occurrences appear likely to involve this policy.


        Please report all claims to your Retail Insurance Agent, our General Agent or us.


All other terms and conditions of this policy remain unchanged.


MUS 01 01 10004 0412

MESA UNDERWRITERS SPECIALTY
INSURANCE COMPANY

Endorsement #

Named Insured: ONE PARK PLACE TOWER CONDOMINIUM ASSOCIATION AND

Policy Number: MP0015002001417    Effective Date: 11/22/2013

(The above information is required only when this form is added after the policy is issued)

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## Service of Suit

Service of suit against us may be made upon our designated agent for purposes of service of process:

William B. Masterson

Mesa Underwiters Specialty Insurance Company

6263 North Scottsdale Road, Suite 300

Scottsdale, Arizona 85250

Pursuant to any statute of any state, territory or district of the United States of America which makes provision therefore, the Company hereby designates the Superintendent, Commissioner or Director of Insurance or other office specified for that purpose in the Statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Insured or any beneficiary hereunder rising out of this contract of insurance.

In the States of California and Illinois, it is further agreed that service of process may be made upon the person or persons named below:

All other terms and conditions of this policy remain unchanged.

MUS 01 01 10005 0412

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

MESA UNDERWRITERS SPECIALTY
INSURANCE COMPANY

Endorsement #

Named Insured: ONE PARK PLACE TOWER CONDOMINIUM ASSOCIATION AND

Policy Number: MP0015002001417                    Effective Date: 11/22/2013
(The above information is required only when this form is added after the policy is issued)

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

**Minimum Earned Premium Endorsement**

This endorsement modifies insurance provided under the following:

THIS ENDORSEMENT APPLIES TO ALL COVERAGE PARTS.

If this insurance is cancelled at your request, there will be a minimum earned premium retained by Mesa Underwriters Specialty Insurance Company of $          or      25 % of the premium for this insurance, whichever is greater.

Cancellation of this insurance for nonpayment of premium is considered a request by the first Named Insured for cancellation of this insurance.

The provisions of this amendment apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the minimum earned premium.

All other terms and conditions of this policy remain unchanged.

MUS 01 01 10007 0412

MESA UNDERWRITERS SPECIALTY
INSURANCE COMPANY

Endorsement #

Named Insured: ONE PARK PLACE TOWER CONDOMINIUM ASSOCIATION AND

Policy Number: MP0015002001417                    Effective Date: 11/22/2013
(The above information is required only when this form is added after the policy is issued)

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

**Non-Stacking of Limits Endorsement**
**Two or More Coverage Forms, Coverage Parts or Policies Issued by Us**

This endorsement modifies insurance provided under the following:

ALL COVERAGE FORMS OR COVERAGE PARTS PROVIDING LIABILITY COVERAGE

If any Coverage Form, Coverage Part or Policy issued to you by us or any company affiliated with us apply to the same claim for damages, the maximum Limit of Insurance for Liability Coverage under all of the Coverage Forms, Coverage Parts or Policies shall not exceed the highest applicable Limit of Insurance available under any one Coverage Form, Coverage Part of Policy.

This endorsement does not apply to Coverage Form, Coverage Part or Policy issued by us or an affiliated company specifically to apply as excess insurance over the Policy.

All other terms and conditions of this policy remain unchanged.

MUS 01 01 10009 0412

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

MESA UNDERWRITERS SPECIALTY
INSURANCE COMPANY

**Policyholder Notice**

Montpelier U.S. Insurance Company has changed its name to Mesa Underwriters Specialty Insurance Company. Effective immediately all policies, endorsements, applications and cancellations/non-renewals/reinstatements will be in the name of Mesa Underwriters Specialty Insurance Company. Please contact your insurance broker with any questions regarding this Notice.

All other policy terms, exclusions and conditions remain unchanged.

MUS 01 01 10098 0612

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

**A. Cancellation**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C. Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**D. Inspections And Surveys**

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**E. Premiums**

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

**F. Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Case 4:23-cv-00847-JAM   Document 1-1   Filed 11/17/23   Page 141 of 278

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

MESA UNDERWRITERS SPECIALTY
INSURANCE COMPANY

Endorsement #

Named Insured: ONE PARK PLACE TOWER CONDOMINIUM ASSOCIATION AND

Policy Number: MP0015002001417          Effective Date: 11/22/2013

(The above information is required only when this form is added after the policy is issued)

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### Endorsement - Additional Exclusions and Provisions Liability Insurance

In consideration of the premium charged, it is understood and agreed that the following shall apply to this policy:

### LEAD, ASBESTOS AND SILICA EXCLUSION
This policy does not apply to "bodily injury", "personal injury" or "property damage" arising out of the manufacture, sale, lease, distribution, storage, handling, installation, repair, removal, testing, inspection, disposal or other use of, exposure to, or contact with any goods, products, materials, plant life, or structures containing lead, asbestos or silica in any form including, without limitation, claims arising out of continuous, intermittent or repeated exposure to and/or ingestion, inhalation or absorption of lead, asbestos or silica in any form. This exclusion applies regardless of whether the "bodily injury", "personal injury" or "property damage" results from inhaling, eating, drinking, physical contact with or any other exposure to lead, asbestos or silica in any form.

### SUBSIDENCE OF LAND EXCLUSION
This policy does not apply to "bodily injury", "personal injury" or "property damage" arising out of or aggravated by the subsidence of land as a result of landslide, mudflow, earth sinking or shifting, whether arising from natural causes or resulting from operations of the Named Insured or any other subcontractor of the Named Insured.

### PUNITIVE OR EXEMPLARY DAMAGES EXCLUSION
This policy does not apply to any claim or indemnification for punitive or exemplary damages. If a suit is brought against the Insured for a claim falling within the coverage provided by the policy, seeking both compensatory and punitive or exemplary damages, then the Company will afford a defense to such action. The Company shall not have an obligation to pay for any costs, interest, or damages attributable to punitive or exemplary damages.

### ASSAULT AND BATTERY EXCLUSION
This policy does not apply to "bodily injury", "personal injury" or "property damage" arising out of assault and/or battery or out of any act or omission in connection with the prevention or suppression of such acts, including the failure to warn, train or supervise, whether caused by or at the instigation or direction of the Insured, his employees, patrons or any other person.

### PCB LIABILITY EXCLUSION
This policy does not apply to "bodily injury",  "personal injury" or "property damage" arising out of the manufacture, handling, distribution, sale, application, consumption or use of any products known as PCB, polychlorinated biphenyis or which contains polychlorinated biphenyis or which has the same chemical formulary, or which is generally known in the chemical trade as having a like formulation, structure or function, by whatever name, manufactured, sold or distributed.

### OCCUPATIONAL DISEASES EXCLUSION
This insurance does not apply to "bodily injury",  "personal injury" or "property damage arising out of "Occupational Diseases."  "Occupational Diseases" means any injury, including death, sickness, disease or disability, defined as occupational disease in any workers compensation or disability benefits laws, statues or regulations of any jurisdiction in which the "Occurrence" occurred or the "Occupational Disease" arose.

MUS 01 01 20003 0412

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

**AMENDMENT OF LIABILITY PREMIUM CONDITIONS**
The premium designated in this policy as "advance premium" is a minimum and deposit premium, which shall be credited to the amount of the earned premium due at the end of the policy period. At the close of each period (or part thereof terminating with the end of the policy period) designated in the declarations as the audit period, the earned premium shall be computed for such period and upon notice thereof to the Named Insured, shall become due and payable. If the total earned premium for the policy period is less than the premium designated as "advance premium", such "advance premium" is the minimum premium for the policy period indicated, and is not subject to further adjustment.

All other terms and conditions of this policy remain unchanged.

MUS 01 01 20003 0412

MESA UNDERWRITERS SPECIALTY
INSURANCE COMPANY

Endorsement #

Named Insured: ONE PARK PLACE TOWER CONDOMINIUM ASSOCIATION AND

Policy Number: MP0015002001417      Effective Date: 11/22/2013

(The above information is required only when this form is added after the policy is issued)

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**Limited Coverage for Contractors and Employees (General Liability)**

This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE FORM

A. SECTION 1 – COVERAGE A BODILY INJURY AND PROPERTY DAMAGE, 2. Exclusions, e is deleted and replaced as follows:

This Insurance does not apply to:

e. Employer's Liability

"Bodily Injury" to:

  (1) An "employee", "temporary worker", "leased employee", or independent contractor of the insured or any additional insured or employee of any independent contractor arising out of and in the course of:

    (A) Employment by the insured or any additional insured or independent operator

    (B) Performing duties related to the conduct of the insured or any additional insured's business; or

    (C) Arising out of the injured party's employment; or

  (2) A fellow "employee", "temporary worker", "leased employee", or independent contractor of the insured or any additional insured arising out of the course of such employment when the insured is an "executive officer" of such employer; or

  (3) The spouse, children, parent, brother or sister of that fellow "employee", "temporary worker", "leased employee", or independent contractor as a consequence of Paragraph (1) above.

This exclusion applies:

  (1) Whether an insured may be liable as an employer or in any other capacity;

  (2) To any obligation to share damages with or repay someone else who must pay damages because of the injury; or

  (3) To any liability assumed under any contract or agreement.

B. SECTION V – DEFINITIONS, subparagraph 19. is deleted and replaced with the following:

19. "Temporary Worker" means any person who is:

  (A) Furnished to you to substitute for a permanent "employee";

  (B) A short-term worker; or

  (C) Not an "employee" or "volunteer" worker

All other terms and conditions of this policy remain unchanged.

MUS 01 01 20007 0412

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

MESA UNDERWRITERS SPECIALTY
  INSURANCE COMPANY

Endorsement #

Named Insured:  ONE PARK PLACE TOWER CONDOMINIUM ASSOCIATION AND

Policy Number:  MP0015002001417                    Effective Date: 11/22/2013

(The above information is required only when this form is added after the policy is issued)

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

**Special Conditions - Subcontractors**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

The following condition is added to SECTION IV – COMMERCIAL GENERAL LIABILITY
CONDITIONS section of the policy:

SPECIAL CONDITIONS - SUBCONTRACTORS

You will obtain Certificates of Insurance with Limits of Insurance equal to or greater than those
provided by this Policy from all subcontractors or independent contractors prior to commencement of
any work performed.

Failure to comply with this Special Condition does not alter the coverage provided by this Policy.
However, should you fail to comply; a premium charge will be made.  The premium charge will be
computed by multiplying the "total cost" of all work sublet that fails to meet the above condition, by the
rate per $1,000 of payroll for the applicable classification of the work performed.

If the policy does not contain the applicable classification and rate, we will multiply our usual and
customary rate per $1,000 payroll for that classification, by the net modification factor, if any, applied
to the policy rates.

"Total cost" means the cost of all labor, materials, and equipment furnished, used or delivered for use
in the execution of the work, and all fees, bonuses or commissions paid.

All other terms and conditions of this policy remain unchanged.

MUS 01 01 20023 0412

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

MESA UNDERWRITERS SPECIALTY
INSURANCE COMPANY

Endorsement #

Named Insured: ONE PARK PLACE TOWER CONDOMINIUM ASSOCIATION AND

Policy Number: MP0015002001417                    Effective Date: 11/22/2013
    (The above information is required only when this form is added after the policy is issued)

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

**Hired and Non-Owned Auto Liability**

This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE FORM

**SCHEDULE**

| Coverage | Additional Premium |
|---|---|
| Non-Ownership Liability | $ |
| Hired Car Liability | $ |

(If no entry appears above, information required to complete this endorsement will be shown in the
Declarations as applicable to this endorsement.)

The insurance provided under COVERAGE A (Section I) applies to "bodily injury" or "property
damage" arising out of the maintenance or use of a "hired auto" or "non-owned auto" by you or your
employees in the course of your business. With respect to the insurance provided by this
endorsement:

1. Exclusions O  and P are deleted.  Exclusion G is modified by deleting the word "auto" in the first
   paragraph under COVERAGE A (Section I) of this coverage part.  Exclusion E is replaced by the
   following:
   a. "Bodily injury:"
      **(1)** To an employee of the insured arising out of and in the course of employment by the
           insured; or
      **(2)** To the spouse, child, parent, brother or sister of that employee as a consequence of
           **(1)** above.
      This exclusion applies:
      **(1)** Whether the insured may be liable as an employer or in any other capacity; and
      **(2)** To any obligation to share damages with or repay someone else who must pay
           damages because of injury.
      This exclusion does not apply to:
      **(1)** Liability assumed by the insured under an "insured contract;" or
      **(2)** "Bodily injury" arising out of and in the course of domestic employment by the insured
           unless benefits for such injury are in whole or in part either payable or required to be
           provided under any workers compensation law.
   b. "Property damage" to:
      **(1)** Property owned or being transported by, or rented or loaned to the insured; or
      **(2)** Property in the care, custody or control of the insured.

2. WHO IS AN INSURED (Section II) is replaced by the following:
   Each of the following is an insured under this insurance to the extent set forth below:
   a. You;
   b. Any other person using a "hired auto" with your permission;

MUS 01 01 20024 0412                                               Page 1 of 2

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

     (1) An "auto" you hire or borrow; or
     (2) An "auto" you don't own, hire or borrow in your business or personal affairs; or
     (3) An "auto" hired or rented by your "employee" on your behalf and at your direction.
    **c.** Any other person or organization, but only with respect to their liability because of acts or omissions or an insured under a. or b.

None of the following is an insured:

    **a.** Any person engaged in the business of his or her employer with respect to "bodily injury" to any co-employee of such person injured in the course of employment;

    **b.** Any partner or executive officer with respect to any "auto" owned by such partner or officer or a member of his or her household;

    **c.** Any person while employed in or otherwise engaged in duties in connection with an "auto business," other than an "auto business" you operate;

    **d.** The owner or lessee (of whom you are a sublessee) of a "hired auto" or the owner of a "non-owned auto" or any agent or employee of any such owner or lessee;

    **e.** Any person or organization with respect to the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations.

3. With respect to the operation of a "hired" or "non-owned" auto, the following additional conditions apply:

OTHER INSURANCE

    a. Except for any liability assumed under an "insured contract" the insurance provided by This Coverage Form is excess over any other collectible insurance.

    However, if your business is the selling, servicing, repairing, parking or storage of "autos", the insurance provided by this endorsement is primary when covered "bodily injury" or "property damage" arises out of the operation of a customer's "auto" by you or your "employee".

    b. When this Coverage Form or any other Coverage Form or policy covers on the same basis, whether excess or primary, we will pay only our share.  Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of all the Coverage Forms and policies covering on the same basis.

TWO OR MORE COVERAGE FORMS OR POLICIES ISSUED BY US

    If the Coverage Form and any other Coverage Form or policy issued to you by us or any company affiliated with us apply to the same "accident", the aggregate maximum Limit of Insurance under all Coverage Forms or policies shall not exceed the highest applicable Limit of Insurance under any one Coverage Form or policy.

The following additional definitions apply:

    "Auto business" means the business or occupation of selling, repairing, servicing, storing or parking "autos"

    "Hired auto" means any "auto" you lease, hire, or borrow.  This does not include any "auto" you lease, hire or borrow from any of your employees or members of their households, or from any partner or executive officer of yours.

    "Non-owned auto" means any "auto" you do not own, lease, hire or borrow which are used in connection with your business.  However, if you are a partnership a "non-owned auto" does not include any auto owned by any partner.

    All other terms and conditions of this policy remain unchanged.

MUS 01 01 20024 0412

MESA UNDERWRITERS SPECIALTY
INSURANCE COMPANY

Endorsement #

Named Insured: ONE PARK PLACE TOWER CONDOMINIUM ASSOCIATION AND

Policy Number: MP0015002001417                    Effective Date: 11/22/2013
(The above information is required only when this form is added after the policy is issued)

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

**Exclusion - Directors and Officers Liability**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

In consideration of the premium charged, it is understood and agreed that we will not pay damages for loss that results from a wrongful act based on: an error or omission; negligence; breach of duty; or misstatement or misleading statement by your directors and officers.  It is further understood and agreed that we have no duty to defend you against such allegations.

All other terms and conditions of this policy remain unchanged.

MUS 01 01 20027 0412

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

MESA UNDERWRITERS SPECIALTY
INSURANCE COMPANY

Endorsement #

Named Insured: ONE PARK PLACE TOWER CONDOMINIUM ASSOCIATION AND

Policy Number: MP0015002001417                    Effective Date: 11/22/2013

(The above information is required only when this form is added after the policy is issued)

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

**Coverage for Assault and Battery**

This endorsement modifies an exclusion under endorsement MUS 01 01 20003 0412,
Endorsement Additional Exclusions and Provisions Liability Insurance.


In consideration of the additional premium shown below, it is understood and agreed that the
Exclusion for Assault and Battery is DELETED from endorsement MUS 01 01 20003, Endorsement
Additional Exclusions and Provisions Liability Insurance.




Additional Premium ████

All other terms and conditions of this policy remain unchanged.

MUS 01 01 20041 0412

MESA UNDERWRITERS SPECIALTY
INSURANCE COMPANY

Endorsement #

Named Insured: ONE PARK PLACE TOWER CONDOMINIUM ASSOCIATION AND

Policy Number: MP0015002001417          Effective Date: 11/22/2013

(The above information is required only when this form is added after the policy is issued.)

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### Limited Coverage for Assault and Battery

This endorsement modifies an exclusion under endorsement MUS 01 01 20003 0412, Endorsement Additional Exclusion and Provisions Liability Insurance.

In consideration of the additional premium shown below, it is understood and agreed that this insurance applies to "bodily injury", "property damage" and "personal injury" arising from an assault or battery or out of any act or omission in connection with the prevention or suppression of such act, including the failure to warn, train, supervise, whether caused by or at the instigation or direction of the Insured, the Insured's employees, patrons or any other person, subject to the limits show on the general liability declaration page.

The Limit of Insurance for this coverage is: $ 100,000     each occurrence  and $ 100,000     aggregate for the policy. This aggregate limit is included in and not in addition to the policy General aggregate Limit.

Additional Premium $ ▮▮▮▮

All other terms and conditions of this policy remain unchanged.

MUS 01 01 20042 0412

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART

1. The insurance does not apply:

   **A.** Under any Liability Coverage, to "bodily injury" or "property damage":

   **(1)** With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

   **(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   **B.** Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   **C.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

   **(1)** The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

   **(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

   **(3)** The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

IL 00 21 05 04       © ISO Properties, Inc., 2001       **Page 1 of 2**    ☐

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

**2.** As used in this endorsement:

"Hazardous properties" includes radioactive, toxic or explosive properties;

"Nuclear material" means "source material", "Special nuclear material" or "by-product material";

"Source material", "special nuclear material," and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

(a) Any "nuclear reactor";

(b) Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

(c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"Property damage" includes all forms of radioactive contamination of property.

© ISO Properties, Inc., 2001 IL 00 21 05 04 ☐

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** – Definitions.

## SECTION I – COVERAGES

### COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

  **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

    **(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

    **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

  No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

  **b.** This insurance applies to "bodily injury" and "property damage" only if:

    **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

    **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

    **(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

  **c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

  **d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

    **(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

    **(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

    **(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

 © ISO Properties, Inc., 2003

Case 4:23-cv-00847-JAM   Document 1-1   Filed 11/17/23   Page 153 of 278

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**2. Exclusions**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

Case 4:23-cv-00847-JAM   Document 1-1   Filed 11/17/23   Page 154 of 278

**f. Pollution**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

**(i)** "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

**(ii)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

**(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

**(i)** Any insured; or

**(ii)** Any person or organization for whom you may be legally responsible; or

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

**(i)** "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

**(ii)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

**(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

**(2)** Any loss, cost or expense arising out of any:

  **(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

  **(b)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

  **(a)** Less than 26 feet long; and

  **(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

  **(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or

  **(b)** the operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

© ISO Properties, Inc., 2003      CG 00 01 12 04    ☐

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section III – Limits Of Insurance.

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of websites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a.**, **b.** and **c.** of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

Case 4:23-cv-00847-JAM   Document 1-1   Filed 11/17/23   Page 158 of 278

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-Related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

## COVERAGE C MEDICAL PAYMENTS

**1. Insuring Agreement**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(1)** The accident takes place in the "coverage territory" and during the policy period;

**(2)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(3)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

**f. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g. Coverage A Exclusions**

Excluded under Coverage **A**.

## SUPPLEMENTARY PAYMENTS – COVERAGES A AND B

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**a.** All expenses we incur.

**b.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**c.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**e.** All costs taxed against the insured in the "suit".

**f.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**g.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

**2.** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**a.** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**b.** This insurance applies to such liability assumed by the insured;

**c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**d.** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**f.** The indemnitee:

**(1)** Agrees in writing to:

**(a)** Cooperate with us in the investigation, settlement or defense of the "suit";

**(b)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

**(c)** Notify any other insurer whose coverage is available to the indemnitee; and

**(d)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

**(2)** Provides us with written authorization to:

**(a)** Obtain records and other information related to the "suit"; and

**(b)** Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

**a.** We have used up the applicable limit of insurance in the payment of judgments or settlements; or

**b.** The conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

**SECTION II – WHO IS AN INSURED**

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

**2.** Each of the following is also an insured:

**a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

**(1)** "Bodily injury" or "personal and advertising injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

**(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs **(1)(a)** or **(b)** above; or

**(d)** Arising out of his or her providing or failing to provide professional health care services.

**(2)** "Property damage" to property:

**(a)** Owned, occupied or used by,

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

**(1)** With respect to liability arising out of the maintenance or use of that property; and

**(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**b.** Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**c.** Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III – LIMITS OF INSURANCE**

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

**b. Excess Insurance**

This insurance is excess over:

**(1)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(a)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(b)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(c)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(d)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

**(2)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(1)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(2)** The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web-sites, only that part of a website that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means:

**a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in **a.** above; or

**c.** All other parts of the world if the injury or damage arises out of:

**(1)** Goods or products made or sold by you in the territory described in **a.** above;

**(2)** The activities of a person whose home is in the territory described in **a.** above, but is away for a short time on your business; or

**(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in **a.** above or in a settlement we agree to.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

**7.** "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

**a.** The repair, replacement, adjustment or removal of "your product" or "your work"; or

© ISO Properties, Inc., 2003

**b.** Your fulfilling the terms of the contract or agreement.

**9.** "Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

**10.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**11.** "Loading or unloading" means the handling of property:

**a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

**b.** While it is in or on an aircraft, watercraft or "auto"; or

**c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

**12.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

**d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

**(1)** Power cranes, shovels, loaders, diggers or drills; or

**(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

**(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

**(2)** Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**(1)** Equipment designed primarily for:

    **(a)** Snow removal;

    **(b)** Road maintenance, but not construction or resurfacing; or

    **(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

  **a.** False arrest, detention or imprisonment;

  **b.** Malicious prosecution;

  **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

  **d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

  **e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

  **f.** The use of another's advertising idea in your "advertisement"; or

  **g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.** "Products-completed operations hazard":

  **a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

    **(1)** Products that are still in your physical possession; or

    **(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

      **(a)** When all of the work called for in your contract has been completed.

      **(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

      **(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

    Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

  **b.** Does not include "bodily injury" or "property damage" arising out of:

    **(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

    **(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

    **(3)** Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

**17.** "Property damage" means:

  **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**19.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**20.** "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

**21.** "Your product":

**a.** Means:

**(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**(a)** You;

**(b)** Others trading under your name; or

**(c)** A person or organization whose business or assets you have acquired; and

**(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

**(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

**a.** Means:

**(1)** Work or operations performed by you or on your behalf; and

**(2)** Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

**(2)** The providing of or failure to provide warnings or instructions.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – INTERCOMPANY PRODUCTS SUITS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

This insurance does not apply to any claim for damages by any Named Insured against another Named Insured because of "bodily injury" or "property damage" arising out of "your products" and included within the "products-completed operations hazard."

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

POLICY NUMBER:MP0015002001417

**COMMERCIAL GENERAL LIABILITY**
**CG 21 44 07 98**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LIMITATION OF COVERAGE TO DESIGNATED PREMISES OR PROJECT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**Premises:**
 700 WEST 31ST STREET KANSAS CITY, MO 64111

**Project:**

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

This insurance applies only to "bodily injury", "property damage", "personal  and advertising injury" and medical expenses arising out of:

1. The ownership, maintenance or use of the premises shown in the Schedule and operations necessary or incidental to those premises; or
2. The project shown in the Schedule.

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage A – Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

**(1)** A person arising out of any:

   **(a)** Refusal to employ that person;

   **(b)** Termination of that person's employment; or

   **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a)**, **(b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

**(1)** A person arising out of any:

   **(a)** Refusal to employ that person;

   **(b)** Termination of that person's employment; or

   **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a)**, **(b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

Case 4:23-cv-00847-JAM   Document 1-1   Filed 11/17/23   Page 170 of 278

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# TOTAL POLLUTION EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion **f.** under Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

This insurance does not apply to:

**f. Pollution**

**(1)** "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

  **2. Exclusions**

  This insurance does not apply to:

  **Fungi Or Bacteria**

  **a.** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

  **b.** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

  This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

**B.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

  **2. Exclusions**

  This insurance does not apply to:

  **Fungi Or Bacteria**

  **a.** "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

  **b.** Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

**C.** The following definition is added to the **Definitions** Section:

  "Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

COMMERCIAL GENERAL LIABILITY
CG 21 71 06 08

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION OF OTHER ACTS OF TERRORISM COMMITTED OUTSIDE THE UNITED STATES; CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM**

"Any injury or damage" arising, directly or indirectly, out of an "other act of terrorism" that is committed outside of the United States (including its territories and possessions and Puerto Rico), but within the "coverage territory". However, this exclusion applies only when one or more of the following are attributed to such act:

**1.** The total of insured damage to all types of property exceeds $25,000,000 (valued in U.S. dollars). In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the terrorism and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

**2.** Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

**a.** Physical injury that involves a substantial risk of death; or

**b.** Protracted and obvious physical disfigurement; or

**c.** Protracted loss of or impairment of the function of a bodily member or organ; or

**3.** The terrorism involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

**4.** The terrorism is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

**5.** Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials.

With respect to this exclusion, Paragraphs **1.** and **2.** describe the thresholds used to measure the magnitude of an incident of an "other act of terrorism" and the circumstances in which the threshold will apply for the purpose of determining whether this exclusion will apply to that incident.

**B.** The following definitions are added:

**1.** For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Part to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part.

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

2. "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

a. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act;

b. The act resulted in damage:

(1) Within the United States (including its territories and possessions and Puerto Rico); or

Outside of the United States in the case of:

(a) An air carrier (as defined in Section 40102 of title 49, United States Code) or United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), regardless of where the loss occurs; or

(b) The premises of any United States mission; and

c. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

3. "Other act of terrorism" means a violent act or an act that is dangerous to human life, property or infrastructure that is committed by an individual or individuals and that appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion, and the act is not a "certified act of terrorism".

Multiple incidents of an "other act of terrorism" which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

C. In the event of an "other act of terrorism" that is not subject to this exclusion, coverage does not apply to any loss or damage that is otherwise excluded under this Coverage Part.

D. If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Insurance Act exceed $100 billion in a Program Year (January 1 through December 31) and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

 © Insurance Services Office, Inc., 2008 CG 21 71 06 08 □

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

POLICY NUMBER: MP0015002001417

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PRODUCTS/COMPLETED OPERATIONS HAZARD REDEFINED

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

**Description of Premises and Operations:**

700 WEST 31ST STREET KANSAS CITY, MO 64111
CONDOMINIUMS - 62003
SWIMMING POOL - 48925
CLUBHOUSE - PARKING

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

With respect to "bodily injury" or "property damage" arising out of "your products" manufactured, sold, handled or distributed:

1. On, from or in connection with the use of any premises described in the Schedule, or

2. In connection with the conduct of any operation described in the Schedule, when conducted by you or on your behalf,

Paragraph **a.** of the definition of "Products-completed operations hazard" in the DEFINITIONS Section is replaced by the following:

"Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" that arises out of "your products" if the "bodily injury" or "property damage" occurs after you have relinquished possession of those products.

    Copyright, Insurance Services Office, Inc., 1994       □

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

**IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
AT KANSAS CITY**

| | | |
|---|---|---|
| **ONE PARK PLACE TOWER CONDOMINIUM ASSOCIATION, INC., a Missouri not-for-profit corporation** | ) ) ) ) | |
| **Plaintiff,** | ) ) | **Case No. _____** |
| **vs.** | ) ) | **Division _____** |
| **ONE PARK PLACE INVESTORS, LLC, a foreign limited liability company** | ) ) ) | |
| Serve:  John McClelland 2345 Grand Blvd., Suite 1500 Kansas City, Missouri 64108 | ) ) ) ) | |
| **and** | ) ) | |
| **PARK PLACE KC, LLC a foreign limited liability company** | ) ) ) | |
| Serve:  John McClelland 2345 Grand Blvd., Suite 1500 Kansas City, Missouri 64108 | ) ) ) ) | |
| **and** | ) ) | |
| **RICHARD CAMPBELL 23332 Mill Creek Drive, Suite 155 Laguna Hills, California 92653** | ) ) ) ) | |
| **and** | ) ) | |
| **WILLIAM D. FOOTE 3 Civic Plaza, #240 Newport Beach, California 92660** | ) ) ) ) | |
| **and** | ) ) | |
| **J. ROWELL L. RECINTO 3322 Kenneth Drive Palo Alto, California 94202** | ) ) ) ) ) | |

**EXHIBIT 4**

**and**                                                )
                                                       )
**JEFFREY KACEREK**                                    )
**1202 Brazos Court**                                  )
**Allen, Texas 75042**                                 )
                                                       )
**and**                                                )
                                                       )
**CHRISTINE KEMPER**                                   )
**4550 Main Street, Suite 227**                        )
**Kansas City, Missouri 64111**                        )
                                                       )
**and**                                                )
                                                       )
**MARIA TERESA S. PALMA a/k/a TESS PALMA**             )
**209 Monaco Drive**                                   )
**Redwood City, California 94065**                     )
                                                       )
**and**                                                )
                                                       )
**DINNA G. BAYANGOS**                                  )
**221 Monaco Drive**                                   )
**Redwood City, California 94065**                     )
                                                       )
                    **Defendants.**                    )

### PLAINTIFF'S PETITION

**COMES NOW** Plaintiff One Park Place Tower Condominium Association, Inc. ("Association"), by and through undersigned counsel, and for its Petition states as follows:

1.      The Association is a Missouri not-for-profit corporation authorized by and operating pursuant to the Missouri Uniform Condominium Act, RSMo § 448.1-101, et seq. ("Condominium Act" or "Act").

2.      The Association is a condominium unit owners' association.  The Association has standing under the Condominium Act and common law to pursue claims on its own behalf, and on behalf of the unit owners.  *See* RSMo § 448.3-102.1.

3.      Plaintiff has satisfied and/or offered to perform all conditions precedent necessary to pursue each claim asserted herein, including invoking and attempting to pursue all potentially

2

applicable dispute resolution procedures. Alternatively, such conditions have been waived, would be futile, or cannot be asserted by the Defendants due to estoppel, prevention or other legal and equitable principles, including, but not limited to, the unconscionability prohibitions of RSMo § 448.1-112 which are aimed, in part, at preventing the insertion of stringent and unreasonable pre-conditions (roadblocks) in a declaration inhibiting unit owners and their representative Association from invoking the liberal protections afforded under the Condominium Act.

**THE CONDOMINIUM CONCEPT UNDER THE ACT**

4.     There are two components to the Condominium under the Act[1]—the residential "Units"[2] which are owned by "Unit Owners"[3] and the "Common Elements."

5.     Under the Act and the governing documents for the Condominium, the Common Elements are all parts of the Condominium that are not within a Unit and are shared among the Units, *e.g.*, streets, roofs, exterior walls, swimming pools. *See* RSMo § 448.1-103(4); Declaration of Condominium--One Park Place Tower, as amended ("Declaration"), ¶¶ 1.09, 2.10.

6.     "Limited Common Elements" include any part of the Common Elements reserved for the exclusive use of one or more but fewer than all of the Units, and include items such as exterior windows and door glass surfaces. Declaration, ¶¶ 1.19, 2.11.

7.     Common Elements cannot be sold, partitioned, conveyed, or subjected to a judicial sale. Instead, each Unit Owner has an undivided interest (usually a percentage based on the square footage of the Unit) in the Common Elements, as well as an interest in the use and

---

[1] RSMo § 448-1.103(7).
[2] RSMo §§ 448.1-103(29); 448-2-102.
[3] RSMo § 448.1-103(30).

3

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

enjoyment of the Common Elements. This interest "runs" with the Unit. *See* RSMo. §§ 448.2-107.1 and .5.; 448.3-112; Declaration ¶ 3.08(a).

8.    In addition to the Act, the governing documents for the Condominium are the Declaration and the Bylaws. *See* RSMo §§ 448.2-105; 448.2-103.3; 448.3-106.

9.    Along with the Unit Owners, the primary participants in the Condominium include the developer ("Declarant"), who builds and/or sells the Units to the public (Unit Owners) and controls all development rights[4] and the Condominium Association, whose members are the current Unit Owners. Membership in the Association is mandatory among Unit Owners. *See* RSMo §§ 448.1-103(3); 448.3-101; Declaration, ¶¶ 1,23, 3.03.

10.    All members of the Association have voting rights. *See* RSMo § 448.2-107.

11.    The Association is controlled by an Executive Board/Board of Directors/Board of Trustees, etc. ("Board"). The Board is empowered to "act in all instances on behalf of the [A]ssociation." RSMo § 448.3-103, Declaration, ¶ 1.05.

12.    Under the Act, Board members are initially appointed and controlled by the Declarant. This is because the Declarant owns most of the Units and, thus, controls the Association. This control and process of appointing Directors typically lasts until seventy-five percent (75%) of the Units are sold. *See* RSMo § 448.3-103; *see also* the Condominium Bylaws ("Bylaws"), Article 5.

13.    Because ownership of the Common Elements under the Act is vested in all of the current Unit Owners, the primary function of the Association is control over, regulation of, upkeep and maintenance of, and repairs to and replacement of the Common Elements. *See* RSMo § 448.3-102. This control is exclusive under the Act. *See* RSMo § 448.3-107.1.

---

[4] RSMo §§ 448.1-103(9) and (11). Declarants include the original developer, affiliates of the Declarant and successor Declarants who purchase or foreclose on the Condominium. *See* RSMo §§ 448.1-103(9); 448.3-104.

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

14.     Because the Association is under the control of the Board and the Association controls the Common Elements, the Board necessarily has substantial decision-making authority over (and the above-referenced corresponding duties of the Association toward) the Common Elements.  *See* RSMo § 448.3-103.1.

15.     Further, because the Declarant is in control of the Execute Board members for a substantial period of time, the Act imposes fiduciary duties on the Board members appointed by the Declarant.  *See* RSMo § 448.3-103.1.

## THE PARTIES

16.     The Defendants are former and current Declarants and Declarant-appointed and controlled Board members.

17.     Defendant One Park Place Investors, LLC ("OPP") is a foreign (Delaware) limited liability company in good standing under the laws of Missouri.  OPP was the original Declarant that executed and subsequently recorded the Declaration on or about February 2, 2007. It also sold units (and a corresponding percentage of ownership in the Common Elements) to some of the members of the Association.

18.     OPP can be served by delivering a summons and a copy of this Petition to its registered agent, John McClelland at the address in the caption.  This Court has jurisdiction over OPP in that it has and continues to transact business in Missouri, has entered into contracts to be performed in whole or in part in Missouri, owned real estate in Missouri and engaged in tortious conduct in Missouri causing injury in Missouri out of which the Plaintiff's claims arise.

19.     Defendant Park Place KC, LLC ("PPKC") is a foreign (Delaware) limited liability company in good standing under the laws of Missouri.  PPKC is an "affiliate" of OPP and the

5

successor Declarant. Like OPP, PPKC sold units and Common Elements to some of the members of the Association.

20.     PPKC can be served by delivering a summons and a copy of this Petition to its registered agent, John McClelland, at the address in the caption. This Court has jurisdiction over PPKC in that it has and continues to transact business in Missouri, has entered into contracts to be performed in whole or in part in Missouri, owned real estate in Missouri and engaged in tortious conduct in Missouri causing injury in Missouri out of which the Plaintiff's claims arise.

21.     Defendant William Foote is a California resident who can be served by delivering a summons and a copy of this Petition to him at the address in the caption. Mr. Foote was an agent of OPP and/or PPKC and was a Declarant-appointed Board member. He signed the original Declaration on behalf of OPP.

22.     Defendant J. Rowell Recinto is a California resident who can be served by delivering a summons and a copy of this Petition to him at the address in the caption. Mr. Recinto was an agent of OPP and/or PPKC and was a Declarant-appointed Board member.

23.     Defendant Jeffrey Kacerek is a Texas resident who can be served by delivering a summons and a copy of this Petition to him at the address in the caption. Mr. Kacerek was an agent of OPP and/or PPKC and was a Declarant-appointed Board member.

24.     Defendant Christine Kemper is a Missouri resident who can be served by delivering a summons and a copy of this Petition to her at the address in the caption. Ms. Kemper was an agent of OPP and/or PPKC and was a Declarant-appointed Board member.

25.     Defendant Maria Teresa Palma a/k/a Tess Palma is a California resident who can be served by delivering a summons and a copy of this Petition to her at the address in the

6

caption. Ms. Palma was an agent of OPP and/or PPKC and was a Declarant-appointed Board member.

26. Defendant Dinna Bayangos is a California resident who can be served by delivering a summons and a copy of this Petition to her at the address in the caption. Ms. Bayangos was an agent of OPP and/or PPKC and was a Declarant-appointed Board member.

27. Defendant Richard Campbell is a California resident who can be served by delivering a summons and a copy of this Petition to him at the address in the caption. Mr. Campbell was an agent of OPP and/or PPKC and was a Declarant-appointed Board member.

28. This Court has jurisdiction over Defendant Kemper because she resides in Missouri. This Court has jurisdiction over Board member Defendants Campbell, Foote, Recinto, Kacerek, Palma and Bayangos because they transacted business in Missouri, entered into contracts to be performed in whole or in part in Missouri, and engaged in tortious conduct in Missouri causing injury in Missouri out of which the Plaintiff's claims arise.

29. Venue is proper in this Court.

## ALLEGATIONS COMMON TO ALL COUNTS

30. On or about December 16, 2004, OPP registered to conduct business in Missouri.

31. In 2005, OPP purchased the land and an already existing building which was known as the BMA Tower for the purpose of converting the commercial structure into a residential condominium called One Park Place Tower Condominium. The BMA Tower was constructed between 1961 and 1963.

32. On or about November 28, 2006, an Amended and Restated Original Sales Certificate (sometimes referred to in the Act as a Public Offering Statement) was issued by OPP. Under Sections 448.4-102.1 and 448.4-102.3 of the Condominium Act, such a Certificate must

7

be provided by any Declarant or any other person selling condominium Units for their own benefit, which Certificate must contain numerous items of pertinent and accurate information, including defects or other "characteristics" in the Units or Common Elements substantially affecting the value of the same. The Certificate is to be provided prior to the conveyance of any new unit and not later than the date of any contract of sale. *See* RSMo § 448.4-108.

33.     A Declarant, person in the business of selling Units, and any preparer and/or provider of information for inclusion in the Certificate is liable under the Act for any false or misleading statement *or for the omission of material information in the Certificate of which they knew or should have known of.* *See, e.g.,* RSMo § 448.4-102.3.

34.     On or about February 2, 2007, OPP recorded the Declaration for the Condominium.

35.     On or about February 14, 2007, OPP created One Park Place Tower Condominium Association and placed the Association under the control of its appointed Board members. Under the Declaration (Article V) and the Bylaws (Article V), the Declarants represent they could and would control the Board during what is known as the "Declarant Control Period."

36.     On or about April 29, 2010, OPP transferred the Condominium to its "affiliate" and successor Declarant, PPKC, who assumed control over the Association and who continued to appoint and/or elect Declarant controlled Board members.

37.     Because PPKC is an "affiliate" of OPP and is owned by the same entity as the transferor Declarant, under Missouri's common law and Section 448.3-104 of the Condominium Act, OPP and PPKS are jointly and severally liable for the Declarant-related claims asserted herein.

38.     On or about September 22, 2010, an Amended and Restated Original Sales Certificate was issued by PPKC.

39.     Defendants Campbell, Foote, Recinto, Kacerek, Kemper, Palma and Bayangos (sometimes referred to herein as "Board members") were affiliated with and agents of the Declarants.  They were Declarant-appointed Board members and at all times relevant hereto were serving or intending to advance the interests of one or both of the Declarants and, thus, the Declarants are liable for their acts and omissions.  As well, the Defendant Board members had actual or constructive knowledge of the wrongs complained of herein and/or participated in or ratified said wrongs and, therefore, are personally liable.

40.     Declarants and the Defendant Board members controlled the Association and, thus, the Common Elements until April 2015—at the earliest.

41.     The Declarants had the duty at all times relevant hereto to construct, refurbish, maintain and repair the Common Elements and to turn the Common Elements over to the Unit-owner controlled Board and Association in good condition.  As well, when performing such work, they had the duty to exercise reasonable care in selecting contractors and in ensuring work was properly done and, if not, to pursue proper claims against those contractors providing inadequate work.

42.     Under the Act and the governing documents for the Condominium, including Article V of the Declaration and the Bylaws, the Board members had the duty to repair, maintain and replace the Common Elements when needed, to conduct preventative maintenance over major components of the Common Elements, and to ensure that work, when done, was adequately performed by competent contractors.  They also had the duty to establish and maintain adequate reserve funds for the maintenance, repair and replacement of the Common

9

Elements.[5]   The above-referenced Sales Certificates issued to Unit owners in connection with the sale of any Unit confirmed in Section 4 the aforementioned duties of the Board members.

43.     Pursuant to RSMo §§ 448.3-103 and 448.1-113, the Board member Defendants owed fiduciary duties and the duty of good faith to the Association, including the Unit owners.

44.     A major component of the exterior Common Elements are the setback roofs, part of which (the underside) consists of cantilevered soffits.  They are the topside, horizontal surface of what resembles a grid or ledge around each of the floors of the building.

45.     The setback roofs cover over 58,000 square feet, affect the structural integrity of the building and "contain" other major components of the Common Element—over 280 drains and a restraint system consisting of a thick cable onto which workers (including maintenance personnel and window cleaners) are to be able to latch to prevent and/or arrest their fall.

46.     The restraint system is not and never was code compliant which is not disclosed in the Sales Certificates.  It cannot, in its current state, be used to affect repairs to the setback roofs.

47.     The setback roofs are concrete decks overlaid with various layers of roof membrane.  The Declarants failed to properly repair or replace the roofs and over a period of years, the Defendant Board members neglected the same and otherwise engaged in a series of "stop gap" "repair and maintenance" measures aimed at creating cosmetic fixes so as to not alert Unit owners and purchasers to the need in the future to engage in the enormous remedial effort currently needed to resolve the defects in the roofs.

---

[5] By way of example, Section 5.04(e) of the original Declaration states the Board would prepare a component study of the major structural [setback roofs] and equipment components of the building and determine their useful life.  As part of this process the Board members were to determine and accumulate the amount of reserve funds necessary to correct or replace deficiencies in the major components.

10

48.     Plaintiff became alarmed over the condition of the setback roofs, safety restraint system and setback roof drains when it reviewed the investigation and a request for proposal performed and prepared by Wiss, Janey, Elstner Associates, Inc. ("WJE") in 2016.  It retained Thomas Rewerts, a professional engineer to analyze the composition and condition of the roofs, the history of their deterioration as well as the suitability of prior repair efforts undertaken by the Defendants.

49.     Mr. Rewerts found numerous defects and concluded numerous haphazard attempts had been made at cosmetic fixes.  Some of his substantial findings and conclusions include, *inter alia*, the following:

●     There are numerous layers of roofing placed over a span of years since the building was originally constructed and opened in 1963.

●     Removal of all existing layers of roofing membranes from the top to the structural concrete decks is necessary and can be accomplished using conventional mechanical and scraping equipment.

●     The roofing membrane system consists of three layers, which includes two layers of liquid-applied urethane members and a thin top coating of rubber-reinforced asphalt, believed to have been manufactured by Karnak.

●     The roofing membranes have failed in a number of different manners, including major debonding between the different layers and numerous modes of failure of [the top] asphalt [Karnak] coating (blistering, cracking, air bubbles, water bubbles, etc.)

●     However, the most prominent form of failure in the three layers of roofing membranes was cracking that reflects up through all three layers at the locations of cracks in the structural concrete deck below.  That cracking allows water to penetrate and cause localized and then more extensive failure of the membranes on either side of the cracks.

●     The concrete decks were showing failures, cracking, deterioration, and external moisture content in some areas.  The cracks are numerous and need to be repaired as does the deterioration which is localized toward the top of the decks. If not repaired, the cracks would continue to reflect up, cause cracking in any top surface and allow moisture to continue to permeate the deck and soffits.

11

●     Prior remedial efforts on the set back roofs were inadequate. For instance: (1) The heart of the problem—the cracking in the concrete deck-was never resolved; (2) the intermediate membrane was quite thin; (3) the additional remedial measure of using a thin Karnak coating on top of two failed urethane membrane systems should have only been considered to be a short-term or stopgap type remedial program; and (4) each remedial step taken by the Declarants and its Board Directors failed to properly account for and resolve the underlying cracks formed and forming in each preceding membrane.

50.     Mr. Rewerts' concerns confirm findings set forth in a previous report prepared by Roofing Solutions, Inc. ("RFI") which had been provided to the Defendants nearly a full year before the Board was turned over to the Unit owners.

51.     The RFI report was prompted by information received by the Defendants from management in April 2014 that setback roof ledges in disrepair are the most significant source for structural damage to the building in the form of water infiltration complicated by freeze thaw cycles.

52.     RFI concluded that prior repair efforts attempted by Defendants on the setback roofs were woefully inadequate and that prompt action was needed. Specifically, the Karnak application placed over previously existing urethane-based membrane coatings was not proper and would lead to further failures in the setback roof system.

53.     The RFI report to the Board warned that:

The misuse of Karnak resulted in the roof deck coatings being "in very poor condition," due in large part to delamination of the original coating from the concrete deck and severe cracking in the surface coat. RSI warned and recommended that: (1) simply performing another stopgap measure of applying an additional coating over the existing coatings would not suffice due to failure and delamination of the original coating from the deck; (2) the existing coatings had to be completely removed and replaced with a single-ply membrane system at a cost of nearly one million dollars ($1,000,000); and (3) failure to completely remove the existing roofing system will not resolve the cracking issues, and will lead to damage to the soffits and total deterioration of the concrete decking, because water will continue to penetrate cracks in the top layer and

12

permeate those components below the top layer "resulting is very costly remediation repairs."

54.     RFI recommended that the Defendants should remove the existing coatings down to the structural concrete decking and install a twenty-year single-ply membrane system at an estimated cost of $926,000.

55.     The RFI investigation and other information confirms that the damage to the setback roofs was exacerbated by Defendants' poor maintenance of the above-mentioned drains associated with the roofs.

56.     There are sixteen (16) drains on each level of setback roof.  The setback roof drains were ignored by the Declarants and their appointed Board members, as evidenced by, *inter alia*, the fact that some of the drains had thirty (30) to forty (40) inches of sediment backed up into them.  Roof debris, including parts of the roof membrane itself, was clogging the drains causing water to pond.  This, in turn, accelerated the deterioration of roof membranes that were already far beyond their useful life and, in some cases, led to water infiltration into the Units.

57.     In ascertaining the needs to correct defects in the setback roofs, Plaintiff discovered that the safety restraint system associated with each level of the setback roofs was essentially useless and could not be used by contractors desiring to perform work on the roofs. Insofar as the safety restraint system was not adequate or code compliant, normal maintenance activities such as window washing and window repairs could not be performed and bids to perform work on the setback roofs had to be increased.  In studying the issue further, Plaintiff learned the safety restraint system and roofs were not properly and timely inspected and a report prepared by Pro-Bel found that all 360 eyebolts for the system were inadequate to pass a standard load test.  Consequently, all eighteen (18) floors of the Condominium were tagged for prohibited use.

13

58.     The deficiencies in the roof membrane, structural concrete, setback roof drains, and the safety restraint system, the lack of annual inspection and certification records, the increased costs associated with typical maintenance tasks such as window washing and repair costs for the setback roofs due to those deficiencies were known or, alternatively, should have been known by the Defendants.

59.     The reality that the Defendants knew or should have known of the defects is evidenced by the fact that Sales Certificates (Public Offering Statements) reference some of the defects and, indeed, misrepresent what did and/or would occur to deal with the defects.

60.     The Amended and Restated Original Sales Certificate issued on November 28, 2006, under Exhibit I, Item 3, references Cantilevered Soffits (the underside/bottom of the setback roofs) and states: "Damaged sealant joints in the soffits *will be* repaired, and the plaster soffits *will be* repaired and painted." (Emphasis added).  This statement by the Declarant is an obvious recognition that the Defendants witnessed damage being caused to the underside of the setback roofs due to water intrusion flowing from the top membrane through the structural concrete.

61.     The September 22, 2010 Amended and Restated Original Sales Certificate refers specifically to Cantilevered Soffits in Exhibit N stating: "Damaged sealant joints in the soffits *were* repaired, and the plaster soffits *were* repaired and painted." (Emphasis added).

62.     In addition to information provided in the June 2014 RFI report and the 2006 and 2010 Sales Certificates, other instances of Defendants' actual/constructive knowledge of the problems in the Common Elements or their negligent failure to ascertain the problems include, but are not limited to, the following:

- The Declarants had performed work on the setback roofs on numerous occasions and their consultants were assessing the condition of the building.

- Annual inspections for code compliance and a proper investigation and repair of the roof membrane by a qualified engineer and contractor would have alerted the Declarants and their appointed Board members of the need to install a proper system, to maintain the drains and membrane, and to pay for the same before turning the Common Elements and control of the Board over to the Unit owners.

- In 2005, Synergy ENG presented a proposal to the Defendants warning them of the importance of a sufficient reserve fund and that prudence justified an in-depth evaluation of the condition of "the building exterior wall system, exposed portions of the buildings reinforced concrete superstructure" in order to identify "best maintenance practices or proactive measures, that *will minimize the need for costly deductions from your reserve fund*.' (Emphasis added).

- In 2006, an exterior abatement protocol was issued calling for the containment of asbestos in the setback roofs, as opposed to removal of it, by sealing the underside (soffit) openings. By the time this abatement process was initiated, the roof membranes and structural concrete were already in a poor condition due to recurring water intrusion.

-  According to the November 28, 2006 Sales Certificate, in 2006, a new window system was installed throughout the building, during which the inadequate status of the setback roofs had to have been noticed. During this same time period, according to the Certificate, due to the building's age, a new mechanical system was needed. Reserves for both the building and equipment repair/replacement were set at a paltry $78,000 but salaries for Declarant's personnel were established at a generous $576,009.00.

- In 2008, the Major Component Study, referenced in the 2007 Declaration was obtained and distributed to the Defendant Board members. *See* n. 5, *supra*.

- Action Item Reports prepared for the Defendant Board members contained a category dedicated to "Ledge Repair and Evaluation—membrane patching on some floors.

- In December 2012, an Action Item Report provided to the Board members and, thus, to the Declarants[6] noting the need for evaluation and recommendations on and the need to patch and perform repairs to the roof membranes.

---

[6]  *See supra* at ¶ 39 alleging the Declarants' liability for the acts and omissions of their appointed Board members.

- A January 2013 Action Item Report prepared for the benefit of the Board confirms under "Ledge Repair and Evaluation" item that "Engineer recommendations sent to Western Waterproofing for review and proposal.

- In July 2014, management was asked to respond to two separate reports of large sections of membrane coating delamination occurring where the roofs had been temporarily repaired during storm events. The Board acknowledged that the setback roof ledge requires further investigation.

- Unit 805 sustained substantial water damage due to roof drain failures.

63.     The representation in the September 22, 2010 Amended and Restated Original Sales Certificate that "[d]amaged sealant joints in the soffits *were* repaired, and the plaster soffits *were* repaired and painted" was a misrepresentation as evidenced by a substantial January 2011 Replacement Reserve Report, which was revised on March 23, 2011, and will be hereinafter referred to as the "Reserve Report." (Emphasis added).

64.     The Reserve Report corroborates the Defendants' neglect of the roofs, drains and safety restraint system and establishes clear notice to the Defendants in 2011 of the need for immediate action on these items.

65.     The Reserve Report evaluated most of the major components of the building and warned the Defendants that, among the major exterior components, the setback roof membranes had the least remaining useful life (5 years) and, with a price tag of $220,660, would be one of the most expensive items to fix.

66.     The Reserve Report iterated that the condition of the setback roofs had deteriorated to the point where annual inspections of the membrane must be conducted to prevent further damage to the concrete decks, confirming Thomas Rewerts' findings [*supra* at ¶¶ 49-51] that the cracking in the top layer of coating on the setback roofs was a symptom of the prolonged underlying concrete issues.

16

67.     The Reserve Report also recommended that $66,500 be budgeted for the setback roof drains.

68.     Notwithstanding having notice of the substantial defects in the setback roofs, setback roof drains, and a safety restraint system that is so inadequate that windows cannot even be cleaned, the Defendants failed to take proper measures to prevent more damage and failed to make adequate and timely repairs/replacement and, instead, actively promoted the Condominium (or allowed such promotion to occur) to the public as being "meticulously converted" with a "high quality of design and construction materials."

69.     After receiving control of the Board from the Defendants in April 2015, Plaintiff incurred substantial damages in investigating, developing a proper scope for remedying the aforementioned defects and began making repairs. These damages currently total at least $259,363.64 and could have been avoided or greatly diminished had the Defendants properly performed their duties.

70.     Further, after receiving the information from WJE [*supra* at ¶ 48], Mr. Rewerts [*supra* at ¶¶ 48-50], Pro-Bel [*supra* at ¶ 57], and other construction professionals and contractors who were consulted to engage in correction of the defects, Plaintiff has determined the estimated costs to repair the setback roofs are at least $2,644,239. Plaintiff has incurred other damages in the nature of property damage, including damage to the Common Elements and some Units, the loss of the use and enjoyment thereof and diminution in value to the Common Elements. All of the aforementioned damages could have been avoided or greatly reduced had the Defendants properly performed their duties.

17

## COUNT I—BREACH OF FIDUCIARY DUTIES UNDER THE CONDOMINIUM ACT AGAINST ALL DEFENDANTS

For Count I of its Petition against all Defendants, Plaintiff adopts and incorporates each and every foregoing averment as though fully stated herein and further states as follows:

71.     At all relevant times herein, the Defendant Board members Kemper, Campbell, Foote, Recinto, Kacerek, Palma and Bayangos were Declarant-appointed and controlled members of the Board for the Association and were acting for their own benefit and/or personally participated in the acts complained of herein.  These Board members were controlled by and acting under the general authority of the Declarant that appointed them.  As well, each Defendant Declarant benefitted from and ratified the acts and omissions of the Board members.  Therefore, the Declarants are liable for the breach of the fiduciary duties of the Defendant Board members.  *See Twin Chimneys Homeowners Association v. J.E. Jones Construction Co.,* 168 S.W.3d 488, 499-50 (Mo. Ct. App. 2005).

72.     The Declaration, Bylaws and Condominium Act provide that the Association must operate through, and the Board members are responsible for, the affairs of the Association.

73.     "[T]he [A]ssociation is responsible for maintenance, repair, and replacement of the [C]ommon [E]lements," and, thus, the Board members must ensure the Common Elements are properly maintained, repaired and replaced.  *See* RSMo § 448.3-107.1; *see also* Article V of the Declaration and Bylaws.

74.     The Act and Missouri case law recognize there is an inherent conflict of interest between the developer-Declarant and its appointees and the Unit owners because the Declarant and its Board members desire to keep costs low and quickly sell Units.  Conversely, the Unit owners want a quality living environment, exemplary amenities and Common Elements that are in a constant state of repair and free from defects.

18

75.     Section 448.3-103.1 of the Act states, in part, that because the individual Defendants were Declarant-appointed members of the Board of Directors they were, during the Declarant control period "required to exercise. . . the care required of fiduciaries of the unit owners."

76.     As fiduciaries and Board members, the individual Defendants and their principals, OPP and PPKC, were required to, *inter alia*: avoid a conflict of interest; operate the Association in good faith[7] and with utmost loyalty to the Plaintiff (which includes its member-Unit owners); to serve the interests of the Plaintiff over their own; avoid profiting or reducing losses at the expense of the Plaintiff; make full, frank and timely disclosures to the Plaintiff regarding the financial status of the Association and the Common Elements; reasonably protect the Plaintiff from loss or misinformation or from proceeding on false assumptions; pursue claims for and belonging to the Association and/or two or more Unit owners, including construction defect and warranty claims against contractors performing sub-standard work; properly budget for expenses and build and/or establish an adequate reserve fund to repair; replace and maintain the Common Elements; and actually repair, replace and maintain the Common Elements when necessary; provide accurate and timely Sales Certificates and/or ensure the same comply with the Act; make accurate and adequate inspections of the Common Elements; protect the Association and its members from unnecessary or exorbitant expenses, which includes ensuring the Common Elements are kept in good repair; and, equally important, to take all steps reasonably necessary to ensure the Common Elements are turned over to the Unit owner Association in a respectable and sufficient condition.

---

[7]  The Act imposes the duty of good faith upon all of the Defendant in performing any of their functions under the Act and the governing documents of the Condominium.  *See* RSMo § 448.1-113.

19

77.     All of the above-referenced fiduciary duties were breached by the Defendants as elaborated on above, including, but not limited to: the failure—indeed, the refusal—to properly and timely inspect the Common Elements and, more specifically, the setback roofs, roof drains and safety restraint system to the point of where some of these Common Elements, *e.g.*, the safety restraint system, were not even code compliant; the facilitation or allowance of inaccurate Sales Certificates to be issued which misrepresented that certain repairs would be and were undertaken and mistakenly informed the public and purchasers of the date when the Board was turned over to the Unit owners and, thus, was no longer controlled by individuals whose interests were aligned with the developer/sellers of the Units and not with the individuals actually planning on living in the Condominium;[8] the insertion or allowance of a provision in the Declaration that attempts to circumvent the liability and fiduciary duties of Board members;[9] the acceptance of the Common Elements and otherwise permitting the Declarants to attempt to turn defective Common Elements over to the Unit owner-controlled Association; the failure to timely and properly maintain, repair and replace the Common Elements, notwithstanding the abundance of information the Board received regarding the poor status of the Common Elements and the urgent need to maintain, correct and replace the same; the attempt (and/or allowing sellers to attempt) to limit warranties; the failure to properly select and supervise construction contractors and/or design professionals in regard to actual construction work performed on the Common Elements (setback roofs, roof drains and safety restraint system) and the failure to insist that the same correct their defective work or otherwise pursue claims against the same for their inadequate performance; the failure to adequately budget for and establish reserves for proper and timely replacement and/or repairs to the Common Elements while, at the same time,

---

[8] *See* September 22, 2010 Amended and Restated Original Sales Certificate, § 3.1.
[9] *See* Declaration, § 5.07.

ensuring substantial funds were available for "salaries" of personnel associated with the Condominium; the refusal or otherwise failure to disclose full information regarding the poor state of the Common Elements; the engagement in haphazard cosmetic fixes to the Common Elements, especially those visible to purchasers and the Unit owners; the publishing of misleading information about the quality and state of the Condominium and its Common Elements; the refusal or otherwise failure to devote sufficient time and attention to the affairs of the Condominium while knowing (in most of the Defendant Board member's cases) that the member lived hundreds of miles from the Condominium, *e.g.*, California, and then subsequently refusing to exercise good faith in responding to Plaintiff's repeated requests to engage in alternative dispute resolution procedures or otherwise engage in a resolution process that would provide for a timely and economical solution to the parties' disputes; the attempt to prematurely turn over the defective Condominium and inadequately funded reserve account to the Unit owner's Association; the intentional ignorance of the substantial warnings consistently given to the Defendants regarding the plight of the setback roofs, drains and safety restraint system, particularly those given in the 2011 Reserve Report and corroborated by RSI's 2014 report; and the failure to prevent the Common Elements from becoming so defective so as to cause damage to several Units.

78.    As a direct and proximate result of the foregoing acts and omissions, Plaintiff has incurred and will incur damages in amounts explained above.  The acts and omissions caused damage to property, including the Common Elements, the loss of the use and enjoyment thereof and diminution in value and have led to and will continue to lead to significant repair and/or replacement costs as described above.

79.    Insofar as the various breaches of fiduciary duties violate the Act, Plaintiff is entitled to attorney's fees under the Act.

80.    Defendants' conduct and omissions were deliberately or consciously indifferent to rights of others and/or were otherwise malicious, wanton, willful, and sufficiently reckless, thereby entitling Plaintiff to punitive damages under the Act.

81.    Further, with respect to the Declarants' (OPP and PPKC) tort liability, under Section 448.3-111 of the Condominium Act, Plaintiff, as a Unit-owner-elected Association, is not liable for Defendants' negligence or other torts in connection with any part of the Condominium which Defendants had the duty to maintain during the period of time when the Declarant controlled the Association and/or the Condominium.  Therefore, any attempt by the Declarants, and thus, by the Defendant Board member agents of the Declarants to seek indemnity would not only be contra-intuitive but prohibited by the Act.[10]

82.    Pursuant to Section 448.3-111, Defendants are responsible for all damages and losses resulting from their acts and omissions as described above to the extent such damages and losses are not covered by insurance.

83.    Further, under Section 448.3-111, Defendants are liable for all costs and litigation expenses incurred by Plaintiff, including attorney's fees.  Any statute of limitations applicable to tort claims is tolled until the period of Declarant control over the Association ends.  *Ibid.*

WHEREFORE, for Count I of its Petition, Plaintiff requests judgment against the Defendants jointly and severally in an amount that will reasonably compensate the Plaintiff for its losses, which will exceed $75,000.00, for prejudgment interest, for punitive damages in a sum

---

[10] In addition to common sense, Missouri case law and the unconscionability provisions of the Act mandate that the fiduciary responsibility provisions of the Act cannot be circumvented (eviscerated) by inserting indemnity provisions into a declaration.  A board member cannot, by indemnity provisions, force the association to return the very damages the Act allows the association to recover from the board member.

22

that is just and reasonable and will have a deterrent effect, for its costs, expenses and attorney's fees incurred herein, and for such further relief as the Court deems just and equitable.

<div align="center">

**COUNT II—NEGLIGENCE**
**AGAINST DECLARANTS OPP AND PPKC**

</div>

For Count II of its Petition against Defendants OPP and PPKC, Plaintiff adopts and incorporates each and every foregoing averment as though fully stated herein and further states as follows:

84.    The Declarants OPP and PPKC had the duty to turn the Common Elements over to the Unit owner-controlled Association and its members, including the setback roofs, setback roof drains and safety restraint system in a good and sufficient condition. *See Chesus v. Watts,* 967 S.W.2d 97, 109-10 (Mo. Ct. App. 1998). This did not occur and the duty was breached.

85.    As well, in causing improvements, maintenance and renovations to occur on the Condominium, the Declarants had a duty to exercise reasonable care.

86.    The Declarants failed to properly renovate the setback roofs, maintain the setback roof drains and comply with the applicable standard of care (including code requirements) in providing a safety restraint system.

87.    The inadequate repairs performed on the soffits—an integral part of the setback roofs—and actual repairs to the membrane (likely undertaken to protect the underlying concrete deck from further deterioration) were stopgap at best and, because they were improperly performed, actually expedited the opportunity for moisture penetration to and through the concrete decks into the soffits.

88.    The Defendants' acts and omissions, including substandard work, failure to properly select remediation contractors and/or to properly supervise and inspect the construction directly and proximately caused damage to the Plaintiff as explained above, including damage to

<div align="center">23</div>

property, including the Common Elements, the loss of the use and enjoyment thereof and diminution in value and have led to and will continue to lead to significant repair and/or replacement costs as described above.

WHEREFORE, for Count II of its Petition, Plaintiff requests judgment against the Defendants OPP and PPKC jointly and severally in an amount that will reasonably compensate the Plaintiff for its losses, which will exceed $75,000.00, for prejudgment interest, for its costs, expenses and attorney's fees incurred herein, and for such further relief as the Court deems just and equitable.

<div style="text-align:center">

**COUNT III—BREACH OF IMPLIED WARRANTIES**
**UNDER THE CONDOMINIUM ACT AND COMMON LAW**
**AGAINST DECLARANTS OPP AND PPKC**

</div>

For Count III of its Petition against Defendants OPP and PPKC, Plaintiff adopts and incorporates each and every foregoing averment as though fully stated herein and further states as follows:

89.     Pursuant to Section 448.4-114 of the Condominium Act, the developer-Declarants OPP and PPKC, in their roles as Declarants and/or sellers of real estate for their own accounts, impliedly warranted that the Units, accompanying Common Elements and all "improvements" (which includes all work performed on the Common Elements), would be suitable for ordinary use, free from defective materials, constructed in accordance with applicable law, sound engineering and construction standards and in a workmanlike manner.

90.     "For purposes of [Section 448.4-114] improvements made or contracted for by an affiliate of a declarant are made or contracted for by the declarant."  RSMo § 448.4-114.5.  Thus, OPP is liable for all inadequate, negligent, or improper work performed at the request of, or under contract with, PPKC or its agents.

<div style="text-align:center">24</div>

91.     The implied warranties under the Act extend to original and subsequent purchasers of the Units and Common Elements.

92.     OPP and/or PPKC improperly attempted to limit the statute of limitations and the scope of their warranty liability to the Plaintiff for defects in the Condominium by inserting language into various documents such as the 2006 Amended and Restated Original Sales Certificate.  Such conduct does not comply with the Act and is otherwise unconscionable both procedurally and substantively under RSMo § 448.1-112, the Missouri Merchandising Practices Act and common law.

93.     Furthermore, insofar as residential units are involved, the implied warranties cannot be disclaimed under the Condominium Act. Such conduct violated Defendants' duty of good faith under Section 448.1-113 of the Act inasmuch as Defendants knew and/or should have known of the construction defects and failed to comply with their duties to protect and maintain the Condominium, its assets and its reserves.  Further, any such limited warranty, if enforced, would cause the warranty to fail in its essential purpose.

94.     Defendants breached the implied warranties in that there are substantial construction defects and other shortcomings in the Condominium as described above, which have necessitated and will continue to cause substantial expenses to be incurred to remedy the defects in the setback roofs, setback roof drains and safety restraint system.

95.     Undoubtedly, the implied warranties afforded under the Act were violated.  The safety restraint system appears to never have been code compliant nor in par with industry standards.  The stopgap efforts at renovating and/or repairing the roof ledges were equally woefully inadequate.

96.     Compliance with the implied warranty of suitability mandated by the Act is, at a minimum, measured by community standards, generally reflected in local housing and property maintenance codes." *Chiodini v. Fox,* 207 S.W.3d 174, 176 (Mo. Ct. App. 2006).

97.     Indeed, Section 448.4-114.2(2) of the Act requires compliance with building codes and sound engineering standards.  A roofing system that requires over $2.5 million to make it function properly is not suitable nor fit for ordinary purposes.

98.     Moreover, Missouri common law recognizes that, where, as here, a developer undertakes to perform remedial or repair work on the property of others—such as the work undertaken by the Defendants to resolve the defects in the roof ledge soffits and membranes (which work naturally also embraces conducting a professional analysis of what work would be needed to resolve the deficiencies)—there is an implied warranty of workmanlike performance attaching to such repair attempts.  The minimal and negligent efforts of Defendants to address the soffits and membranes breached the implied warranty of workmanlike performance.

99.     Defendants received sufficient notice that should have prompted them to remedy the defects and conditions resulting from the breach of implied warranties.  Further, despite knowledge of the defects and of the need to correct the same, Defendants refused and failed to remedy the problems.  Defendants' violation of the Act and conduct in refusing to comply with their obligations is willful and wanton and thereby entitles Plaintiff to punitive damages under the Condominium Act.  *See* RSMo. § 448.4-117.

100.    Plaintiff has been damaged as a direct and proximate result of Defendants breach of warranties as explained in detail above.

101.    Defendants' violation of the warranty provisions of the Condominium Act entitles Plaintiff to attorney's fees.

WHEREFORE, for Count III of its Petition, Plaintiff requests judgment against the Defendants OPP and PPKC jointly and severally in an amount that will reasonably compensate the Plaintiff for its losses, which will exceed $75,000.00, for prejudgment interest, for punitive damages in a sum that is just and reasonable and will have a deterrent effect for prejudgment interest, for its costs, expenses and attorney's fees incurred herein, and for such further relief as the Court deems just and equitable.

<div align="center">

**COUNT IV—BREACH OF EXPERESS WARRANTY**
**AGAINST DECLARANTS OPP AND PPKC**

</div>

For Count IV of its Petition against Defendants OPP and PPKC, Plaintiff adopts and incorporates each and every foregoing averment as though fully stated herein and further states as follows:

102. Sections 448.4-113(1) and (2) of the Act state that express warranties are created by any description of the characteristic of the Unit or Common Elements or any affirmation of fact or promise made in regard to the same or use of the same.

103. No "magic" or technical words or phrases are required to create an express warranty under the Act. *See* RSMo § 448.4-113.2.

104. The Amended and Restated Original Sales Certificates referenced, *supra*, contain warranties that the Common Elements were in stable condition and that certain repairs would be, and in fact actually were, conducted to the soffits.

105. The Certificates and Article 5 of the Declaration represent that major studies would be conducted on all major components of the Condominium, that preventative maintenance would occur and that reserves to fund needed repairs would be arranged. Obviously, none of these promises were adequately carried out. As well, as noted above,

<div align="center">27</div>

promotional literature warranted the Condominium as being "meticulously converted" with a "high quality of design and construction materials."

106.     The express warranties were breached; and, consequently, Plaintiff has been damaged as a direct and proximate result of Defendants' breach of warranties as explained in detail above.

WHEREFORE, for Count IV of its Petition, Plaintiff requests judgment against the Defendants OPP and PPKC jointly and severally in an amount that will reasonably compensate the Plaintiff for its losses, which will exceed $75,000.00, for prejudgment interest, its costs, expenses and attorney's fees incurred herein, and for such further relief as the Court deems just and equitable.

### COUNT V—MISSOURI MERCHANDISING PRACTICES ACT AGAINST ALL DEFENDANTS

For Count V of its Petition against all Defendants, Plaintiff adopts and incorporates each and every foregoing averment as though fully stated herein and further states as follows:

107.     The goods and services at issue in this lawsuit and provided, transferred, and/or sold or promised to be provided, transferred and/or sold by the Defendants were for personal, family and/or household use.

108.     The Missouri Merchandising Practices Act ("MMPA") is construed broadly to reach any deception or unfair practice, including concealment of facts or information.

109.     The MMPA applies to conduct occurring both before and after any consumer transaction and, thus, applies not only to Defendants' pre-sale and Unit-selling activities but also to post-transfer and sale actions, including their transfer and turnover of the Common Elements and the Units to the Unit owners' Association in its defective condition and state of disrepair. Major components of the Common Elements were in a defective state, notwithstanding the fact

28

that promotional literature and documents generated and approved by the Defendants represented otherwise.

110.    The MMPA applies to repairs undertaken and/or promised to be undertaken by the Declarants and its Board members and to funding and preventative maintenance expressly/impliedly promised but never performed.  Defendants' failure, refusal and, in some cases such as the roof ledges, repeated inadequate and cosmetic repairs undertaken to prevent revelation of the true extent of the damage to the ledges also violate the MMPA.

111.    A person can be liable under the MMPA for any deception, unfair practice, or omission of any material fact in connection with the sale or advertisement in trade or commerce.

112.    Defendants knew that water was infiltrating the setback roof concrete structure and damaging the soffits through the inadequate membranes and promised to repair the same and even purported these promised soffit repairs were performed.  This was not true as water continues to migrate into the concrete.  Time after time the Board and its Declarants were notified of the roof drains plugging, sometimes with roof membrane, and were told of substantial damage occurring to Units.  The issue of the setback roofs was so acute that an action item was established calling for the Board to monitor the roof ledge and when the problem began to get too noticeable, they would patch the membrane and hope for the best.  Each time work occurred on the setback roofs, the drain defects and safety restraint system problems were staring them in the face and nothing was done.  Each repair attempt was inadequate, did little to resolve and ultimately only served to cause further damage.  Each negligent fix of the problem violated the Act.  The most distressing element is that while assessments were collected to pay salaries, no funds were set aside or otherwise allocated for the catastrophe currently confronting the Plaintiff.

113.    The Sales Certificates, advertising materials and governing documents for the Condominium represent that the Condominium was well constructed and would be well maintained, that budgets and reserves would be well planned and appropriately administered, and that the Common Elements would be monitored and protected from major harm and could and would be fixed when problems developed. None of these promises were fulfilled.

114.    Defendants' acts and omissions referenced above, coupled with the failures elaborated on in Counts I and II, constitute multiple violations of RSMo § 407.020 and directly and proximately resulted in the damages referenced above.

115.    Plaintiff has and will continue to incur attorney's fees for which Defendants are liable under Section 407.025 of the MMPA.

116.    The acts and omissions referenced above by the Defendants were so intentional, wanton, willful, malicious, outrageous, reckless, deliberately and/or consciously indifferent so as to entitle Plaintiff to punitive damages against the Defendants.

WHEREFORE, for Count V of its Petition, Plaintiff requests judgment against the Defendants jointly and severally in an amount that will reasonably compensate the Plaintiff for its losses, which will exceed $75,000.00, for prejudgment interest, for punitive damages in a sum that is just and reasonable and will have a deterrent effect, for its costs, expenses and attorney's fees incurred herein, and for such further relief as the Court deems just and equitable.

## COUNT VI—NEGLIGENT MISREPRESENTATION INCLUDING CONCEALMENT AGAINST ALL DEFENDANTS

For Count VI of its Petition against all Defendants, Plaintiff adopts and incorporates each and every foregoing averment as though fully stated herein and further states as follows:

117.    Defendant Declarants had the duty to exercise reasonable care in providing information in their role as Declarants.

118.    As well, the Defendant Board members—as part of their fiduciary duties and in their role as Board members—had the duty to make full and frank disclosures in Board meetings, in minutes of those meetings, in providing information for inclusion in Original Sales Certificates or literature promoting the Condominium, and whenever else it was appropriate or required in order for those to whom their fiduciary duties are owed (the Association and its members ) to make informed decisions about their assessments, whether the Bylaws or the Declaration should be amended to allow better protections to the Unit owners or otherwise appropriately protecting their interests in the Common Elements.

119.    Further, the Original Sales Certificates referenced throughout this Petition serve as a statutory basis for numerous claims against the Defendants and against any person selling Units for their own benefit or as a part of their business.

120.    Upon information and belief, information was provided by the Defendant Board members, officers of the Board and those retained or acting for the Board in preparing, approving and distributing the Sales Certificates.

121.    Any Declarant or other person in the business of selling real estate (the Units and the accompanying Common Elements) *and those providing information or assisting in preparation of the same* must provide such Sales Certificates and provide proper Certificates.  *See* RSMo § 448.4-102.

122.    Under Section 448.1-103(8) of the Act, the Condominium constitutes a "Conversion Building," which is defined as *any* "building that at any time before creation of the condominium was occupied wholly or partially by persons other than the purchasers."

123.    Section 448.4-106.1 of the Act explicitly provides, the original sale certificate of a condominium containing any conversion building *shall* contain, in addition that normally required, a statement of all work done, including the nature thereof on all interior walls, ceilings, the roof,

31

structural members, gutters and downspouts and all related fixtures. This would include, in this case, all work done on the setback roofs, drains and safety restraint system. However, in this case, no such information was included in the Sales Certificates.

124.     Disclosures under Section 448.4-106.2 include all notices of uncured violations of building code or other municipal regulations. Again, no information was provided by the Defendants about the failure of the safety restraint system to comply with code provisions.

125.     Under Section 448.4-103 of the Act, the Sales Certificates must contain all relevant information regarding features and characteristics affecting the Condominium, including whether reserve budgets have been established for important items and, if so, what the budget is. In this case, however, the Sales Certificates falsely depicted that work was going to be accomplished on the soffits and that the problem was satisfactorily resolved.

126.     Paragraph 27 of the 2006 Sales Certificate states that Declarant has performed major repairs or replacements to the building, thereby lending a sense of false security to those interested in buying into the Condominium.

127.     The Sales Certificates failed to properly disclose all of the stopgap work performed on the Common Elements and other work performed to remedy damage caused to Units by the failing membranes and the drains being plugged and otherwise not properly operating. The silence on these issues would lead an unsuspecting consumer and member of the Association to conclude the problems did not exist.

128.     The sales and promotional materials also misled those reviewing the same into believing the Condominium unencumbered with the need for substantial work.

32

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

129. The materials were false and misleading and/or negligently or recklessly represented significant facts and failed to make adequate disclosures about what was done and what needed to be done to bring the Common Elements into the proper state of repair.

130. Negligent misrepresentation can arise from affirmative misrepresentations or from passive nondisclosures.

131. Defendants OPP and PPKC, because of their positions and roles as Declarants and sellers of Units, and the Defendant Board members—having fiduciary duties, as well as because of their superior knowledge, the information involved was supplied or omitted in the course of Defendants' business, and because the Plaintiff and its Unit owner members belonged to a class of listeners to whom Defendants meant to make or refrain from making the communications—had a duty—which they breached—to exercise reasonable care in making statements and to make full disclosures to the Plaintiff regarding the aforementioned circumstances, omissions and facts.

132. Disclosures such as the non-compliant status of the safety restraint system, information and shortcomings in the Common Elements and in previously performed attempts at repairs established in the RFI and Rewerts' reports, the Reserve Report and Board budgets disclosing and warning about the substantial need to fix items and current lack of funds to do so and the fact that the roof ledge membranes were disintegrating, plugging up drains and causing damage to Units, should have been made because Defendants either had knowledge of or should have known of the material facts and because of their superior knowledge and concomitant position of trust and confidence. *See Wengert v. Thomas L. Meyer, Inc.,* 152 S.W.3d 379, 382 (Mo. Ct. App. 2004).

133. Defendants had the duty and failed in their duty "to exercise care or competence in obtaining or communicating this information." *Frame v. Boatmen's bank of Concord Village,* 782 S.W.2d 117, 121 (Mo. Ct. App. 1989).

134. Further, before Units were sold, before any applicable warranties were about to expire, and particularly before the Condominium and the defective Common Elements were turned over to the Plaintiff, Defendants breached one or more of the following duties because of their non-disclosures:

- The duty to disclose matters known by the Defendants that the Plaintiff [including the member Unit owners] was entitled to know because of a fiduciary or other similar relation of trust existing between the parties [*e.g.*, that the useful life of the roof ledges was about to expire and that no funds had been aside to deal with this reality].

- The duty to disclose matters known to the Defendants to be necessary to prevent ambiguous or half-true statements of fact from being misleading.

- The duty to disclose subsequently acquired and/or discovered information that Defendants knew made untrue or misleading previous statements or representations that, when made by the Defendants, were true or believed to be true.

- And, the duty to correct and/or disclose the falsity of any representations Defendants contend were not made with the expectation that they would not be acted upon, once they became aware that the Plaintiff was about to act in reliance on them in a transaction with the Defendants.

*Kesselring v. St. Louis Group, Inc.,* 74 S.W.3d 809, 813-14 (Mo. Ct. App. 2002).

135. Plaintiff justifiably relied on the information provided, and in otherwise proceeding with the course of conduct undertaken by the Plaintiff and was damaged thereby as explained above.

WHEREFORE, for Count VI of its Petition, Plaintiff requests judgment against the Defendants jointly and severally in an amount that will reasonably compensate the Plaintiff for its losses, which will exceed $75,000.00, for prejudgment interest, for its costs, expenses and attorney's fees incurred herein, and for such further relief as the Court deems just and equitable.

## COUNT VII—VIOLATION OF THE CONDOMINIUM ACT
### AGAINST ALL DEFENDANTS

For Count VII of its Petition against all Defendants, Plaintiff adopts and incorporates each and every foregoing averment as though fully stated herein and further states as follows:

34

136.    At all times relevant herein, the Board members were acting for their own benefit and for the benefit of the Declarants who appointed them as Board members.

137.    Section 448.4-117 of the Act provides for direct actions under the Act. Attorney's fees are available and punitive damages are authorized for willful, wanton, and/or malicious failures to comply with the Act.

138.    The Defendants violated the Act, as more fully explained above, in that they violated fiduciary duties; failed to provide proper Sales Certificates, inserted and/or allowed unconscionable provisions to be inserted in the Declaration and/or Sales Certificates such as limitations of liability and warranty limits that have failed and will continue to fail in their essential purposes and otherwise do not comply with the Act; engaged in substantive and procedurally unconscionable acts; failed and continue to fail to act in good faith; failed to comply with duties such as establishing reserves,; failed and refused to repair, replace and maintain the Common Elements, prepare adequate budgets and engage in preventative maintenance; failed to budget properly and failed to manage the fiscal affairs of the Condominium.  As well, there was an overall consistent failure to devote the proper time, attention and resources to indispensable affairs of the Condominium by the Board that was entrusted to protect the affairs and the property of the Plaintiff.

139.    As a direct and proximate result of the Defendants' failures and misconduct resulting in violations of the Act, Plaintiff was damaged as explained above.  Defendants' acts and omissions were willful, reckless, wanton, malicious and sufficiently indifferent to the rights of the Plaintiff so as to justify punitive damages and attorney's fees.

WHEREFORE, for Count VII of its Petition, Plaintiff requests judgment against the Defendants jointly and severally in an amount that will reasonably compensate the Plaintiff for

its losses, which will exceed $75,000.00, for prejudgment interest, for punitive damages in a sum that is just and reasonable and will have a deterrent effect, for its costs, expenses and attorney's fees incurred herein, and for such further relief as the Court deems just and equitable.

Respectfully submitted,

**LONG & ROBINSON, LLC**

By: */s/ Burke D. Robinson*
    Scott C. Long       MO#42900
    Burke D. Robinson   MO#52953
    1800 Baltimore Ave, Ste. 500
    Kansas City, MO 64108
    (816) 541-2100 Telephone
    (816) 541-2111 Facsimile
    slong@longrobinson.com
    brobinson@longrobinson.com
**ATTORNEY FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I do hereby certify that a true and accurate copy of the above and foregoing was electronically filed using the Court's electronic filing system, this 24th day of January, 2019, and a copy served on all parties registered to receive electronic notifications from the Court.

*/s/ Burke D. Robinson*
Attorney for Plaintiff

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

February 19, 2019

MESA Specialty Insurance Group
P.O. Box 4030
Scottsdale, AZ 85261-4030

Montpelier US Insurance Company
P.O. Box 4030
Scottsdale, AZ 85261-4030

**Re:** **Policy No.:** **MP 0015002000671**
**Policy No.:** **MP 0015002000980**
**Policy No.:** **MP 0015002001417**
**Policy No.:** **MP 0015002001821**
**Any other MUSIC Policy issued to the insureds identified herein**
*One Park Place Tower Condominium Association, Inc. v. One Park Place Investors, LLC; Park Place KC, LLC; Richard Campbell; William D. Foote; J. Rowell L. Recinto; Jeffrey Kacarek; Christine Kemper; Maria Teresa S. Palma; Dinna G. Bayangos*
**Circuit Court of Jackson County, Missouri, Case No. 1916-CV02546**

Dear Insurer:

Christine Kemper (Kemper), Maria Teresa S. Palma (Palma), and Dinna G. Bayangos (Bayangos), on our own behalves and on behalf of One Park Place Investors, LLC (OPPI), and Park Place KC, LLC (PPKC), submit this claim for coverage and defense pursuant to the terms of the above numbered policies for the claims made and damages alleged in *One Park Place Tower Condominium Association, Inc. (Condominium Association) v. OPPI, et al.*, Case No. 1916-CV02546, Jackson County, Missouri. A copy of the Petition in Case No. 1916-CV02546 is enclosed.

It appears that Policy Nos. MP 0015002000671, MP 0015002000980, and MP 0015002001417 cover PPKC, Kemper, Palma, and Bayangos, while Policy No. MP 0015002001821 covers only the individuals.

All of the Policies provide Commercial General Liability Coverage on an occurrence basis.

Kemper, Palma, and Bayangos, were not officers or directors of PPKC (End. Mus. 0101200270417). They were officers of the Condominium Association and qualify as insureds in their individual capacities as officers (Policy, Sec. II, 1, d). It is not the Condominium Association, itself, seeking coverage or defense in this request.

**EXHIBIT 5**

The Condominium Association contractually assumed the liability of its Board Members as the By-Laws of the Condominium Association provide for indemnity of its members. (Policy, Supplemental Payments, 2; Amended and Restated By-laws, pertinent parts attached). Kemper, Palma, and Bayangos qualify for coverage and defense due to these terms.

OPPI is the sole member of PPKC and thereby qualifies as an insured under the Policy(s).

The Condominium Association, brings the lawsuit on its own behalf, but also "on behalf of the unit owners," citing R.S.Mo. 408.3-102 (Petition, ¶'s 2, 7, 13, 76, 118). That statute, subsection (4) provides, in relevant part, that the association may ". . . institute . . . on behalf of itself or two or more unit owners on matters effecting the condominium."

The Condominium Association is a corporation. It is not a unit owner. The expenses for administration, maintenance, and repair of the common elements of the condominium must be paid by the unit owners (R.S.Mo. 448.080). The Condominium Association receives monetary proceeds not on its own behalf, but as trustee for the unit owners [R.S.Mo. 448.190 (1)]. The common elements and the common expenses of the condominium are not allocated to the Condominium Association. They are allocated to each unit [R.S.Mo. 448.2-107(1)].

Consequently, the claims in the Petition are made by *both* the Condominium Association and the unit holders. The unit holders are not insureds under the Policy. The unit holders do not qualify as an "organization" or a "subsidiary" as those terms are defined in the Policy(s) (Sec. IV, H). The Petition, by Missouri law and its own contents is brought "by, for the benefit of and at the behest of" the unit owners.

The fiduciary duties alleged to reside in the Condominium Association Board Members, e.g., Kemper, Palma, and Bayangos, and which were allegedly breached are owed to the unit owners.[1] By Missouri law, only the unit owners are owed a fiduciary duty and, thus, only unit owners can sustain damages for any breach of a fiduciary duty (*see* footnote 1).

Plaintiff's allegations of duty, breach, and resultant damages span over a decade. For defendants OPPI and PPKC, they begin in 2005 when OPPI purchased the premises (Petition, ¶ 31) and continue to present. For defendant PPKC, they begin when the transfer to PPKC took place on April 29, 2010 (Petition, ¶ 36) and continue to present (Petition generally, and ¶78). Plaintiffs allege that OPPI and PPKC are jointly and severally liable for their claims (Petition, ¶ 37), exposing PPKC to liability coincident with OPPI (back to the original purchase in 2005).

Plaintiff's allegations of duty, breach, resultant damages against Board Members Kemper, Palma, and Bayangos begin with the formation of the Condominium Association on February 14, 2007 (Petition, ¶ 35). With respect to duty and breach, the allegations continue until "at the earliest" April 2015 (Petition, ¶ 40) and damages continuing to the present (Petition generally and ¶ 78).

Despite the allegations in the Petition, Kemper was a Board Member from 2010 -2016, Palma and Bayangos from 2010-2015.

---

[1] In paragraph 43 of the Petition, plaintiffs allege that these fiduciary duties are owed to both the condominium association and the unit owners. That allegation is false. The duties are owed only to the unit owners. R.S.Mo. 488.3-103 provides in relevant part, ". . . if appointed by the Declarant, the care required of fiduciaries of the unit owners, . . ."

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

Plaintiff's allegations of duty, breach and resulting damages against Board Members Kemper, Palma, and Bayangos are imputable to OPPI and PPKC because plaintiffs contend that these Board Members were agents of OPPI and PPKC (Petition, ¶'s 39, 71). Consequently, allegations against these Board Members are also allegations against OPPI and PPKC.

Generally, the Petition seeks damages against insureds Kemper, Palma, and Bayangos based upon allegations of Breach of Fiduciary Duties (Count I), Breach of Express Warranty (Count IV), Violations of the Missouri Merchandising Practices Act with Respect to the Sale of Units (Count V), Negligent Misrepresentation Including Concealment (Count VI), and Violation of the Condominium Act (Count VII).

Against OPPI and PPKC, the Petition seeks damages based upon allegations of Breach of Fiduciary Duties (Count I), Negligence (Count II), Breach of Implied Warranties (Count III), Breach of Express Warranty (Count IV), Violation of Missouri Merchandising Practices Act with Respect to the Sale of Units (Count V), Negligent Misrepresentation Including Concealment (Count IV), and Violation of the Condominium Act (Count VII).

Specifically, the Petition seeks compensatory monetary damages, attorney's fees, costs and expenses, pre-judgment interest, and punitive damages for a variety of alleged acts and omissions that can be categorized as follows:

1. Misrepresentations in unit owner Sales Certificates (Petition, ¶'s 46, 59, 63, 76, 77, 92, 113, 120, 127-130, 132, 138).

2. Misrepresentations to unit owners in publications other than Sales Certificates (Petition, ¶'s 68, 76, 77, 92, 109, 118, 134, 138).

3. Warranty representations, misrepresentations, and/or warranty limitations (Petition, ¶'s 92-95, 104, 105, 112 and many of the paragraphs cited above).

4. Failure to inspect, maintain, repair, or replace common elements, i.e., the setback roofs, membranes, and safety restraint system; to select proper contractors, to inspect their work; and to pursue claims against them (Petition, ¶'s 41, 42, 47, 49, 57, 76, 77, 86, 88, 94, 112, 138).

5. Failure to clean out water drains (Petition, ¶'s 48, 55, 56, 62, 70, 112, 132).

6. Failure to set proper budget or maintain budgetary reserves (Petition, ¶'s 62, 76, 77, 113, 132, 138).

7. Failure to clean unit owner windows (Petition, ¶'s 57, 58).

8. Failure to devote time and resources to the position of Board Member to the Condominium Association and manage its fiscal affairs (Petition, ¶ 138).

9. Failure to pay adequate salaries (Petition, ¶'s 76, 77).

The damages are alleged to have been sustained by the unit owners. As indicated earlier, the Petition is brought on behalf of the unit owners. However, additionally, specific unit holder damages are alleged in

terms of unit water infiltration into certain units due to clogged drains (Petition, ¶'s 56, 62, 70, 112, 132); unwashed windows (Petition, ¶'s 57, 58); and the misrepresentation and warranty claims cited above.

The specific actual damages resulting from the alleged acts include both property damage and non-property damage. The damages run the gamut from (a) property damage to individual units resulting from water infiltration (Petition, ¶'s 56, 62 last bullet point, 70, 112, 132); (b) property damage to the common elements (Petition, ¶'s 55, 56, 70, 78, 112, 113, 138); (c) unit owner's monetary losses resulting from their purchase of units and reliance upon Sales Certificates' representations or misrepresentations in published material other than Sales Certificates (Paragraphs (1)-(3), above); (d) whatever monetary losses the unit owners may have incurred on account of the managerial allegations embodied in their claims regarding the setting of budgets and budgetary reserves, devoting time and resources to the position of Board Member, and failing to pay adequate salaries (Paragraphs (6), (8), and (9), above); and (e) loss of enjoyment resulting from dirty windows (Petition, ¶'s 57, 58).

We have been asked to accept service of the Petition on behalf of defendants OPPI, PPKC, Kemper, Palma, and Bayangos. To avoid a potential default if service was obtained and not conveyed for response, we have agreed to accept service. We will, through counsel, protect the interests of OPPI, PPKC, and ourselves in this litigation while awaiting your response.

If you have any questions or would like additional information, please let us know.

Very truly yours,

Christine Kemper,

Maria Teresa S. Palma

Dinna G. Bayangos

PPKC

OPPI

Encl. Petition
        By-Law Indemnity Provisions

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

# AMENDED AND RESTATED

## BYLAWS OF

## ONE PARK PLACE TOWER CONDOMINIUM ASSOCIATION
### A Missouri not-for-profit corporation

## DATED NOVEMBER 8, 2010

### ARTICLE I. OFFICES

1.1    <u>Name</u>.  The name of the corporation is "One Park Place Tower Condominium Association."  It is incorporated under the laws of the State of Missouri as a not-for-profit corporation.  The corporation is the Condominium Association referenced in the Declaration (as defined below).

1.2    <u>Applicability</u>.  These Bylaws ("Bylaws") shall relate to the property commonly known as One Park Place Tower, a condominium located in Kansas City, Jackson County, Missouri, more particularly described in a Declaration of Condominium as referenced below.

1.3    <u>Location</u>.  The principal office of the corporation shall be located at 700 West 31st St., Kansas City, Missouri, in Jackson County, Missouri.  Meetings of members and directors may be held at such places as may be designated by the Board of Directors from time to time.

### ARTICLE II. DEFINITIONS

All capitalized terms used herein shall have the meaning as set forth in the Declaration unless otherwise defined in these Bylaws and as follows:

"***Declaration***" shall mean, collectively, (i) DECLARATION OF CONDOMINIUM – ONE PARK PLACE TOWER CONDOMINIUM, recorded January 18, 2007, as Document No. 2007E0015155, recorded in the Office of the Jackson County, Missouri, Department of Records ("Recorder's Office"), as amended and supplemented from time to time and any additional declarations as may be recorded from time to time with the Recorder's Office which relate to the condominium commonly known as is "One Park Place Condominium."

### ARTICLE III. MEMBERSHIP

3.1    <u>Membership Generally</u>.  Except for the Declarant as provided in the Declaration, membership in the Association shall be limited to persons or entities that are the Owners of the fee interest in any Unit which is now or hereafter within the jurisdiction of the Association.  Persons or entities who hold an interest merely as security for the performance of an obligation shall not be Members.  Membership shall be appurtenant to and may not be separated from Ownership of a Unit.

3.2    <u>Suspension of Membership</u>.  During any period in which an assessment against a Unit remains unpaid and delinquent, the voting rights of the Owner(s) of such Unit may be

the minutes of a meeting, such signing shall constitute the presence of such Director at that meeting for the purpose of determining a quorum.

5.13 <u>Manner of Acting</u>: Each Director shall be entitled to one (1) vote, and the act of a majority of the Directors present at a meeting at which a quorum is present shall constitute the act of the Board unless the act of a greater number is required by these Bylaws, the Declaration or the Act.

5.14 <u>Board Action Without Meeting</u>: Any action required by law to be taken at a meeting of the Board or any action that may be taken at a meeting of the Board, may be taken without a meeting if a consent in writing, setting forth the action so taken, is signed by all Directors.

5.15 <u>Presiding Officer</u>: The presiding officer at meetings of the Board shall be the President. In his absence the Directors that are present shall designate one of their number to preside.

5.16 <u>Compensation of Directors Restricted</u>: Directors shall receive no compensation for their services, but may be paid for out-of-pocket expenses incurred in the performances of their duties as Directors.

5.17 <u>Powers and Duties of Board</u>: All of the powers and duties of the Association shall be exercised by the Board, including those existing under common law, applicable statutes, the Act, the Declaration, the Articles of Incorporation and these Bylaws, as any thereof may from time to time be amended. Such powers and duties shall be exercised in accordance with the provisions of applicable law, the Declaration, and Bylaws, and shall include, but not be limited to, the following:

(a) To prepare and provide to Members annually a report containing at least the following:

(i) A statement of any capital expenditures in excess of two (2%) percent of the current budget or Five Thousand ($5,000.00) Dollars, whichever is greater, anticipated by the Association during the current year.

(ii) A statement of the status and amount of any reserve or replacement fund and any portion of the fund designated for any specified project by the Board.

(iii) A statement of the financial condition of the Association for the last fiscal year.

(iv) A statement of the status of any pending suits or judgments to which the Association is a party.

(v) A statement of the insurance coverage provided by the Association.

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

(l)     To acquire, hold, encumber, and convey in its own name any right, title, or interest to real or personal property; provided, that Common Elements may be conveyed or subjected to a security interest only pursuant to Section 448.3-112 of the Act.

(m)     To grant easements, leases, licenses, and concessions through or over the Common Elements.

(n)     To make reasonable accommodations in the rules, regulations and declarations adopted by the Association or any other restrictions applicable to the Condominium if such accommodations are required by law to afford a disabled person equal opportunity to use and enjoy the Condominium.

(o)     To impose and receive any payments, fees, or charges for the use, rental, or operation of the Common Elements, other than Limited Common Elements, and for services provided to Owners.

(p)     To impose charges for late payment of Assessments and, after notice and an opportunity to be heard, levy reasonable fines for violations of the Declaration, Bylaws, or Rules and Regulations of the Association.

(q)     The Board shall have the right, power and privilege to suspend the voting rights of an Owner or Owners for the period during which an assessment against its Unit remains unpaid and delinquent. The Board shall also have the right to suspend the voting rights of every Owner of a Unit for a period not to exceed thirty (30) days for each violation of the Declaration or infraction of the Rules and Regulations of the Association committed by such Owners, their respective guests, servants, family members, or invitees; provided that any suspension of voting rights (except for failure to pay Assessments) shall be made only after written notice and the opportunity for a hearing are provided in accordance with these Bylaws. Further, no such suspension shall apply to any vote for which the Act specifies a minimum percentage necessary to establish a quorum or take a specific action where the presence or vote of any such suspended Member is required to meet said minimum percentage.

(r)     To provide for the indemnification of its officers and Board members and to maintain directors and officers' liability insurance.

(s)     To assign its rights to future income, including the right to receive Common Expense Assessments, but only to the extent expressly provided in the Declaration.

(t)     To adopt and amend these Bylaws and the Rules and Regulations governing the use of the Unit, Building, Common Elements and the improvements and facilities located thereon.

(u)     To exercise any other powers conferred by the Declaration, in the Articles or Bylaws, or necessary and proper for the administration of the Association.

6.8     Compensation of Officers Restricted: No Officer of the Association shall receive compensation for his services in such capacity, but may be reimbursed for out-of-pocket expenses incurred in performing his duties.

6.9     Additional Officers: The Board may from time to time create additional officers and designate their powers and duties by resolution and elect such other officers at their discretion when they find it to be required or desirable to manage the affairs of the Association. Such additional officers need not be Directors, but must be an Owner or a natural person appointed to represent an Owner if the Owner is not a natural person.

## ARTICLE VII. DIRECTORS' AND OFFICERS' INDEMNITY

The Association shall indemnify such persons, for such expenses and liabilities, in such manner, under such circumstances, and to such extent, as permitted by Section 448.3-102(13) of the Missouri Statutes, as now enacted or hereafter amended.

## ARTICLE VIII. FISCAL MANAGEMENT

8.1     Depository: The depository of the moneys of the Association shall be such bank or banks as from time to time shall be designated by the Board.  Withdrawal of moneys from such depository shall be only by checks signed by any two (2) officers of the Association, or any other persons as may from time to time be authorized by the Board.

8.2     Records of Association:

(a)     The books, accounts, and records of the Association, including but not limited to the Declaration, these Bylaws, other rules and regulations, and the most recent annual audited financial statement, if such is prepared, shall be made available to any Member of the Association and to any lender, holder or insurer of a security interest in a Unit or any Common Element.

(b)     The Declaration, these Bylaws, other rules and regulations, and the most recent annual audited financial statement, if such is prepared, shall be made available to prospective purchasers.

(c)     "Available" under this section means being available for inspection, during normal business hours at the principal offices of the Association or its management company, within a reasonable period of time after receipt of a written request.

8.3     Fidelity Bonds: Fidelity bonds shall be required by the Board for each Director, officer, employee, manager or other person handling or responsible for handling funds for the Association.  The amount of such bond shall be determined by the Board, but shall be not less than one and one-half (1 and 1/2) times the total of the estimated annual operating expenses and reserves of the Association.  Such bonds shall contain an appropriate endorsement to cover

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

## IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
## AT KANSAS CITY

| | | |
|---|---|---|
| ONE PARK PLACE TOWER CONDOMINIUM ASSOCIATION, INC., a Missouri not-for-profit corporation | ) ) ) | |
| | ) | |
| Plaintiff, | ) | Case No. _____ |
| | ) | |
| vs. | ) | Division _____ |
| | ) | |
| ONE PARK PLACE INVESTORS, LLC, a foreign limited liability company | ) ) | |
| | ) | |
| Serve: John McClelland 2345 Grand Blvd., Suite 1500 Kansas City, Missouri 64108 | ) ) ) | |
| | ) | |
| and | ) | |
| | ) | |
| PARK PLACE KC, LLC a foreign limited liability company | ) ) | |
| | ) | |
| Serve: John McClelland 2345 Grand Blvd., Suite 1500 Kansas City, Missouri 64108 | ) ) ) | |
| | ) | |
| and | ) | |
| | ) | |
| RICHARD CAMPBELL 23332 Mill Creek Drive, Suite 155 Laguna Hills, California 92653 | ) ) ) | |
| | ) | |
| and | ) | |
| | ) | |
| WILLIAM D. FOOTE 3 Civic Plaza, #240 Newport Beach, California 92660 | ) ) ) | |
| | ) | |
| and | ) | |
| | ) | |
| J. ROWELL L. RECINTO 3322 Kenneth Drive Palo Alto, California 94202 | ) ) ) | |
| | ) | |
| | ) | |

|                                                     |     |
| --------------------------------------------------- | --- |
| **and**                                             | )   |
|                                                     | )   |
| **JEFFREY KACEREK**                                 | )   |
| **1202 Brazos Court**                               | )   |
| **Allen, Texas 75042**                              | )   |
|                                                     | )   |
| **and**                                             | )   |
|                                                     | )   |
| **CHRISTINE KEMPER**                                | )   |
| **4550 Main Street, Suite 227**                     | )   |
| **Kansas City, Missouri 64111**                     | )   |
|                                                     | )   |
| **and**                                             | )   |
|                                                     | )   |
| **MARIA TERESA S. PALMA a/k/a TESS PALMA**          | )   |
| **209 Monaco Drive**                                | )   |
| **Redwood City, California 94065**                  | )   |
|                                                     | )   |
| **and**                                             | )   |
|                                                     | )   |
| **DINNA G. BAYANGOS**                               | )   |
| **221 Monaco Drive**                                | )   |
| **Redwood City, California 94065**                  | )   |
|                                                     | )   |
| **Defendants.**                                     | )   |

## **PLAINTIFF'S PETITION**

**COMES NOW** Plaintiff One Park Place Tower Condominium Association, Inc.
("Association"), by and through undersigned counsel, and for its Petition states as follows:

1.      The Association is a Missouri not-for-profit corporation authorized by and
operating pursuant to the Missouri Uniform Condominium Act, RSMo § 448.1-101, et seq.
("Condominium Act" or "Act").

2.      The Association is a condominium unit owners' association. The Association has
standing under the Condominium Act and common law to pursue claims on its own behalf, and
on behalf of the unit owners. *See* RSMo § 448.3-102.1.

3.      Plaintiff has satisfied and/or offered to perform all conditions precedent necessary
to pursue each claim asserted herein, including invoking and attempting to pursue all potentially

applicable dispute resolution procedures. Alternatively, such conditions have been waived, would be futile, or cannot be asserted by the Defendants due to estoppel, prevention or other legal and equitable principles, including, but not limited to, the unconscionability prohibitions of RSMo § 448.1-112 which are aimed, in part, at preventing the insertion of stringent and unreasonable pre-conditions (roadblocks) in a declaration inhibiting unit owners and their representative Association from invoking the liberal protections afforded under the Condominium Act.

## THE CONDOMINIUM CONCEPT UNDER THE ACT

4.      There are two components to the Condominium under the Act[1]—the residential "Units"[2] which are owned by "Unit Owners"[3] and the "Common Elements."

5.      Under the Act and the governing documents for the Condominium, the Common Elements are all parts of the Condominium that are not within a Unit and are shared among the Units, *e.g.*, streets, roofs, exterior walls, swimming pools. *See* RSMo § 448.1-103(4); Declaration of Condominium--One Park Place Tower, as amended ("Declaration"), ¶¶ 1.09, 2.10.

6.      "Limited Common Elements" include any part of the Common Elements reserved for the exclusive use of one or more but fewer than all of the Units, and include items such as exterior windows and door glass surfaces. Declaration, ¶¶ 1.19, 2.11.

7.      Common Elements cannot be sold, partitioned, conveyed, or subjected to a judicial sale. Instead, each Unit Owner has an undivided interest (usually a percentage based on the square footage of the Unit) in the Common Elements, as well as an interest in the use and

---

[1]  RSMo § 448-1.103(7).
[2]  RSMo §§ 448.1-103(29); 448-2-102.
[3]  RSMo § 448.1-103(30).

3

enjoyment of the Common Elements. This interest "runs" with the Unit. *See* RSMo. §§ 448.2-107.1 and .5.; 448.3-112; Declaration ¶ 3.08(a).

8.      In addition to the Act, the governing documents for the Condominium are the Declaration and the Bylaws. *See* RSMo §§ 448.2-105; 448.2-103.3; 448.3-106.

9.      Along with the Unit Owners, the primary participants in the Condominium include the developer ("Declarant"), who builds and/or sells the Units to the public (Unit Owners) and controls all development rights[4] and the Condominium Association, whose members are the current Unit Owners. Membership in the Association is mandatory among Unit Owners. *See* RSMo §§ 448.1-103(3); 448.3-101; Declaration, ¶¶ 1,23, 3.03.

10.     All members of the Association have voting rights. *See* RSMo § 448.2-107.

11.     The Association is controlled by an Executive Board/Board of Directors/Board of Trustees, etc. ("Board"). The Board is empowered to "act in all instances on behalf of the [A]ssociation." RSMo § 448.3-103, Declaration, ¶ 1.05.

12.     Under the Act, Board members are initially appointed and controlled by the Declarant. This is because the Declarant owns most of the Units and, thus, controls the Association. This control and process of appointing Directors typically lasts until seventy-five percent (75%) of the Units are sold. *See* RSMo § 448.3-103; *see also* the Condominium Bylaws ("Bylaws"), Article 5.

13.     Because ownership of the Common Elements under the Act is vested in all of the current Unit Owners, the primary function of the Association is control over, regulation of, upkeep and maintenance of, and repairs to and replacement of the Common Elements. *See* RSMo § 448.3-102. This control is exclusive under the Act. *See* RSMo § 448.3-107.1.

---

[4] RSMo §§ 448.1-103(9) and (11). Declarants include the original developer, affiliates of the Declarant and successor Declarants who purchase or foreclose on the Condominium. *See* RSMo §§ 448.1-103(9); 448.3-104.

14.     Because the Association is under the control of the Board and the Association controls the Common Elements, the Board necessarily has substantial decision-making authority over (and the above-referenced corresponding duties of the Association toward) the Common Elements.  *See* RSMo § 448.3-103.1.

15.     Further, because the Declarant is in control of the Execute Board members for a substantial period of time, the Act imposes fiduciary duties on the Board members appointed by the Declarant.  *See* RSMo § 448.3-103.1.

## THE PARTIES

16.     The Defendants are former and current Declarants and Declarant-appointed and controlled Board members.

17.     Defendant One Park Place Investors, LLC ("OPP") is a foreign (Delaware) limited liability company in good standing under the laws of Missouri.  OPP was the original Declarant that executed and subsequently recorded the Declaration on or about February 2, 2007. It also sold units (and a corresponding percentage of ownership in the Common Elements) to some of the members of the Association.

18.     OPP can be served by delivering a summons and a copy of this Petition to its registered agent, John McClelland at the address in the caption.  This Court has jurisdiction over OPP in that it has and continues to transact business in Missouri, has entered into contracts to be performed in whole or in part in Missouri, owned real estate in Missouri and engaged in tortious conduct in Missouri causing injury in Missouri out of which the Plaintiff's claims arise.

19.     Defendant Park Place KC, LLC ("PPKC") is a foreign (Delaware) limited liability company in good standing under the laws of Missouri.  PPKC is an "affiliate" of OPP and the

5

successor Declarant. Like OPP, PPKC sold units and Common Elements to some of the members of the Association.

20.    PPKC can be served by delivering a summons and a copy of this Petition to its registered agent, John McClelland, at the address in the caption. This Court has jurisdiction over PPKC in that it has and continues to transact business in Missouri, has entered into contracts to be performed in whole or in part in Missouri, owned real estate in Missouri and engaged in tortious conduct in Missouri causing injury in Missouri out of which the Plaintiff's claims arise.

21.    Defendant William Foote is a California resident who can be served by delivering a summons and a copy of this Petition to him at the address in the caption. Mr. Foote was an agent of OPP and/or PPKC and was a Declarant-appointed Board member. He signed the original Declaration on behalf of OPP.

22.    Defendant J. Rowell Recinto is a California resident who can be served by delivering a summons and a copy of this Petition to him at the address in the caption. Mr. Recinto was an agent of OPP and/or PPKC and was a Declarant-appointed Board member.

23.    Defendant Jeffrey Kacerek is a Texas resident who can be served by delivering a summons and a copy of this Petition to him at the address in the caption. Mr. Kacerek was an agent of OPP and/or PPKC and was a Declarant-appointed Board member.

24.    Defendant Christine Kemper is a Missouri resident who can be served by delivering a summons and a copy of this Petition to her at the address in the caption. Ms. Kemper was an agent of OPP and/or PPKC and was a Declarant-appointed Board member.

25.    Defendant Maria Teresa Palma a/k/a Tess Palma is a California resident who can be served by delivering a summons and a copy of this Petition to her at the address in the

caption.  Ms. Palma was an agent of OPP and/or PPKC and was a Declarant-appointed Board member.

26.     Defendant Dinna Bayangos is a California resident who can be served by delivering a summons and a copy of this Petition to her at the address in the caption.  Ms. Bayangos was an agent of OPP and/or PPKC and was a Declarant-appointed Board member.

27.     Defendant Richard Campbell is a California resident who can be served by delivering a summons and a copy of this Petition to him at the address in the caption.  Mr. Campbell was an agent of OPP and/or PPKC and was a Declarant-appointed Board member.

28.     This Court has jurisdiction over Defendant Kemper because she resides in Missouri.  This Court has jurisdiction over Board member Defendants Campbell, Foote, Recinto, Kacerek, Palma and Bayangos because they transacted business in Missouri, entered into contracts to be performed in whole or in part in Missouri, and engaged in tortious conduct in Missouri causing injury in Missouri out of which the Plaintiff's claims arise.

29.     Venue is proper in this Court.

**ALLEGATIONS COMMON TO ALL COUNTS**

30.     On or about December 16, 2004, OPP registered to conduct business in Missouri.

31.     In 2005, OPP purchased the land and an already existing building which was known as the BMA Tower for the purpose of converting the commercial structure into a residential condominium called One Park Place Tower Condominium.  The BMA Tower was constructed between 1961 and 1963.

32.     On or about November 28, 2006, an Amended and Restated Original Sales Certificate (sometimes referred to in the Act as a Public Offering Statement) was issued by OPP. Under Sections 448.4-102.1 and 448.4-102.3 of the Condominium Act, such a Certificate must

be provided by any Declarant or any other person selling condominium Units for their own benefit, which Certificate must contain numerous items of pertinent and accurate information, including defects or other "characteristics" in the Units or Common Elements substantially affecting the value of the same. The Certificate is to be provided prior to the conveyance of any new unit and not later than the date of any contract of sale. *See* RSMo § 448.4-108.

33.     A Declarant, person in the business of selling Units, and any preparer and/or provider of information for inclusion in the Certificate is liable under the Act for any false or misleading statement *or for the omission of material information in the Certificate of which they knew or should have known of. See, e.g.,* RSMo § 448.4-102.3.

34.     On or about February 2, 2007, OPP recorded the Declaration for the Condominium.

35.     On or about February 14, 2007, OPP created One Park Place Tower Condominium Association and placed the Association under the control of its appointed Board members. Under the Declaration (Article V) and the Bylaws (Article V), the Declarants represent they could and would control the Board during what is known as the "Declarant Control Period."

36.     On or about April 29, 2010, OPP transferred the Condominium to its "affiliate" and successor Declarant, PPKC, who assumed control over the Association and who continued to appoint and/or elect Declarant controlled Board members.

37.     Because PPKC is an "affiliate" of OPP and is owned by the same entity as the transferor Declarant, under Missouri's common law and Section 448.3-104 of the Condominium Act, OPP and PPKS are jointly and severally liable for the Declarant-related claims asserted herein.

38.     On or about September 22, 2010, an Amended and Restated Original Sales Certificate was issued by PPKC.

39.     Defendants Campbell, Foote, Recinto, Kacerek, Kemper, Palma and Bayangos (sometimes referred to herein as "Board members") were affiliated with and agents of the Declarants.  They were Declarant-appointed Board members and at all times relevant hereto were serving or intending to advance the interests of one or both of the Declarants and, thus, the Declarants are liable for their acts and omissions.  As well, the Defendant Board members had actual or constructive knowledge of the wrongs complained of herein and/or participated in or ratified said wrongs and, therefore, are personally liable.

40.     Declarants and the Defendant Board members controlled the Association and, thus, the Common Elements until April 2015—at the earliest.

41.     The Declarants had the duty at all times relevant hereto to construct, refurbish, maintain and repair the Common Elements and to turn the Common Elements over to the Unit-owner controlled Board and Association in good condition.  As well, when performing such work, they had the duty to exercise reasonable care in selecting contractors and in ensuring work was properly done and, if not, to pursue proper claims against those contractors providing inadequate work.

42.     Under the Act and the governing documents for the Condominium, including Article V of the Declaration and the Bylaws, the Board members had the duty to repair, maintain and replace the Common Elements when needed, to conduct preventative maintenance over major components of the Common Elements, and to ensure that work, when done, was adequately performed by competent contractors.  They also had the duty to establish and maintain adequate reserve funds for the maintenance, repair and replacement of the Common

Elements.[5]   The above-referenced Sales Certificates issued to Unit owners in connection with the sale of any Unit confirmed in Section 4 the aforementioned duties of the Board members.

43.     Pursuant to RSMo §§ 448.3-103 and 448.1-113, the Board member Defendants owed fiduciary duties and the duty of good faith to the Association, including the Unit owners.

44.     A major component of the exterior Common Elements are the setback roofs, part of which (the underside) consists of cantilevered soffits.  They are the topside, horizontal surface of what resembles a grid or ledge around each of the floors of the building.

45.     The setback roofs cover over 58,000 square feet, affect the structural integrity of the building and "contain" other major components of the Common Element—over 280 drains and a restraint system consisting of a thick cable onto which workers (including maintenance personnel and window cleaners) are to be able to latch to prevent and/or arrest their fall.

46.     The restraint system is not and never was code compliant which is not disclosed in the Sales Certificates.  It cannot, in its current state, be used to affect repairs to the setback roofs.

47.     The setback roofs are concrete decks overlaid with various layers of roof membrane.  The Declarants failed to properly repair or replace the roofs and over a period of years, the Defendant Board members neglected the same and otherwise engaged in a series of "stop gap" "repair and maintenance" measures aimed at creating cosmetic fixes so as to not alert Unit owners and purchasers to the need in the future to engage in the enormous remedial effort currently needed to resolve the defects in the roofs.

---

[5] By way of example, Section 5.04(e) of the original Declaration states the Board would prepare a component study of the major structural [setback roofs] and equipment components of the building and determine their useful life.  As part of this process the Board members were to determine and accumulate the amount of reserve funds necessary to correct or replace deficiencies in the major components.

10

48.    Plaintiff became alarmed over the condition of the setback roofs, safety restraint system and setback roof drains when it reviewed the investigation and a request for proposal performed and prepared by Wiss, Janey, Elstner Associates, Inc. ("WJE") in 2016.  It retained Thomas Rewerts, a professional engineer to analyze the composition and condition of the roofs, the history of their deterioration as well as the suitability of prior repair efforts undertaken by the Defendants.

49.    Mr. Rewerts found numerous defects and concluded numerous haphazard attempts had been made at cosmetic fixes.  Some of his substantial findings and conclusions include, *inter alia*, the following:

- There are numerous layers of roofing placed over a span of years since the building was originally constructed and opened in 1963.

- Removal of all existing layers of roofing membranes from the top to the structural concrete decks is necessary and can be accomplished using conventional mechanical and scraping equipment.

- The roofing membrane system consists of three layers, which includes two layers of liquid-applied urethane members and a thin top coating of rubber-reinforced asphalt, believed to have been manufactured by Karnak.

- The roofing membranes have failed in a number of different manners, including major debonding between the different layers and numerous modes of failure of [the top] asphalt [Karnak] coating (blistering, cracking, air bubbles, water bubbles, etc.)

- However, the most prominent form of failure in the three layers of roofing membranes was cracking that reflects up through all three layers at the locations of cracks in the structural concrete deck below.  That cracking allows water to penetrate and cause localized and then more extensive failure of the membranes on either side of the cracks.

- The concrete decks were showing failures, cracking, deterioration, and external moisture content in some areas.  The cracks are numerous and need to be repaired as does the deterioration which is localized toward the top of the decks. If not repaired, the cracks would continue to reflect up, cause cracking in any top surface and allow moisture to continue to permeate the deck and soffits.

11

● Prior remedial efforts on the set back roofs were inadequate. For instance: (1) The heart of the problem—the cracking in the concrete deck-was never resolved; (2) the intermediate membrane was quite thin; (3) the additional remedial measure of using a thin Karnak coating on top of two failed urethane membrane systems should have only been considered to be a short-term or stopgap type remedial program; and (4) each remedial step taken by the Declarants and its Board Directors failed to properly account for and resolve the underlying cracks formed and forming in each preceding membrane.

50.     Mr. Rewerts' concerns confirm findings set forth in a previous report prepared by Roofing Solutions, Inc. ("RFI") which had been provided to the Defendants nearly a full year before the Board was turned over to the Unit owners.

51.     The RFI report was prompted by information received by the Defendants from management in April 2014 that setback roof ledges in disrepair are the most significant source for structural damage to the building in the form of water infiltration complicated by freeze thaw cycles.

52.     RFI concluded that prior repair efforts attempted by Defendants on the setback roofs were woefully inadequate and that prompt action was needed. Specifically, the Karnak application placed over previously existing urethane-based membrane coatings was not proper and would lead to further failures in the setback roof system.

53.     The RFI report to the Board warned that:

The misuse of Karnak resulted in the roof deck coatings being "in very poor condition," due in large part to delamination of the original coating from the concrete deck and severe cracking in the surface coat. RSI warned and recommended that: (1) simply performing another stopgap measure of applying an additional coating over the existing coatings would not suffice due to failure and delamination of the original coating from the deck; (2) the existing coatings had to be completely removed and replaced with a single-ply membrane system at a cost of nearly one million dollars ($1,000,000); and (3) failure to completely remove the existing roofing system will not resolve the cracking issues, and will lead to damage to the soffits and total deterioration of the concrete decking, because water will continue to penetrate cracks in the top layer and

12

permeate those components below the top layer "resulting is very costly remediation repairs."

**54.** RFI recommended that the Defendants should remove the existing coatings down to the structural concrete decking and install a twenty-year single-ply membrane system at an estimated cost of $926,000.

55. The RFI investigation and other information confirms that the damage to the setback roofs was exacerbated by Defendants' poor maintenance of the above-mentioned drains associated with the roofs.

56. There are sixteen (16) drains on each level of setback roof. The setback roof drains were ignored by the Declarants and their appointed Board members, as evidenced by, *inter alia*, the fact that some of the drains had thirty (30) to forty (40) inches of sediment backed up into them. Roof debris, including parts of the roof membrane itself, was clogging the drains causing water to pond. This, in turn, accelerated the deterioration of roof membranes that were already far beyond their useful life and, in some cases, led to water infiltration into the Units.

57. In ascertaining the needs to correct defects in the setback roofs, Plaintiff discovered that the safety restraint system associated with each level of the setback roofs was essentially useless and could not be used by contractors desiring to perform work on the roofs. Insofar as the safety restraint system was not adequate or code compliant, normal maintenance activities such as window washing and window repairs could not be performed and bids to perform work on the setback roofs had to be increased. In studying the issue further, Plaintiff learned the safety restraint system and roofs were not properly and timely inspected and a report prepared by Pro-Bel found that all 360 eyebolts for the system were inadequate to pass a standard load test. Consequently, all eighteen (18) floors of the Condominium were tagged for prohibited use.

13

58. The deficiencies in the roof membrane, structural concrete, setback roof drains, and the safety restraint system, the lack of annual inspection and certification records, the increased costs associated with typical maintenance tasks such as window washing and repair costs for the setback roofs due to those deficiencies were known or, alternatively, should have been known by the Defendants.

59. The reality that the Defendants knew or should have known of the defects is evidenced by the fact that Sales Certificates (Public Offering Statements) reference some of the defects and, indeed, misrepresent what did and/or would occur to deal with the defects.

60. The Amended and Restated Original Sales Certificate issued on November 28, 2006, under Exhibit I, Item 3, references Cantilevered Soffits (the underside/bottom of the setback roofs) and states: "Damaged sealant joints in the soffits *will be* repaired, and the plaster soffits *will be* repaired and painted." (Emphasis added). This statement by the Declarant is an obvious recognition that the Defendants witnessed damage being caused to the underside of the setback roofs due to water intrusion flowing from the top membrane through the structural concrete.

61. The September 22, 2010 Amended and Restated Original Sales Certificate refers specifically to Cantilevered Soffits in Exhibit N stating: "Damaged sealant joints in the soffits *were* repaired, and the plaster soffits *were* repaired and painted." (Emphasis added).

62. In addition to information provided in the June 2014 RFI report and the 2006 and 2010 Sales Certificates, other instances of Defendants' actual/constructive knowledge of the problems in the Common Elements or their negligent failure to ascertain the problems include, but are not limited to, the following:

14

- The Declarants had performed work on the setback roofs on numerous occasions and their consultants were assessing the condition of the building.

- Annual inspections for code compliance and a proper investigation and repair of the roof membrane by a qualified engineer and contractor would have alerted the Declarants and their appointed Board members of the need to install a proper system, to maintain the drains and membrane, and to pay for the same before turning the Common Elements and control of the Board over to the Unit owners.

- In 2005, Synergy ENG presented a proposal to the Defendants warning them of the importance of a sufficient reserve fund and that prudence justified an in-depth evaluation of the condition of "the building exterior wall system, exposed portions of the buildings reinforced concrete superstructure" in order to identify "best maintenance practices or proactive measures, that *will minimize the need for costly deductions from your reserve fund*.' (Emphasis added).

- In 2006, an exterior abatement protocol was issued calling for the containment of asbestos in the setback roofs, as opposed to removal of it, by sealing the underside (soffit) openings. By the time this abatement process was initiated, the roof membranes and structural concrete were already in a poor condition due to recurring water intrusion.

- According to the November 28, 2006 Sales Certificate, in 2006, a new window system was installed throughout the building, during which the inadequate status of the setback roofs had to have been noticed. During this same time period, according to the Certificate, due to the building's age, a new mechanical system was needed. Reserves for both the building and equipment repair/replacement were set at a paltry $78,000 but salaries for Declarant's personnel were established at a generous $576,009.00.

- In 2008, the Major Component Study, referenced in the 2007 Declaration was obtained and distributed to the Defendant Board members. *See* n. 5, *supra*.

- Action Item Reports prepared for the Defendant Board members contained a category dedicated to "Ledge Repair and Evaluation—membrane patching on some floors.

- In December 2012, an Action Item Report provided to the Board members and, thus, to the Declarants[6] noting the need for evaluation and recommendations on and the need to patch and perform repairs to the roof membranes.

---

[6] *See supra* at ¶ 39 alleging the Declarants' liability for the acts and omissions of their appointed Board members.

15

- A January 2013 Action Item Report prepared for the benefit of the Board confirms under "Ledge Repair and Evaluation" item that "Engineer recommendations sent to Western Waterproofing for review and proposal.

- In July 2014, management was asked to respond to two separate reports of large sections of membrane coating delamination occurring where the roofs had been temporarily repaired during storm events. The Board acknowledged that the setback roof ledge requires further investigation.

- Unit 805 sustained substantial water damage due to roof drain failures.

63. The representation in the September 22, 2010 Amended and Restated Original Sales Certificate that "[d]amaged sealant joints in the soffits *were* repaired, and the plaster soffits *were* repaired and painted" was a misrepresentation as evidenced by a substantial January 2011 Replacement Reserve Report, which was revised on March 23, 2011, and will be hereinafter referred to as the "Reserve Report." (Emphasis added).

64. The Reserve Report corroborates the Defendants' neglect of the roofs, drains and safety restraint system and establishes clear notice to the Defendants in 2011 of the need for immediate action on these items.

65. The Reserve Report evaluated most of the major components of the building and warned the Defendants that, among the major exterior components, the setback roof membranes had the least remaining useful life (5 years) and, with a price tag of $220,660, would be one of the most expensive items to fix.

66. The Reserve Report iterated that the condition of the setback roofs had deteriorated to the point where annual inspections of the membrane must be conducted to prevent further damage to the concrete decks, confirming Thomas Rewerts' findings [*supra* at ¶¶ 49-51] that the cracking in the top layer of coating on the setback roofs was a symptom of the prolonged underlying concrete issues.

16

67.     The Reserve Report also recommended that $66,500 be budgeted for the setback roof drains.

68.     Notwithstanding having notice of the substantial defects in the setback roofs, setback roof drains, and a safety restraint system that is so inadequate that windows cannot even be cleaned, the Defendants failed to take proper measures to prevent more damage and failed to make adequate and timely repairs/replacement and, instead, actively promoted the Condominium (or allowed such promotion to occur) to the public as being "meticulously converted" with a "high quality of design and construction materials."

69.     After receiving control of the Board from the Defendants in April 2015, Plaintiff incurred substantial damages in investigating, developing a proper scope for remedying the aforementioned defects and began making repairs.   These damages currently total at least $259,363.64 and could have been avoided or greatly diminished had the Defendants properly performed their duties.

70.     Further, after receiving the information from WJE [*supra* at ¶ 48], Mr. Rewerts [*supra* at ¶¶ 48-50], Pro-Bel [*supra* at ¶ 57], and other construction professionals and contractors who were consulted to engage in correction of the defects, Plaintiff has determined the estimated costs to repair the setback roofs are at least $2,644,239.   Plaintiff has incurred other damages in the nature of property damage, including damage to the Common Elements and some Units, the loss of the use and enjoyment thereof and diminution in value to the Common Elements.  All of the aforementioned damages could have been avoided or greatly reduced had the Defendants properly performed their duties.

17

## COUNT I—BREACH OF FIDUCIARY DUTIES UNDER THE CONDOMINIUM ACT AGAINST ALL DEFENDANTS

For Count I of its Petition against all Defendants, Plaintiff adopts and incorporates each and every foregoing averment as though fully stated herein and further states as follows:

71.     At all relevant times herein, the Defendant Board members Kemper, Campbell, Foote, Recinto, Kacerek, Palma and Bayangos were Declarant-appointed and controlled members of the Board for the Association and were acting for their own benefit and/or personally participated in the acts complained of herein.  These Board members were controlled by and acting under the general authority of the Declarant that appointed them.  As well, each Defendant Declarant benefitted from and ratified the acts and omissions of the Board members. Therefore, the Declarants are liable for the breach of the fiduciary duties of the Defendant Board members.  *See Twin Chimneys Homeowners Association v. J.E. Jones Construction Co.,* 168 S.W.3d 488, 499-50 (Mo. Ct. App. 2005).

72.     The Declaration, Bylaws and Condominium Act provide that the Association must operate through, and the Board members are responsible for, the affairs of the Association.

73.     "[T]he [A]ssociation is responsible for maintenance, repair, and replacement of the [C]ommon [E]lements," and, thus, the Board members must ensure the Common Elements are properly maintained, repaired and replaced.  *See* RSMo § 448.3-107.1; *see also* Article V of the Declaration and Bylaws.

74.     The Act and Missouri case law recognize there is an inherent conflict of interest between the developer-Declarant and its appointees and the Unit owners because the Declarant and its Board members desire to keep costs low and quickly sell Units.  Conversely, the Unit owners want a quality living environment, exemplary amenities and Common Elements that are in a constant state of repair and free from defects.

18

75.    Section 448.3-103.1 of the Act states, in part, that because the individual Defendants were Declarant-appointed members of the Board of Directors they were, during the Declarant control period "required to exercise. . . the care required of fiduciaries of the unit owners."

76.    As fiduciaries and Board members, the individual Defendants and their principals, OPP and PPKC, were required to, *inter alia*: avoid a conflict of interest; operate the Association in good faith[7] and with utmost loyalty to the Plaintiff (which includes its member-Unit owners); to serve the interests of the Plaintiff over their own; avoid profiting or reducing losses at the expense of the Plaintiff; make full, frank and timely disclosures to the Plaintiff regarding the financial status of the Association and the Common Elements; reasonably protect the Plaintiff from loss or misinformation or from proceeding on false assumptions; pursue claims for and belonging to the Association and/or two or more Unit owners, including construction defect and warranty claims against contractors performing sub-standard work; properly budget for expenses and build and/or establish an adequate reserve fund to repair; replace and maintain the Common Elements; and actually repair, replace and maintain the Common Elements when necessary; provide accurate and timely Sales Certificates and/or ensure the same comply with the Act; make accurate and adequate inspections of the Common Elements; protect the Association and its members from unnecessary or exorbitant expenses, which includes ensuring the Common Elements are kept in good repair; and, equally important, to take all steps reasonably necessary to ensure the Common Elements are turned over to the Unit owner Association in a respectable and sufficient condition.

---

[7]  The Act imposes the duty of good faith upon all of the Defendant in performing any of their functions under the Act and the governing documents of the Condominium.  *See* RSMo § 448.1-113.

77.     All of the above-referenced fiduciary duties were breached by the Defendants as elaborated on above, including, but not limited to: the failure—indeed, the refusal—to properly and timely inspect the Common Elements and, more specifically, the setback roofs, roof drains and safety restraint system to the point of where some of these Common Elements, *e.g.*, the safety restraint system, were not even code compliant; the facilitation or allowance of inaccurate Sales Certificates to be issued which misrepresented that certain repairs would be and were undertaken and mistakenly informed the public and purchasers of the date when the Board was turned over to the Unit owners and, thus, was no longer controlled by individuals whose interests were aligned with the developer/sellers of the Units and not with the individuals actually planning on living in the Condominium;[8] the insertion or allowance of a provision in the Declaration that attempts to circumvent the liability and fiduciary duties of Board members;[9] the acceptance of the Common Elements and otherwise permitting the Declarants to attempt to turn defective Common Elements over to the Unit owner-controlled Association; the failure to timely and properly maintain, repair and replace the Common Elements, notwithstanding the abundance of information the Board received regarding the poor status of the Common Elements and the urgent need to maintain, correct and replace the same; the attempt (and/or allowing sellers to attempt) to limit warranties; the failure to properly select and supervise construction contractors and/or design professionals in regard to actual construction work performed on the Common Elements (setback roofs, roof drains and safety restraint system) and the failure to insist that the same correct their defective work or otherwise pursue claims against the same for their inadequate performance; the failure to adequately budget for and establish reserves for proper and timely replacement and/or repairs to the Common Elements while, at the same time,

---

[8]  *See* September 22, 2010 Amended and Restated Original Sales Certificate, § 3.1.
[9]  *See* Declaration, § 5.07.

ensuring substantial funds were available for "salaries" of personnel associated with the Condominium; the refusal or otherwise failure to disclose full information regarding the poor state of the Common Elements; the engagement in haphazard cosmetic fixes to the Common Elements, especially those visible to purchasers and the Unit owners; the publishing of misleading information about the quality and state of the Condominium and its Common Elements; the refusal or otherwise failure to devote sufficient time and attention to the affairs of the Condominium while knowing (in most of the Defendant Board member's cases) that the member lived hundreds of miles from the Condominium, *e.g.*, California, and then subsequently refusing to exercise good faith in responding to Plaintiff's repeated requests to engage in alternative dispute resolution procedures or otherwise engage in a resolution process that would provide for a timely and economical solution to the parties' disputes; the attempt to prematurely turn over the defective Condominium and inadequately funded reserve account to the Unit owner's Association; the intentional ignorance of the substantial warnings consistently given to the Defendants regarding the plight of the setback roofs, drains and safety restraint system, particularly those given in the 2011 Reserve Report and corroborated by RSI's 2014 report; and the failure to prevent the Common Elements from becoming so defective so as to cause damage to several Units.

78.     As a direct and proximate result of the foregoing acts and omissions, Plaintiff has incurred and will incur damages in amounts explained above. The acts and omissions caused damage to property, including the Common Elements, the loss of the use and enjoyment thereof and diminution in value and have led to and will continue to lead to significant repair and/or replacement costs as described above.

79. Insofar as the various breaches of fiduciary duties violate the Act, Plaintiff is entitled to attorney's fees under the Act.

80. Defendants' conduct and omissions were deliberately or consciously indifferent to rights of others and/or were otherwise malicious, wanton, willful, and sufficiently reckless, thereby entitling Plaintiff to punitive damages under the Act.

81. Further, with respect to the Declarants' (OPP and PPKC) tort liability, under Section 448.3-111 of the Condominium Act, Plaintiff, as a Unit-owner-elected Association, is not liable for Defendants' negligence or other torts in connection with any part of the Condominium which Defendants had the duty to maintain during the period of time when the Declarant controlled the Association and/or the Condominium. Therefore, any attempt by the Declarants, and thus, by the Defendant Board member agents of the Declarants to seek indemnity would not only be contra-intuitive but prohibited by the Act.[10]

82. Pursuant to Section 448.3-111, Defendants are responsible for all damages and losses resulting from their acts and omissions as described above to the extent such damages and losses are not covered by insurance.

83. Further, under Section 448.3-111, Defendants are liable for all costs and litigation expenses incurred by Plaintiff, including attorney's fees. Any statute of limitations applicable to tort claims is tolled until the period of Declarant control over the Association ends. *Ibid.*

WHEREFORE, for Count I of its Petition, Plaintiff requests judgment against the Defendants jointly and severally in an amount that will reasonably compensate the Plaintiff for its losses, which will exceed $75,000.00, for prejudgment interest, for punitive damages in a sum

---

[10] In addition to common sense, Missouri case law and the unconscionability provisions of the Act mandate that the fiduciary responsibility provisions of the Act cannot be circumvented (eviscerated) by inserting indemnity provisions into a declaration. A board member cannot, by indemnity provisions, force the association to return the very damages the Act allows the association to recover from the board member.

22

that is just and reasonable and will have a deterrent effect, for its costs, expenses and attorney's fees incurred herein, and for such further relief as the Court deems just and equitable.

### COUNT II—NEGLIGENCE
### AGAINST DECLARANTS OPP AND PPKC

For Count II of its Petition against Defendants OPP and PPKC, Plaintiff adopts and incorporates each and every foregoing averment as though fully stated herein and further states as follows:

84. The Declarants OPP and PPKC had the duty to turn the Common Elements over to the Unit owner-controlled Association and its members, including the setback roofs, setback roof drains and safety restraint system in a good and sufficient condition. *See Chesus v. Watts,* 967 S.W.2d 97, 109-10 (Mo. Ct. App. 1998). This did not occur and the duty was breached.

85. As well, in causing improvements, maintenance and renovations to occur on the Condominium, the Declarants had a duty to exercise reasonable care.

86. The Declarants failed to properly renovate the setback roofs, maintain the setback roof drains and comply with the applicable standard of care (including code requirements) in providing a safety restraint system.

87. The inadequate repairs performed on the soffits—an integral part of the setback roofs—and actual repairs to the membrane (likely undertaken to protect the underlying concrete deck from further deterioration) were stopgap at best and, because they were improperly performed, actually expedited the opportunity for moisture penetration to and through the concrete decks into the soffits.

88. The Defendants' acts and omissions, including substandard work, failure to properly select remediation contractors and/or to properly supervise and inspect the construction directly and proximately caused damage to the Plaintiff as explained above, including damage to

23

property, including the Common Elements, the loss of the use and enjoyment thereof and diminution in value and have led to and will continue to lead to significant repair and/or replacement costs as described above.

WHEREFORE, for Count II of its Petition, Plaintiff requests judgment against the Defendants OPP and PPKC jointly and severally in an amount that will reasonably compensate the Plaintiff for its losses, which will exceed $75,000.00, for prejudgment interest, for its costs, expenses and attorney's fees incurred herein, and for such further relief as the Court deems just and equitable.

<div align="center">

**COUNT III—BREACH OF IMPLIED WARRANTIES
UNDER THE CONDOMINIUM ACT AND COMMON LAW
AGAINST DECLARANTS OPP AND PPKC**

</div>

For Count III of its Petition against Defendants OPP and PPKC, Plaintiff adopts and incorporates each and every foregoing averment as though fully stated herein and further states as follows:

89.     Pursuant to Section 448.4-114 of the Condominium Act, the developer-Declarants OPP and PPKC, in their roles as Declarants and/or sellers of real estate for their own accounts, impliedly warranted that the Units, accompanying Common Elements and all "improvements" (which includes all work performed on the Common Elements), would be suitable for ordinary use, free from defective materials, constructed in accordance with applicable law, sound engineering and construction standards and in a workmanlike manner.

90.     "For purposes of [Section 448.4-114] improvements made or contracted for by an affiliate of a declarant are made or contracted for by the declarant."  RSMo § 448.4-114.5.  Thus, OPP is liable for all inadequate, negligent, or improper work performed at the request of, or under contract with, PPKC or its agents.

<div align="center">

24

</div>

91.     The implied warranties under the Act extend to original and subsequent purchasers of the Units and Common Elements.

92.     OPP and/or PPKC improperly attempted to limit the statute of limitations and the scope of their warranty liability to the Plaintiff for defects in the Condominium by inserting language into various documents such as the 2006 Amended and Restated Original Sales Certificate.  Such conduct does not comply with the Act and is otherwise unconscionable both procedurally and substantively under RSMo § 448.1-112, the Missouri Merchandising Practices Act and common law.

93.     Furthermore, insofar as residential units are involved, the implied warranties cannot be disclaimed under the Condominium Act. Such conduct violated Defendants' duty of good faith under Section 448.1-113 of the Act inasmuch as Defendants knew and/or should have known of the construction defects and failed to comply with their duties to protect and maintain the Condominium, its assets and its reserves.  Further, any such limited warranty, if enforced, would cause the warranty to fail in its essential purpose.

94.     Defendants breached the implied warranties in that there are substantial construction defects and other shortcomings in the Condominium as described above, which have necessitated and will continue to cause substantial expenses to be incurred to remedy the defects in the setback roofs, setback roof drains and safety restraint system.

95.     Undoubtedly, the implied warranties afforded under the Act were violated.  The safety restraint system appears to never have been code compliant nor in par with industry standards.  The stopgap efforts at renovating and/or repairing the roof ledges were equally woefully inadequate.

96.     Compliance with the implied warranty of suitability mandated by the Act is, at a minimum, measured by community standards, generally reflected in local housing and property maintenance codes." *Chiodini v. Fox,* 207 S.W.3d 174, 176 (Mo. Ct. App. 2006).

97.     Indeed, Section 448.4-114.2(2) of the Act requires compliance with building codes and sound engineering standards. A roofing system that requires over $2.5 million to make it function properly is not suitable nor fit for ordinary purposes.

98.     Moreover, Missouri common law recognizes that, where, as here, a developer undertakes to perform remedial or repair work on the property of others—such as the work undertaken by the Defendants to resolve the defects in the roof ledge soffits and membranes (which work naturally also embraces conducting a professional analysis of what work would be needed to resolve the deficiencies)—there is an implied warranty of workmanlike performance attaching to such repair attempts. The minimal and negligent efforts of Defendants to address the soffits and membranes breached the implied warranty of workmanlike performance.

99.     Defendants received sufficient notice that should have prompted them to remedy the defects and conditions resulting from the breach of implied warranties. Further, despite knowledge of the defects and of the need to correct the same, Defendants refused and failed to remedy the problems. Defendants' violation of the Act and conduct in refusing to comply with their obligations is willful and wanton and thereby entitles Plaintiff to punitive damages under the Condominium Act. *See* RSMo. § 448.4-117.

100.     Plaintiff has been damaged as a direct and proximate result of Defendants breach of warranties as explained in detail above.

101.     Defendants' violation of the warranty provisions of the Condominium Act entitles Plaintiff to attorney's fees.

26

WHEREFORE, for Count III of its Petition, Plaintiff requests judgment against the Defendants OPP and PPKC jointly and severally in an amount that will reasonably compensate the Plaintiff for its losses, which will exceed $75,000.00, for prejudgment interest, for punitive damages in a sum that is just and reasonable and will have a deterrent effect for prejudgment interest, for its costs, expenses and attorney's fees incurred herein, and for such further relief as the Court deems just and equitable.

**COUNT IV—BREACH OF EXPERESS WARRANTY**
**AGAINST DECLARANTS OPP AND PPKC**

For Count IV of its Petition against Defendants OPP and PPKC, Plaintiff adopts and incorporates each and every foregoing averment as though fully stated herein and further states as follows:

102.    Sections 448.4-113(1) and (2) of the Act state that express warranties are created by any description of the characteristic of the Unit or Common Elements or any affirmation of fact or promise made in regard to the same or use of the same.

103.    No "magic" or technical words or phrases are required to create an express warranty under the Act.  *See* RSMo § 448.4-113.2.

104.    The Amended and Restated Original Sales Certificates referenced, *supra*, contain warranties that the Common Elements were in stable condition and that certain repairs would be, and in fact actually were, conducted to the soffits.

105.    The Certificates and Article 5 of the Declaration represent that major studies would be conducted on all major components of the Condominium, that preventative maintenance would occur and that reserves to fund needed repairs would be arranged. Obviously, none of these promises were adequately carried out.  As well, as noted above,

27

promotional literature warranted the Condominium as being "meticulously converted" with a "high quality of design and construction materials."

106.    The express warranties were breached; and, consequently, Plaintiff has been damaged as a direct and proximate result of Defendants' breach of warranties as explained in detail above.

WHEREFORE, for Count IV of its Petition, Plaintiff requests judgment against the Defendants OPP and PPKC jointly and severally in an amount that will reasonably compensate the Plaintiff for its losses, which will exceed $75,000.00, for prejudgment interest, its costs, expenses and attorney's fees incurred herein, and for such further relief as the Court deems just and equitable.

**COUNT V—MISSOURI MERCHANDISING PRACTICES ACT
AGAINST ALL DEFENDANTS**

For Count V of its Petition against all Defendants, Plaintiff adopts and incorporates each and every foregoing averment as though fully stated herein and further states as follows:

107.    The goods and services at issue in this lawsuit and provided, transferred, and/or sold or promised to be provided, transferred and/or sold by the Defendants were for personal, family and/or household use.

108.    The Missouri Merchandising Practices Act ("MMPA") is construed broadly to reach any deception or unfair practice, including concealment of facts or information.

109.    The MMPA applies to conduct occurring both before and after any consumer transaction and, thus, applies not only to Defendants' pre-sale and Unit-selling activities but also to post-transfer and sale actions, including their transfer and turnover of the Common Elements and the Units to the Unit owners' Association in its defective condition and state of disrepair. Major components of the Common Elements were in a defective state, notwithstanding the fact

28

that promotional literature and documents generated and approved by the Defendants represented otherwise.

110.    The MMPA applies to repairs undertaken and/or promised to be undertaken by the Declarants and its Board members and to funding and preventative maintenance expressly/impliedly promised but never performed.  Defendants' failure, refusal and, in some cases such as the roof ledges, repeated inadequate and cosmetic repairs undertaken to prevent revelation of the true extent of the damage to the ledges also violate the MMPA.

111.    A person can be liable under the MMPA for any deception, unfair practice, or omission of any material fact in connection with the sale or advertisement in trade or commerce.

112.    Defendants knew that water was infiltrating the setback roof concrete structure and damaging the soffits through the inadequate membranes and promised to repair the same and even purported these promised soffit repairs were performed.  This was not true as water continues to migrate into the concrete.  Time after time the Board and its Declarants were notified of the roof drains plugging, sometimes with roof membrane, and were told of substantial damage occurring to Units.  The issue of the setback roofs was so acute that an action item was established calling for the Board to monitor the roof ledge and when the problem began to get too noticeable, they would patch the membrane and hope for the best.  Each time work occurred on the setback roofs, the drain defects and safety restraint system problems were staring them in the face and nothing was done.  Each repair attempt was inadequate, did little to resolve and ultimately only served to cause further damage.  Each negligent fix of the problem violated the Act.  The most distressing element is that while assessments were collected to pay salaries, no funds were set aside or otherwise allocated for the catastrophe currently confronting the Plaintiff.

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

113.     The Sales Certificates, advertising materials and governing documents for the Condominium represent that the Condominium was well constructed and would be well maintained, that budgets and reserves would be well planned and appropriately administered, and that the Common Elements would be monitored and protected from major harm and could and would be fixed when problems developed. None of these promises were fulfilled.

114.     Defendants' acts and omissions referenced above, coupled with the failures elaborated on in Counts I and II, constitute multiple violations of RSMo § 407.020 and directly and proximately resulted in the damages referenced above.

115.     Plaintiff has and will continue to incur attorney's fees for which Defendants are liable under Section 407.025 of the MMPA.

116.     The acts and omissions referenced above by the Defendants were so intentional, wanton, willful, malicious, outrageous, reckless, deliberately and/or consciously indifferent so as to entitle Plaintiff to punitive damages against the Defendants.

WHEREFORE, for Count V of its Petition, Plaintiff requests judgment against the Defendants jointly and severally in an amount that will reasonably compensate the Plaintiff for its losses, which will exceed $75,000.00, for prejudgment interest, for punitive damages in a sum that is just and reasonable and will have a deterrent effect, for its costs, expenses and attorney's fees incurred herein, and for such further relief as the Court deems just and equitable.

## COUNT VI—NEGLIGENT MISREPRESENTATION INCLUDING CONCEALMENT AGAINST ALL DEFENDANTS

For Count VI of its Petition against all Defendants, Plaintiff adopts and incorporates each and every foregoing averment as though fully stated herein and further states as follows:

117.     Defendant Declarants had the duty to exercise reasonable care in providing information in their role as Declarants.

30

118.    As well, the Defendant Board members—as part of their fiduciary duties and in their role as Board members—had the duty to make full and frank disclosures in Board meetings, in minutes of those meetings, in providing information for inclusion in Original Sales Certificates or literature promoting the Condominium, and whenever else it was appropriate or required in order for those to whom their fiduciary duties are owed (the Association and its members ) to make informed decisions about their assessments, whether the Bylaws or the Declaration should be amended to allow better protections to the Unit owners or otherwise appropriately protecting their interests in the Common Elements.

119.    Further, the Original Sales Certificates referenced throughout this Petition serve as a statutory basis for numerous claims against the Defendants and against any person selling Units for their own benefit or as a part of their business.

120.    Upon information and belief, information was provided by the Defendant Board members, officers of the Board and those retained or acting for the Board in preparing, approving and distributing the Sales Certificates.

121.    Any Declarant or other person in the business of selling real estate (the Units and the accompanying Common Elements) *and those providing information or assisting in preparation of the same* must provide such Sales Certificates and provide proper Certificates.  *See* RSMo § 448.4-102.

122.    Under Section 448.1-103(8) of the Act, the Condominium constitutes a "Conversion Building," which is defined as *any* "building that at any time before creation of the condominium was occupied wholly or partially by persons other than the purchasers."

123.    Section 448.4-106.1 of the Act explicitly provides, the original sale certificate of a condominium containing any conversion building *shall* contain, in addition that normally required, a statement of all work done, including the nature thereof on all interior walls, ceilings, the roof,

31

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

structural members, gutters and downspouts and all related fixtures. This would include, in this case, all work done on the setback roofs, drains and safety restraint system. However, in this case, no such information was included in the Sales Certificates.

124. Disclosures under Section 448.4-106.2 include all notices of uncured violations of building code or other municipal regulations. Again, no information was provided by the Defendants about the failure of the safety restraint system to comply with code provisions.

125. Under Section 448.4-103 of the Act, the Sales Certificates must contain all relevant information regarding features and characteristics affecting the Condominium, including whether reserve budgets have been established for important items and, if so, what the budget is. In this case, however, the Sales Certificates falsely depicted that work was going to be accomplished on the soffits and that the problem was satisfactorily resolved.

126. Paragraph 27 of the 2006 Sales Certificate states that Declarant has performed major repairs or replacements to the building, thereby lending a sense of false security to those interested in buying into the Condominium.

127. The Sales Certificates failed to properly disclose all of the stopgap work performed on the Common Elements and other work performed to remedy damage caused to Units by the failing membranes and the drains being plugged and otherwise not properly operating. The silence on these issues would lead an unsuspecting consumer and member of the Association to conclude the problems did not exist.

128. The sales and promotional materials also misled those reviewing the same into believing the Condominium unencumbered with the need for substantial work.

129.    The materials were false and misleading and/or negligently or recklessly represented significant facts and failed to make adequate disclosures about what was done and what needed to be done to bring the Common Elements into the proper state of repair.

130.    Negligent misrepresentation can arise from affirmative misrepresentations or from passive nondisclosures.

131.    Defendants OPP and PPKC, because of their positions and roles as Declarants and sellers of Units, and the Defendant Board members—having fiduciary duties, as well as because of their superior knowledge, the information involved was supplied or omitted in the course of Defendants' business, and because the Plaintiff and its Unit owner members belonged to a class of listeners to whom Defendants meant to make or refrain from making the communications—had a duty—which they breached—to exercise reasonable care in making statements and to make full disclosures to the Plaintiff regarding the aforementioned circumstances, omissions and facts.

132.    Disclosures such as the non-compliant status of the safety restraint system, information and shortcomings in the Common Elements and in previously performed attempts at repairs established in the RFI and Rewerts' reports, the Reserve Report and Board budgets disclosing and warning about the substantial need to fix items and current lack of funds to do so and the fact that the roof ledge membranes were disintegrating, plugging up drains and causing damage to Units, should have been made because Defendants either had knowledge of or should have known of the material facts and because of their superior knowledge and concomitant position of trust and confidence. *See Wengert v. Thomas L. Meyer, Inc.,* 152 S.W.3d 379, 382 (Mo. Ct. App. 2004).

133.    Defendants had the duty and failed in their duty "to exercise care or competence in obtaining or communicating this information." *Frame v. Boatmen's bank of Concord Village,* 782 S.W.2d 117, 121 (Mo. Ct. App. 1989).

33

134.    Further, before Units were sold, before any applicable warranties were about to expire, and particularly before the Condominium and the defective Common Elements were turned over to the Plaintiff, Defendants breached one or more of the following duties because of their non-disclosures:

- The duty to disclose matters known by the Defendants that the Plaintiff [including the member Unit owners] was entitled to know because of a fiduciary or other similar relation of trust existing between the parties [*e.g.*, that the useful life of the roof ledges was about to expire and that no funds had been aside to deal with this reality].

- The duty to disclose matters known to the Defendants to be necessary to prevent ambiguous or half-true statements of fact from being misleading.

- The duty to disclose subsequently acquired and/or discovered information that Defendants knew made untrue or misleading previous statements or representations that, when made by the Defendants, were true or believed to be true.

- And, the duty to correct and/or disclose the falsity of any representations Defendants contend were not made with the expectation that they would not be acted upon, once they became aware that the Plaintiff was about to act in reliance on them in a transaction with the Defendants.

*Kesselring v. St. Louis Group, Inc.,* 74 S.W.3d 809, 813-14 (Mo. Ct. App. 2002).

135.    Plaintiff justifiably relied on the information provided, and in otherwise proceeding with the course of conduct undertaken by the Plaintiff and was damaged thereby as explained above.

WHEREFORE, for Count VI of its Petition, Plaintiff requests judgment against the Defendants jointly and severally in an amount that will reasonably compensate the Plaintiff for its losses, which will exceed $75,000.00, for prejudgment interest, for its costs, expenses and attorney's fees incurred herein, and for such further relief as the Court deems just and equitable.

**COUNT VII—VIOLATION OF THE CONDOMINIUM ACT
AGAINST ALL DEFENDANTS**

For Count VII of its Petition against all Defendants, Plaintiff adopts and incorporates each and every foregoing averment as though fully stated herein and further states as follows:

34

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

136.     At all times relevant herein, the Board members were acting for their own benefit and for the benefit of the Declarants who appointed them as Board members.

137.     Section 448.4-117 of the Act provides for direct actions under the Act. Attorney's fees are available and punitive damages are authorized for willful, wanton, and/or malicious failures to comply with the Act.

138.     The Defendants violated the Act, as more fully explained above, in that they violated fiduciary duties; failed to provide proper Sales Certificates, inserted and/or allowed unconscionable provisions to be inserted in the Declaration and/or Sales Certificates such as limitations of liability and warranty limits that have failed and will continue to fail in their essential purposes and otherwise do not comply with the Act; engaged in substantive and procedurally unconscionable acts; failed and continue to fail to act in good faith; failed to comply with duties such as establishing reserves,; failed and refused to repair, replace and maintain the Common Elements, prepare adequate budgets and engage in preventative maintenance; failed to budget properly and failed to manage the fiscal affairs of the Condominium.  As well, there was an overall consistent failure to devote the proper time, attention and resources to indispensable affairs of the Condominium by the Board that was entrusted to protect the affairs and the property of the Plaintiff.

139.     As a direct and proximate result of the Defendants' failures and misconduct resulting in violations of the Act, Plaintiff was damaged as explained above.  Defendants' acts and omissions were willful, reckless, wanton, malicious and sufficiently indifferent to the rights of the Plaintiff so as to justify punitive damages and attorney's fees.

WHEREFORE, for Count VII of its Petition, Plaintiff requests judgment against the Defendants jointly and severally in an amount that will reasonably compensate the Plaintiff for

its losses, which will exceed $75,000.00, for prejudgment interest, for punitive damages in a sum that is just and reasonable and will have a deterrent effect, for its costs, expenses and attorney's fees incurred herein, and for such further relief as the Court deems just and equitable.

Respectfully submitted,

**LONG & ROBINSON, LLC**

By: */s/ Burke D. Robinson*

Scott C. Long          MO#42900
Burke D. Robinson    MO#52953
1800 Baltimore Ave, Ste. 500
Kansas City, MO 64108
(816) 541-2100 Telephone
(816) 541-2111 Facsimile
slong@longrobinson.com
brobinson@longrobinson.com
**ATTORNEY FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I do hereby certify that a true and accurate copy of the above and foregoing was electronically filed using the Court's electronic filing system, this 24th day of January, 2019, and a copy served on all parties registered to receive electronic notifications from the Court.

*/s/ Burke D. Robinson*

Attorney for Plaintiff

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM



Jeffrey Link
Selective Insurance Company of America
Mailing address for correspondence:
P.O. Box 7261
London, KY 40742
Phone#: 217-544-5622
Fax#: 877-233-1004
jeffrey.link@selective.com

November 10, 2018

One Park Place Investors, LLC
c/o SWD Communities LLC
3 San Joaquin Plaza, Suite 240
Newport Beach, CA 92660

Curtis Hapgood
3824 W 52nd St
Roeland Park, KS 66205

One Park Place Investors, LLC
3 Civic Plaza, Suite 240
Newport Beach, CA 92660

Mr. Jeffrey Kacerek
1202 Brazos Court
Allen, TX 75042

Park Place KC, LLC
c/o AY KC, Inc
255 Shoreline Dr, Suite 248
Redwood City, CA 94065

Ms. Christine Kemper
Kemper & Company
1550 Main St, Suite 227
Kansa City, MO 64111

Parallax Capital Partners, LLC
c/o Richard Campbell
23332 Mill Creek Dr, Suite 155
Laguna Hills, CA 92653

Ms. Maria Teresa S. Palmer a/k/a Tess Palmer
209 Monaco Dr
Redwood City, CA 94065

Mr. William Foote
18 Rockingham Dr
Newport Beach, CA 92660

Ms. Dinna G. Bayangos
221 Monaco Dr
Redwood City, CA 94065

Mr. J. Rowell L. Recinto
3322 Kenneth Dr
Palo Alto, CA 94202

RE:    Insured: One Park Place Tower Condominium Association

| | | |
|---|---|---|
| RE: | Insured: | One Park Place Tower Condominium Association |
| | Claimant: | One Park Place Tower Condominium Association |
| | Our Claim Number: | 21905097 |
| | Mesa Policy Number: | MP0015002000671 |
| | Policy Period: | 11/22/2011-11/22/2012 |
| | Policy Limits: | $1,000,000 |
| | Date of Loss: | 12/1/2011 |
| | Company Name: | Mesa Underwriters Specialty Insurance Company |

Dear Sir or Madam:

**EXHIBIT 6**

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

I am a Claims Management Specialist employed by Selective Insurance Company of America which is handling this claim on behalf of your insurance carrier, Mesa Underwriters Specialty Insurance Company (Selective).  My responsibilities include making a determination as to what coverage may be available under the terms of the insurance policy you purchased from Selective.

A claim was presented to Selective by attorney Burke Robinson representing the One Park Place Tower Condominium to pursue a claim against the prior board of directors for not ensuring proper maintenance and repair of the building. It has been requested that Selective provide insurance coverage in this matter.  That request was made under the insurance policy referenced above.   The purpose of this letter is to identify the parts of your insurance policy which apply to preclude coverage for this loss.

**FACTS OF THIS CLAIM**

We have reviewed your policy in connection with the claim filed by Burke Robinson.  As we understand the facts, Mr. Robinson claims improper and inadequate repairs were completed on the setback roof components over a long period of time.

**SELECTIVE'S COVERAGE POSITION**

We have carefully evaluated the facts and circumstances of this claim. Unfortunately, we must advise you that the terms of the policy that you purchased from Selective do not afford insurance coverage for this claim. The purpose of this letter is to explain how we came to this decision. Obviously, if you feel we have reached this determination in error, please contact me so we can discuss this matter and I will be happy to answer any questions you may have.

We are providing you with the following analysis of coverage under the terms and conditions of policy number MP0015002000671 with effective dates from 11/22/2011 to 11/22/2012.  The responding coverage that applies to this claim is found under the **COMMERCIAL GENERAL LIABILITY COVERAGE FORM** (CG 00 01 12 04). Selective has the right and duty to defend covered claims.  We must refer to these allegations as a basis for determining how your policy will apply.

**The COMMERCIAL GENERAL LIABILITY COVERAGE FORM** (CG 00 01 12 04) has the following liability coverage language, which reads as follows:

> Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.
> Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.
> The word "insured" means any person or organization qualifying as such under Section II — Who Is An Insured.
> Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** — Definitions.

**SECTION I — COVERAGES**
**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.**      **Insuring Agreement**

   **a**.      We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

   **(1)**      The amount we will pay for damages is limited as described in Section III — Limits Of Insurance; and

   **(2)**      Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments — Coverages **A** and **B**.

   **b.**      This insurance applies to "bodily injury" and "property damage" only if:

   **(1)**      The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

   **(2)**      The "bodily injury" or "property damage" occurs during the policy period; and

   **(3)**      Prior to the policy period, no insured listed under Paragraph **1.** of Section II — Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

   **c.**      "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

Paragraph **1.** of Section **II** — Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.**  "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1**. of Section **II** — Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)**  Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)**  Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)**  Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.**  Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**2.**  **Exclusions**

This insurance does not apply to:

**a.**  **Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**j.**  **Damage To Property**

"Property damage" to:

**(1)**  Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**SECTION V — DEFINITIONS**

**3.**  "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**5.**  "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**13**.  "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

17. "Property damage" means:
   a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
   b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

   For the purposes of this insurance, electronic data is not tangible property.

   As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:
   a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or
   b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

Subject to the terms and conditions, the **COMMERCIAL GENERAL LIABILITY COVERAGE FORM** (CG 00 01 12 04) will only cover loss that is not subject to any policy conditions, limitations or exclusions that apply to preclude coverage. As we examine the facts of this loss, policy exclusions **2.a.** and **2.j.(1)** specifically apply to preclude coverage. As such there is no coverage for the damages claimed for any costs associated with this matter.

Also the **EXCLUSION – DIRECTORS AND OFFICERS LIABILITY** (MUS 01 01 20027 1013) endorsement has the following wording.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.
**EXCLUSION - DIRECTORS AND OFFICERS LIABILITY**
This endorsement modifies insurance provided under the following:
**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**
In consideration of the premium charged, it is understood and agreed that we will not pay damages for loss that results from a wrongful act based on: an error or omission; negligence; breach of duty; or misstatement or misleading statement by your directors and officers. It is further understood and agreed that we have no duty to defend you against such allegations.
All other terms and conditions of this policy remain unchanged.

Subject to the terms and conditions, the **EXCLUSION - DIRECTORS AND OFFICERS LIABILITY** (MUS 01 01 20027 1013) endorsement specifically excludes coverage for the actions of directors and officers.   As such there is no coverage for the damages claimed for any costs associated with this matter.

Although Selective is today declining coverage for this claim, we will keep our file open for thirty days in case you wish to discuss our decision or wish to give us more or different information that may be relevant. We reserve the right to modify our position based on any such new or different information. All rights, whether mentioned in this letter or not, are hereby expressly reserved and no acts or failure to act by Selective are intended, nor shall they be construed as, a waiver of any of Selective's rights. Hopefully, this letter provides you with a clear explanation of Selective's position regarding your insurance coverage available for this claim. However, if our explanation is not clear, or if you would like to discuss any aspect of this claim, please feel free to contact me at 217-544-5622.

In the meantime, thank you for your cooperation in this matter.

I am also required to advise that:

"Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each violation."

Sincerely,

Jeffrey Link
Claims Management Specialist - Domiciled in Illinois

cc: American Management Corporation

Claims activities are conducted by employees of Selective Insurance Company of America, either on its own behalf or as the servicing carrier for the Selective insurer affiliate which issued the policy that corresponds to the claim referenced above.

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM



Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

September 12, 2019

Jeffrey Link
Selective Insurance
P.O. Box 7261
London, KY 40742

Re:    **Policy No.: MP 0015002000671**
       **Policy No.: MP 0015002000980**
       **Policy No.: MP 0015002001417**
       **Policy No.: MP 0015002001821**
       **Any other MUSIC Policy issued to the insureds identified herein**
       *One Park Place Tower Condominium Association, Inc. v. One Park Place Investors, LLC; Park Place KC, LLC; Richard Campbell; William D. Foote; J. Rowell L. Recinto; Jeffrey Kacarek; Christine Kemper; Maria Teresa S. Palma; Dinna G. Bayangos*
       **Circuit Court of Jackson County, Missouri, Case No. 1916-CV02546**

Dear Mr. Link:

Our firm represents One Park Place Investors, LLC; Park Place KC, LLC; Christine Kemper; Maria Teresa S. Palma; Dinna G. Bayangos with respect to the above captioned litigation and our client's coverage under the MESA and Montpelier policies identified above.

Our clients, Kemper, Palma, and Bayangos, submitted a claim for coverage and defense under MESA Policy No. MP0015002000671 last year. Dinna Bayangos received a request from you on September 20, 2018, to provide a copy of the Homeowners Association By-laws with which she complied. Ms. Bayangos received an acknowledgment letter from Reyna Rodriguez with York Risk on December 14, 2018.

Your letter of November 10, 2018 (copy enclosed) although addressed to our clients was not sent to or received by our clients. We obtained this letter from Burke Robinson, attorney for the Homeowners Association. Apparently it was sent only to him.

On February 19, 2019 our clients sent another coverage and defense claim to both MESA and Montpelier under all of the policies identified above (copy enclosed). Six months have gone by and they have received no response.

The time for denying a claim for coverage and defense has expired. Our clients expect full cost reimbursement under the policies listed above and they expect full payment of any settlement or

ARMSTRONG TEASDALE LLP  |  2345 GRAND BLVD., SUITE 1500, KANSAS CITY, MO 64108-2617 **T** 816.221.3420  **F** 816.221.0786     **ArmstrongTeasdale.com**

Case 4:23-cv-00847-JAM   Document 1-1   Filed 11/17/23   Page 262 of 278

**EXHIBIT 7**

judgement that may be obtained in Case No. 1916-CV02546, Circuit Court of Jackson County, Missouri. Demand is hereby made for acknowledgment of each insurer's obligation to pay defense costs and liability/indemnity as described herein.

Very truly yours,

Lynn W. Hursh

LWH:cms

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM



**Kutak Rock LLP**
Two Pershing Square, 2300 Main Street, Suite 800, Kansas City, MO 64108-2432
office 816.960.0090

**Larry D. Fields**
816.960.0090
larry.fields@kutakrock.com

December 5, 2019

**VIA ELECTRONIC MAIL**
Lynn Hursh
lhursh@armstrongteasdale.com
Armstrong Teasdale
2345 Grand Blvd., Suite 1500
Kansas City, MO 64108

> Re: *One Park Place Tower Condominium Association, Inc. v. One Park Place Investors, LLC, et al.*
> **Coverage Position Correspondence**

Dear Mr. Hursh,

As you know, Selective Insurance Company of America is the claims handler for Mesa Underwriters Specialty Insurance Company f/k/a Montpelier U.S. Insurance Company ("MUSIC"), relative to your clients' request for coverage for the above-referenced matter pursuant to the insurance policies issued by MUSIC. Please consider this MUSIC's coverage position correspondence relative to this matter. MUSIC respectfully declines your clients' demand for coverage.

## BACKGROUND

We understand that you represent One Park Place Investors, LLC ("OPPI"), Park Place KC, LLC ("PPKC"), Christine Kemper ("Kemper"), Maria Teresa S. Palma ("Palma"), and "Dinna G. Bayangos ("Bayangos") relative to this matter. Your clients are among the defendants in the above-captioned case.

According to the Petition asserted, the dispute arises out of the management, maintenance, and marketing of One Park Place Tower while it was being converted from a commercial structure into a residential condominium. Plaintiff is the One Park Place Tower Condominium Association, Inc. ("Association").

The Petition alleges that OPPI was the original Declarant. The Declarant formed the Association on February 14, 2007. OPPI's interest as Declarant was transferred to PPKC on April 29, 2010.

**EXHIBIT 8**

**KUTAK**ROCK

It is alleged the building was in the control of the Declarant and the Declarant-appointed board members until April 2015. The Petition alleges that Kemper, Palma, and Bayangos were appointed by the Declarant OPPI/PPKC as members of the board of directors. It is unclear when these individuals became board members. (Their February 19, 2019 letter indicates that Kemper was a board member from 2010 to 2016 and that Palma and Bayangos were board members from 2010 to 2015.)

The Petition alleges that OPPI/PPKC had a duty to "construct, refurbish, maintain and repair" the Common Elements of the building and to turn the Common Elements over to the Association in good condition. The Petition also alleges that members of the board of directors, including Kemper, Palma, and Bayangos while the building was in their control, "had a duty to repair, maintain, and replace the Common Elements when needed, to conduct preventative maintenance over major components of the Common Elements, and to ensure that work, when done, was adequately performed by competent contractors. They also had the duty to establish and maintain adequate reserve funds for the maintenance, repair and replacement of the Common Elements." The Petition alleges that OPPI, PPKC, Kemper, Palma, and Bayangos failed to maintain the setback roofs, related drain system, and restraint system. Moreover, the Petition alleges that "the Declarants failed to properly repair or replace the roofs and over a period of years, the Defendant Board members neglected the same and otherwise engaged in a series of 'stop gap' 'repair and maintenance' measures aimed at creating cosmetic fixes so as to not alert Unit owners and purchasers to the need in the future to engage in the enormous remedial effort currently needed to resolve the defects in the roofs."

The Association alleges claims of (1) Breach of Fiduciary Duties under the Condominium Act against all Defendants; (2) Negligence against OPPI and PPKC for to properly renovate the setback roofs, maintain the setback roof drains and comply with the applicable standard of care (including code requirements) in providing a safety restraint system; (3) Breach of Implied Warranties under the Condominium Act and Common Law against OPPI and PPKC; (4) Breach of Express Warranty against OPPI and PPKC; (5) Missouri Merchandising Practices Act against all Defendants; (6) Negligent Misrepresentation Including Concealment against all Defendants; and (7) Violation of the Condominium Act against all Defendants

**THE POLICIES**

MUSIC issued a series of Commercial General Liability policies with the Association as the Named Insured. Policy MP0015002000671 ("Policy 0671") was issued with a policy period of 11/22/2011 to 11/22/2012. Policy MP0015002000980 ("Policy 0980") was issued with a policy period of 11/22/2012 to 11/22/2013. Policy MP0015002001417 ("Policy 1417") was issued with a policy period of 11/22/2013 to 11/22/2014. Policy MP0015002001821 ("Policy 1821") was

**KUTAK**ROCK

issued with a policy period of 11/22/2014 to 11/22/2015.  The Policies have an each occurrence limit of $1,000,000 and a general aggregate limit of $2,000,000.

Policy 1417 lists the Association and PPKC as Named Insureds.  Policies 0671, 0980, and 1417 contain an Additional Insured Endorsement that identifies PPKC as an additional insured and provides:

A. Section II – Who Is An Insured is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:
1. Your acts or omissions; or
2. The acts or omissions of those acting on your behalf;
in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.
B. With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:
This insurance does not apply to "bodily injury" or "property damage" occurring after:
1. All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or
2. That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

The Policies provide:

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.
Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.
The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.
Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

**KUTAK**ROCK

Lynn Hursh
December 5, 2019
Page 4

SECTION I – COVERAGES
COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY
1. Insuring Agreement
a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:
(1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and
(2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.
No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.
b. This insurance applies to "bodily injury" and "property damage" only if:
(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
…

The Policies contain the following relevant definitions:

SECTION V – DEFINITIONS
…
13."Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.
…
17."Property damage" means:
a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

The Policies have multiple exclusions that are relevant. The main policy forms contain the following exclusions:

**KUTAK**ROCK

Lynn Hursh
December 5, 2019
Page 5

2. Exclusions
This insurance does not apply to:
…
j. Damage To Property
"Property damage" to:
(1) Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;
…
(4) Personal property in the care, custody or control of the insured;
…

By endorsement, the Policies have an Exclusion for Directors and Officers Liability. It provides:

In consideration of the premium charged, it is understood and agreed that we will not pay damages for loss that results from a wrongful act based on: an error or omission; negligence; breach of duty; or misstatement or misleading statement by your directors and officers. It is further understood and agreed that we have no duty to defend you against such allegations.

Also by endorsement, all of the Policies also have an Exclusion for Cross Suits. The specific language of these cross suit exclusions varies. Policies 0671, 0980, and 1417 have an exclusion for cross suits that provides:

This insurance does not apply to "Bodily Injury", "Property Damage", "Personal Injury" or Medical Payments arising out of occurrences between two or more association members. Association members include all active, inactive, auxiliary or national association members.

Policy 1821 has a Cross Suits Liability Exclusion that provides:

The coverage under this policy does not apply to "bodily injury", "property damage", "personal injury", "advertising injury", or any injury, loss or damage arising out of actions, allegations, expense initiated or caused to be brought about by any insured covered by this policy against any other insured covered by this policy.

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

Lynn Hursh
December 5, 2019
Page 6

## ANALYSIS

**1.      OPPI and PPKC are not Insureds under Certain Policies**

OPPI is not listed as a Named Insured on any of the Policies.  Furthermore, no other provision in the Policies (including endorsements) confers insured status on OPPI.  Accordingly, there is no coverage under the Policies for OPPI for the allegations alleged in the Association's Petition.

Additionally, PPKC is not an insured on Policy 1821. Furthermore, no other provision in Policy 1821 (including endorsements) confers insured status on PPKC.  Accordingly, there is no coverage under Policy 1821 for PPKC for the allegations alleged in the Association's Petition.

**2.      The Petition Does Not Allege "Property Damage"**

The Association's Petition alleges that OPPI, PPKC, Kemper, Palma, and Bayangos failed to maintain, repair, and replace the Common Elements, to conduct preventative maintenance over major components of the Common Elements, and to ensure that work, when done, was adequately performed by competent contractors. The Association's Petition also alleges that OPPI, PPKC, Kemper, Palma, and Bayangos also had the duty to establish and maintain adequate reserve funds for the maintenance, repair and replacement of the Common Elements, including the roof system. In other words, the Association is claiming that substandard Common Elements existed in the building and that OPPI, PPKC, Kemper, Palma, and Bayangos failed to remedy the situation.

Under Missouri law, there is no "property damage" "unless and until the occurrence causes physical injury to tangible property." *St. Paul Fire & Marine Ins. Co. v. Lippincott*, 287 F.3d 703, 705 (8th Cir. Mo. 2002).  For instance, in *Lippincott*, the Court held that alleged misrepresentations regarding a house's conditions did not cause the property damage to it.  Neither did the insureds' actions to conceal the cracks in the house cause any property damage to the house.  Therefore, there was no property damage under the liability policy at issue.  "The structural flaws in the house constitute tangible property damage, but these flaws predate the occurrence of concealments and misrepresentations by which [the insured] incurred liability." *Id.; see also Hartford Ins. Co. of the Midwest v. Wyllie*, 396 F. Supp. 2d 1033, 1040 (E.D. Mo. 2005).

In this case, as alleged in the Association's Petition, the Common Elements existed in their condition prior to any alleged actions of OPPI, PPKC, Kemper, Palma, and Bayangos.  If there was tangible property damage, it predated the alleged occurrence (alleged breach of fiduciary duty, negligence, negligent misrepresentations, etc.) asserted in the Association's Petition.

**KUTAK**ROCK

Lynn Hursh
December 5, 2019
Page 7

**3.     The Allegations Pre-Date the Policies' Policy Periods**

Furthermore, the Association's Petition asserts that the alleged acts and omission began well before the Policies were issued with policy periods beginning in November 2011.  The Association alleges that OPPI purchased the building that included the roof structure and Common Elements in 2005.  The conditions of the roof and Common Elements existed prior to the policy periods of the Policies.[1]  The Association alleges that sales certificates issued in 2006 and in 2010 reference problems with the roof and the Common Elements.  Accordingly, the conditions of the roof and Common Elements, as well as OPPI's, PPKC's, Kemper's, Palma's, and Bayangos's alleged acts and omissions predate the Policies' policy periods.

**4.     The Petition Does Not Allege an "Occurrence"**

The Association's Petition does not allege property damage caused by an "occurrence" as required by the Policies.  An "occurrence" is defined by the Policies to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." In 2018, the Missouri Court of Appeals, Western District, held that there was no coverage under a commercial general liability policy issued to a condominium developer for claims by a condominium association for alleged negligent renovation and issues related to the property's construction. *View Home Owner's Ass'n v. The Burlington Ins. Co.*, 552 S.W.3d 726, 728 (Mo. App. W.D. 2018), reh'g and/or transfer denied (May 29, 2018), transfer denied (Aug. 21, 2018).

In that case, the court noted that the purpose of a commercial general liability policy is not designed to cover every risk of a business and exclude risks that management can control.

> The policy issued by TBIC is a standard form commercial general liability policy designed to protect the insured against liability for accidental damages to the person and property of third parties. The intent of such policies is to protect against the unpredictable and potentially unlimited liability that can result from accidentally causing injury to other persons or their property. However, these types of policies generally are not intended to protect business owners against every risk of operating a business. In particular, they often exclude from coverage those risks that business management can and should control and manage. Such exclusions are premised on the simple understanding that general liability coverage is not intended as a guarantee of the quality of an insured's product or work.

> *Id*. at 730.

---

[1] Indeed, problems with the exterior system of the building have been documented since 1985. *See Bus. Men's Assur. Co. of Am. v. Graham*, 984 S.W.2d 501, 503 (Mo. 1999)

**KUTAK**ROCK

Lynn Hursh
December 5, 2019
Page 8

Moreover, the court indicated that the View Home Owner Association's claim of coverage in that case sought "to extend the scope of coverage under the policy beyond the bounds of a traditional general liability policy to include insuring the quality of the work performed. Adoption of this argument would convert the policy at issue into a performance bond or general warranty on the quality of the final renovation work. This would be inconsistent with generally accepted parameters of commercial general liability policies and, more importantly, would ignore several key provisions in this particular policy that limit coverage and exclude claims relating to construction-related workmanship." *Id*.

The court noted that the policy does not apply to every form of property, but only to those to which the insurance applies – meaning that property damage being alleged as a result of an occurrence, which is defined to mean "an accident." Further, the court noted that an accident has a common meaning as "an event that takes place without one's foresight or expectation; an undersigned, sudden and unexpected event." *Id*. at 731.

As in this case, the developer in *View* "had control and management over the property during the renovation. This naturally included the ability to resolve any alleged construction deficiencies in the property as well as remediate substandard work. Because the ability to resolve these construction deficiencies was within The View's control and management, its failure to address them cannot be described as an 'undesigned or unexpected event,' and thus there was no 'accident.' Because there was no 'accident,' there was no 'occurrence' within the meaning of the policy, no 'property damage' to which the policy applied, and hence no duty on the part of TBIC to defend The View." *Id*.[2]

The same is true in this case. In its Petition, the Association alleges that your clients failed to properly construct, refurbish, maintain and repair the Common Elements of the building and to turn the Common Elements over to the Association in good condition. Moreover, the Petition indicates that the Association alleges your clients failed to provide adequate reserve funds for the maintenance, repair and replacement of the Common Elements. Because all of the failures alleged by the Association against your clients were within the control and management of your clients such that they had the ability to address them, the Petition does not allege an undersigned or unexpected event to be considered an accident. Because there was no accident, there was no occurrence within the meaning of the Policies, no property damage to which the Policies applied, and no duty of MUSIC to defend or indemnify your clients.

---

[2] Missouri courts have also found that claims for breach of fiduciary duty and breach of warranty are not "occurrences" because the insured's failure to perform was within his control. *J.E. Jones Const. Co. v. Chubb & Sons, Inc.*, 486 F.3d 337, 341 (8th Cir. 2007)

**KUTAK**ROCK

Lynn Hursh
December 5, 2019
Page 9

**5.      Damage to Property Exclusion**

        To the extent any property damage is alleged at all, there is no coverage under the MUSIC Policies due to the damage to property exclusion.  The Policies provide that the insurance does not apply to "Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property."

        Here, the Association alleges that OPPI purchased the land and building in 2005 and converted it to the Condominium.  The Association further alleges that OPP transferred the condominium to PPKC, who "assumed control over the Association," in 2010.  Accordingly, to the extent property damage caused by an occurrence existed, the Policies do not apply because the alleged property damage was to property owned by PPKC.  The building's Common Elements were also under the control of Kemper, Palma, and Bayangos as Declarant-appointed board members.  Furthermore, to the extent property damage caused by an occurrence existed, the Policies do not apply because the alleged property damage to the Condominium that was also occupied by the Association.

        Furthermore, the Policies provide that they do not apply to "Personal property in the care, custody or control of the insured."  All of the claims asserted in the Association's Petition are premised on the idea that OPPI, PPKC, Kemper, Palma, and Bayangos had care, custody, and control over the Common Elements of the building.  Accordingly, the claims asserted in the Association's Petition.

**6.      Directors and Officers Liability Exclusion**

        The Association's claims are also excluded from coverage due to the Directors and Officers Liability Exclusion contained in the Policies.  It provides:

        In consideration of the premium charged, it is understood and agreed that we will not pay damages for loss that results from a wrongful act based on: an error or omission; negligence; breach of duty; or misstatement or misleading statement by your directors and officers. It is further understood and agreed that we have no duty to defend you against such allegations.

        Kemper, Palma, and Bayangos are alleged by the Association to members of the Board of Directors for the Association appointed by OPPI and/or PPKC.  The Association alleges that it is controlled by the Board of Directors.  The Association alleges that OPPI created the Association and "placed the Association under the control of its appointed Board members."  Furthermore, the

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

**KUTAK**ROCK

Lynn Hursh
December 5, 2019
Page 10

Association alleges in its Petition that the "Declarants and the Defendant Board Members controlled the Association and, thus, the Common Elements…"

The Association further alleges that the "[u]nder the Act and the governing documents for the Condominium, including Article V of the Declaration and the Bylaws, the Board members had the duty to repair, maintain and replace the Common Elements when needed, to conduct preventative maintenance over major components of the Common Elements, and to ensure that work, when done, was adequately performed by competent contractors. They also had the duty to establish and maintain reserve funds for the maintenance, repair and replacement of the Common Elements. The above-referenced Sales Certificates issued to Unit owners in connection with the sale of any Unit confirmed in Section 4 the aforementioned duties of the Board members."

Accordingly, all of the Association's claims are a "loss that results from a wrongful act based on: an error or omission; negligence; breach of duty; or misstatement or misleading statement by your directors and officers." Thus, the Policies exclude coverage for the claims alleged in the Association's Petition.

7.     **Cross Suits Exclusion**

Additionally, the Policies contain cross suits exclusion. Policy 1821 has a Cross Suits Liability Exclusion that provides:

> The coverage under this policy does not apply to "bodily injury", "property damage", "personal injury", "advertising injury", or any injury, loss or damage arising out of actions, allegations, expense initiated or caused to be brought about by any insured covered by this policy against any other insured covered by this policy.

By its terms, this exclusion excludes the entirety of the Association's Petition from coverage under Policy 1821.

Likewise, Policies 0671, 0980, and 1417 have an exclusion for cross suits that provides:

> This insurance does not apply to "Bodily Injury", "Property Damage", "Personal Injury" or Medical Payments arising out of occurrences between two or more association members. Association members include all active, inactive, auxiliary or national association members.

**KUTAK**ROCK

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

To the extent there is an "occurrence" in this instance, it would be between two or more association members. Accordingly, coverage would be excluded under Policies 0671, 0980, and 1417 as well.

## <u>CONCLUSION</u>

For the foregoing reasons, MUSIC declines your clients' demand for coverage. MUSIC also reserves the right to assert other coverage defenses and/or issues as they become known. MUSIC also reserves the right to commence a declaratory judgment action regarding its rights and obligations under the policies. MUSIC does not waive its rights to assert additional coverage defenses and/or issues as may be warranted by the disclosures of new or additional information. Please note that if Defendants present new information not previously known, MUSIC anticipates full cooperation with it in the investigation of any new information.

If you have additional information you wish for MUSIC to consider or wish to discuss this further, please let me know. MUSIC will review and evaluate any additional information which you provide should you believe it bears on the issue of coverage.

Yours truly,

Larry D. Fields

LDF:kdb



Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

January 22, 2020

Larry Fields                                      Larry.fields@kutakrock.com
Kutak Rock
Two Pershing Square
2300 Main St., Suite 800
Kansas City, MO 64108

**Re:**      *One Park Place Tower Condominium Association, Inc. v. One Park Place Investors, LLC et al.*
**Coverage Position Correspondence**

Dear Mr. Fields:

Your letter correctly points out that PPKC is a named insured on Policy 1417 (the 2013-2014 Policy) and thus OPPI, its sole member, also qualifies as an insured under that Policy. For Policy 671 and 980, PPKC is an additional insured and OPPI would qualify as an insured by virtue of its status as sole member. Regardless, it is quite clear, and I am sure you would agree, that PPKC is an insured under all of the Policies except 1821 and OPPI is an insured under *at least* Policy 1417.

Palma, Bayangos and Kemper qualify as insureds by definition (Sec. II d) because they are directors of an organization (the named insured, the Condominium Association) that is not a partnership, joint venture, or limited liability company.

Kemper was never a member of the Condominium Association. Palma and Bayangos resided in units owned by LLC's which were the members of the Condominium Association. They served on the Association's Board in their individual capacities on behalf of the LLC's.

The Directors and Officers Exclusion to which you refer (MUS0101200271013) applies to the Named Insured[1], not Palma, Bayangos, Kemper, or PPKC under Policy 671 and 980.

As you indicate, the Cross-Suit Exclusion for Policy 671, 980, and 1417 only applies to occurrences "between two or more association members." Kemper is not an association member (she did not own a unit) nor are PPKC or OPPI association members.

---

[1] "Throughout this Policy the word 'you' refer(s) to the Named Insured shown in the declarations . . ." (GL Form, p.1).

ARMSTRONG TEASDALE LLP  |  2345 GRAND BLVD., SUITE 1500, KANSAS CITY, MO 64108-2617  **T** 816.221.3420  **F** 816.221.0786          **ArmstrongTeasdale.com**

Case 4:23-cv-00847-JAM   Document 1-1   Filed 11/17/23   Page 275 of 278          **EXHIBIT 9**

Electronically Filed - JACKSON - KANSAS CITY - October 18, 2023 - 03:48 PM

Granted, Policy 1821 is more problematic but the suit has been brought on behalf of the unit holders and they are not insureds under the Policy because no liability is being asserted against them as unit holders.

Of course, the Condominium Association, its self, is not a member. It cannot qualify as a "member" of itself.

The Petition does allege property damage. Damage consisting of water infiltration into units has been alleged (Petition ¶'s 56, 62, 70, 112, 132) including unwashed windows.

The Policies cover occurrences. Not only are negligent acts alleged, but none of your insureds expected or intended property damage to occur. Had MUSIC attempted even a pretense of an investigation before denying coverage and defense, these facts would have been known to it.

The point is that contrary to MUSIC's statements, OPPI, PPKC, Palma, Bayangos, and Kemper are insureds under one or more of the MUSIC Policies. The Petition alleges property damage that occurred during the Policy periods. Kemper, OPPI, and PPKC were never members of the Condominium Association. None of your insureds expected or intended property damage and they have been accused of negligent acts resulting in property damage.

Given the breadth of allegations and the time span set forth in the Petition, we can understand MUSIC's reluctance to admit full coverage for all the acts and damages for which recovery is being sought. We do not agree with MUSIC's refusal to offer a defense to its insureds subject to a reservation of rights to deny coverage for the claims and damages that may eventually not be covered under the Policies.

I trust MUSIC will reconsider its position, meet its legal obligations, and respond shortly.

Sincerely,

Lynn W. Hursh

LWH:cms

# IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
## AT KANSAS CITY

ONE PARK PLACE INVESTORS, LLC,

                **PLAINTIFF(S),**              **CASE NO.** 2316-CV27811

**VS.**                                         **DIVISION 6**

MESA UNDERWRITERS SPECIALTY INSURANCE COMPANY,

                **DEFENDANT(S).**

## NOTICE OF CASE MANAGEMENT CONFERENCE FOR CIVIL CASE
## AND ORDER FOR MEDIATION
_____

      NOTICE IS HEREBY GIVEN that a Case Management Conference will be held with the Honorable JAMES DALE YOUNGS on 08-FEB-2024 in DIVISION 6 at 01:30 PM. All Applications for Continuance of a Case Management Conference should be filed on or before Wednesday of the week prior to the case management setting. Applications for Continuance of a Case Management Conference shall comply with Supreme Court Rule and 16th Cir. R. 34.1. Continuance of a Case Management Conference will only be granted for good cause shown because it is the desire of the Court to meet with counsel and parties in all cases within the first 4 months that a case has been on file. All counsel and parties are directed to check Case.NET on the 16th Judicial Circuit web site at www.16thcircuit.org after filing an application for continuance to determine whether or not it has been granted.

      A lead attorney of record must be designated for each party as required by Local Rule 3.5.1. A separate pleading designating the lead attorney of record shall be filed by each party as described in Local Rule 3.5.2. The parties are advised that if they do not file a separate pleading designating lead counsel, even in situations where there is only one attorney representing the party, JIS will not be updated by civil records department, and copies of orders will be sent to the address currently shown in JIS. Civil Records does not update attorney information from answers or other pleadings. The Designation of Lead Attorney pleading shall contain the name of lead counsel, firm name, mailing address, phone number, FAX number and E-mail address of the attorney who is lead counsel.

      At the Case Management Conference, counsel should be prepared to address at least the following:

      a.      A trial setting;

      b.      Expert Witness Disclosure Cutoff Date;

      c.      A schedule for the orderly preparation of the case for trial;

      d.      Any issues which require input or action by the Court;

      e.      The status of settlement negotiations.

## MEDIATION

The parties are ordered to participate in mediation pursuant to Supreme Court Rule 17. Mediation shall be completed within 10 months after the date the case if filed for complex cases, and 6 months after the date the case is filed for other circuit cases, unless otherwise ordered by the Court. Each party shall personally appear at the mediation and participate in the process. In the event a party does not have the authority to enter into a settlement, then a representative of the entity that does have actual authority to enter into a settlement on behalf of the party shall also personally attend the mediations with the party.

The parties shall confer and select a mutually agreeable person to act as mediator in this case. If the parties are unable to agree on a mediator the court will appoint a mediator at the Case Management Conference.

Each party shall pay their respective pro-rata cost of the mediation directly to the mediator.

## POLICIES/PROCEDURES

Please refer to the Court's web page www.16thcircuit.org for division policies and procedural information listed by each judge.


/S/ JAMES DALE YOUNGS
JAMES DALE YOUNGS, **Circuit Judge**


Certificate of Service

This is to certify that a copy of the foregoing was mailed postage pre-paid or hand delivered to the plaintiff with the delivery of the file-stamped copy of the petition. It is further certified that a copy of the foregoing will be served with the summons on each defendant named in this action.

Attorney for Plaintiff(s):
LYNN W. HURSH, 2345 GRAND BLVD. SUITE 1500, KANSAS CITY, MO 64108

Defendant(s):
MESA UNDERWRITERS SPECIALTY INSURANCE COMPANY

Dated: 19-OCT-2023                          BEVERLY A. NEWMAN
                                            Court Administrator